UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW KOTILA,

    Plaintiff,

v.

Case No. 1:22-cv-704

Hon. Hala Y. Jarbou

CHARTER FINANCIAL PUBLISHING
NETWORK, Inc.,

    Defendant.
_____/

## OPINION

    This is a putative class action asserting violations of Michigan's Preservation of Personal Privacy Act (PPPA), Mich. Comp. Laws § 445.1711, et seq. Defendant Charter Financial Publishing Network, Inc. ("Charter") defaulted by failing to appear or otherwise respond to the complaint. Before the Court is Plaintiff Matthew Kotila's motion to certify a class for purposes of damages. Charter has not responded to the motion. For the reasons herein, the Court will grant the motion on the condition that Kotila provide a more definite class definition.

### I. BACKGROUND

    Kotila is a Michigan resident. Charter is a Delaware corporation with its principal place of business in New Jersey. Charter publishes a magazine called *Financial Advisor*. Kotila subscribed to this magazine before July 31, 2016. Kotila alleges that Charter disclosed his name, address, and magazine subscription to data aggregators and other third parties sometime before July 31, 2016. As a result, Kotila received "a barrage of unwanted junk mail." (Compl. ¶ 1, ECF No. 1.)

    Until the PPPA was amended in July 2016, it prohibited "a person . . . engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings,

or video recordings" from "disclos[ing] to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer." Mich. Comp. Laws § 445.1712 (1989). That version of the PPPA also entitled the customer to recover the following for a violation of the statute: "[a]ctual damages, . . . damages for emotional distress, or $5,000.00, whichever is greater," as well as "[c]osts and reasonable attorney fees." Mich. Comp. Laws § 445.1715 (1989). The amended version of the PPPA in effect today no longer provides for $5,000 in statutory damages; it requires plaintiffs to prove actual damages in order to recover under the statute. *See* Mich. Comp. Laws § 445.1715 (2016).

Kotila's claim relies on the earlier version of the PPPA. He alleges that Charter disclosed his information "during the relevant pre-July 31, 2016 time period" without obtaining his consent to do so. (Compl. ¶ 9.) Kotila seeks to represent a class of other Michigan residents whose information was disclosed by Charter prior to July 31, 2016. He seeks statutory damages of $5,000 for each violation of the PPPA.

## II. JURISDICTION

The Court has jurisdiction over a class action in which "[a]ny member of a class of plaintiffs is a citizen of a State different from any defendant," where the "matter in controversy exceeds the sum or value of $5,000,000[.]" 28 U.S.C. § 1332(d)(2)(A). Here, Kotila is a citizen of Michigan and Charter is a citizen of Delaware and New Jersey, so the citizenship requirement is satisfied.

Kotila also alleges that the amount in controversy is over $5,000,000. He alleges that the members of the class "number in the thousands." (Compl. ¶ 50.) Indeed, the complaint indicates that Charter's magazine had almost 80,000 total subscribers as of June 2020, which plausibly suggests that there were at least 1,000 subscribers in Michigan in 2016. If there are more than

1,000 class members, each of which would be entitled to statutory damages of $5,000, then the amount in controversy is over $5,000,000. Accordingly, based on the facts alleged in the complaint, the Court has subject matter jurisdiction over this action.

### III. CLASS ACTION CERTIFICATION

The purposes of class-action suits are judicial economy and the opportunity to bring claims that would not be brought absent the class action, because it might not be economically feasible to bring them as individual claims. *See Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 650 (6th Cir. 2006).

> Federal Rule of Civil Procedure 23, which governs class certification, provides that:
>
> One or more members of a class may sue . . . as representative parties on behalf of all only if (1) the class is so numerous that joinder . . . is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four prerequisites for class certification are referred to as "numerosity, commonality, typicality, and adequacy of representation." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).

If the requirements of Rule 23(a) are met, Kotila must also establish that the class satisfies one of the three types of class actions set forth in Rule 23(b). *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003). He seeks certification under Rule 23(b)(3), which requires him to show "predominance" and "superiority," i.e., that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Alkire*, 330 F.3d at 820.

Finally, courts have held that "'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member

3

of the proposed class.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (quoting James W. Moore et al., *Moore's Federal Practice* § 23.21 (3d ed. 2007)).

"Rule 23 does not set forth a mere pleading standard"; "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis,'" that all prerequisites have been satisfied. *Id.* at 350-51 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)).

Here, Kotila moves for certification of a class because he intends to move for a default judgment. Class certification is necessary for the class as a whole to recover damages. *See Skeway v. China Natural Gas, Inc.*, 304 F.R.D. 467, 472 (D. Del. 2014) "[I]n cases where a defendant failed to appear, an entry of default by the clerk of the court has not prevented district courts from considering whether to certify a class prior to the entry of a default judgment against a defendant." *Id.* (citing cases); *accord Toler v. Global Coll. of Natural Med., Inc.*, No. 13-10433, 2015 WL 1611274, at *3 (E.D. Mich. Apr. 10, 2015). The Clerk's entry of default does not change the Court's analysis, except that Charter's default means that Kotila's well-pleaded factual allegations in his complaint are deemed admitted by Charter. *See Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007); Fed. R. Civ. P 8(b)(6) ("An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied.").

### IV. ANALYSIS

Kotila asks to certify the following class:

> All Michigan residents who, at any point during the relevant pre-July 31, 2016 time period, had their Private Reading Information disclosed to third parties by Charter without consent.

(*See* Pl.'s Mot. to Certify 2, ECF No. 13 (brackets omitted).)

4

**A. Numerosity**

Kotila plausibly alleges that the class has more than 1,000 members, which is sufficient to satisfy the numerosity requirement.

**B. Commonality**

Commonality requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The claims of the class members "'must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 458 (6th Cir. 2020) (quoting *Young*, 693 F.3d at 542). "What matters . . . [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes*, 564 U.S. at 350 (quotation marks omitted).

Here, the common questions include: whether Charter is "engaged in the business of selling at retail" written materials; and whether it disclosed the class members' information to third parties without their consent.

**C. Typicality**

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "'[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3.13, at 3-76 (3d ed. 1992)). A plaintiff's claim is not typical if the "named plaintiff who proved his own claim would not necessarily have proved anybody else's claim."

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).  "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class."  *Id.*  "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members."  *Am. Med. Sys.*, 75 F.3d at 1082.

Here, Kotila alleges a course of conduct regarding Charter's disclosure of its customers' information to third parties.  In other words, all members of the class, including Kotila, have been affected in the same manner.  Accordingly, the typicality requirement is satisfied.

### D. Adequacy of Representation

Next, Kotila must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent.'"  *Young*, 693 F.3d at 543 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).  The Court looks at two criteria:

> 1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representative[] will vigorously prosecute the interests of the class through qualified counsel.

*In re Am. Med Sys.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors*, 532 F.2d 511, 525 (6th Cir. 1976)).

Here, there is no indication that Kotila has any conflicts of interest or will not vigorously prosecute the interests of the class.  In addition, it appears that Kotila's attorneys have experience litigating class actions and are qualified to represent the class.  Consequently, this requirement is also satisfied.

### E. Predominance

For a Rule 23(b)(3) class, the common questions must predominate over individual ones. To meet this requirement, Kotila "'must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof.'" *Hicks*, 965 F.3d at 460 (quoting *Young*, 693 F.3d at 544). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting Rubenstein, *Newberg on Class Actions* § 4:49). "'[T]he fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.'" *Hicks*, 965 F.3d at 460 (quoting *Young*, 693 F.3d at 544). In addition, predominance can be satisfied "'even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (quoting 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1778, at 123-24 (3d ed. 2005)).

Charter's common course of conduct toward all members of the class indicate that common questions of fact and law will predominate over issues that are subject to individualized proof.

### F. Superiority

Rule 23(b)(3) requires Kotila to show that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). That rule aims to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods.*, 521 U.S. at 615. The Court considers the following factors:

7

      (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

      (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

      (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

      (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

    The superiority of a class action follows from much of what the Court has said regarding commonality and predominance. In addition, a class action is preferable because the class members are unlikely to seek relief in individual suits. Each individual claim involves a relatively small amount of damages and the class members are not likely to be aware of Charter's alleged violation of the PPPA. *See Young*, 693 F.3d at 545 (class action superior where class members were not likely to "discover, let alone attempt to vindicate, their injury individually").

    In summary, Kotila has satisfied the general prerequisites for class certification. That said, the Court has concerns about the class definition. In his proposed definition, Kotila refers to "Private Reading Information" and to the "*relevant* pre-July 31, 2016 time period." (Pl.'s Mot. to Certify 2 (emphasis added).) It is not clear what "Private Reading Information" or "relevant" means. If, by Private Reading Information, Kotila means the "full names, titles of publications subscribed to, and home addresses" of Charter's magazine subscribers (*see* Compl. ¶ 5), then the class definition should specify those particular details. Likewise, the class definition should be more specific about the time period for Charter's conduct. The term "relevant" is too vague and open-ended. If Kotila is referring to the time period where his complaint can assert timely claims under the applicable six-year statute of limitations (plus the tolling provided by the Michigan Supreme Court due to the COVID-19 pandemic), then the class definition should specify the

8

relevant dates. As proposed, Kotila's definition is not sufficiently definite to determine whether an individual is a member of the proposed class.

## V. CONCLUSION

Kotila has shown that class certification is warranted, but before the Court certifies a particular class, the Court will require him to provide a more specific class definition. Kotila also asks the Court to allow him to conduct discovery on third parties so that he can identify class members and calculate damages for purposes of default judgment under Rule 55(b)(2). Because the class definition will likely guide discovery, the Court will not consider such a request until after Kotila submits, and the Court approves, a satisfactory class definition. At that point, Kotila can file a separate motion for discovery.

An order will enter in accordance with this Opinion.

Dated: May 12, 2023                                /s/ Hala Y. Jarbou
                                                   HALA Y. JARBOU
                                                   CHIEF UNITED STATES DISTRICT JUDGE