UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MATTHEW KOTILA, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00704 |
| Plaintiff, | District Judge Hala Y. Jarbou |
| v. | Magistrate Judge Ray S. Kent |
| CHARTER FINANCIAL PUBLISHING NETWORK, INC., | |
| Defendant. | |

### DEFENDANT CHARTER FINANCIAL PUBLISHING NETWORK, INC.'S MOTION TO SET ASIDE DEFAULT PURSUANT TO FED. R. CIV. P. 55(C)

Defendant Charter Financial Publishing Network ("Defendant" or "CFPN"), by its attorneys, Brooks Wilkins Sharkey & Turco PLLC, pursuant to Fed. R. Civ. P. 55(c), moves this Court for an order setting aside the Default (ECF No. 12) entered against CFPN on October 19, 2022.

In accordance with Local Rule 7.1(d), on September 19, 2023, counsel for CFPN confirmed Plaintiffs' opposition to this Motion, as further detailed on the separately filed Certificate of Compliance.

WHEREFORE, CFPN prays that this Court enter an order (i) setting aside the Default, (ii) permitting CFPN to defend this action by, among other things, answering or otherwise

responding to the Complaint as permitted by the Federal Rules of Civil Procedure, (iii) contesting class certification, and (iv) granting such other relief in CFPN's favor as is proper.

                Respectfully submitted,

**BROOKS WILKINS**
**SHARKEY & TURCO PLLC**

By: /s/T.L. Summerville
T.L. Summerville (P63445)
Attorneys for Defendant Charter Financial
Publishing Network, Inc.
401 S. Old Woodward Avenue, Suite 400
Birmingham, MI 48009
(248) 971-1719
summerville@bwst-law.com

Date: September 21, 2023

## **CERTIFICATE OF SERVICE**

       I hereby certify that, on September 21, 2023, I caused a copy of the foregoing document to be filed with the Clerk of the Court using the Court's electronic filing system, which will send notification of such filing to all counsel of record.

                                          */s/ T.L. Summerville*
                                          T.L. Summerville

## UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MATTHEW KOTILA, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00704 |
| Plaintiff, | District Judge Hala Y. Jarbou |
| v. | Magistrate Judge Ray S. Kent |
| CHARTER FINANCIAL PUBLISHING NETWORK, INC., | |
| Defendant. | |

**DEFENDANT CHARTER FINANCIAL PUBLISHING NETWORK, INC.'S BRIEF IN SUPPORT OF MOTION TO SET ASIDE DEFAULT <u>PURSUANT TO FED. R. CIV. P. 55(C)</u>**

**CONCISE STATEMENT OF REASONS SUPPORTING THIS MOTION**

Good cause exists to grant CFPN's Motion to Set Aside Default because all three factors Courts must consider when ruling upon a motion brought under Rule 55(c) favor CFPN. Neither the lead plaintiff nor the class plaintiffs will be prejudiced beyond a mere delay in the proceedings. CFPN has meritorious defenses to the allegations in this case. And CFPN's delay in responding to the Complaint was not the result of culpable conduct intended to frustrate these proceedings.

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                                 **Page(s)**

*Burrell v. Henderson*, 434 F.3d 826 (6th Cir. 2006) .................................................................7

*Dassault Systemes, SA v. Childress*, 663 F.3d 834 (6th Cir. 2011) ......................................................6, 9

*Garg v. Macomb Co. Comm. Mental Health Servs.*, 472 Mich 263 (2004) ......................................... 8

*O.J. Distributing, Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345 (6th Cir. 2004) ..............................5

*Rooks v American Brass Co.*, 263 F2d 166 (6th Cir. 1959). ................................................................7

*Shepherd Claims Service, Inc. v. William Darrah & Assoc.*, 796 F.2d 190 (6th Cir. 1986) ..........5, 6, 10

*United Coin Meter Co., Inc. v. Seaboard Coastline RR.*, 705 F.2d 839 (6th Cir.1983) .................5, 6, 7

*Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290 (6th Cir. 1992) .......................................... 9


 **Statutes**

M.C.L. § 445.1711 ..................................................................................................................1


**Other Authorities**
Michigan Preservation of Personal Privacy Act ................................................................................1


**Rules**

Federal Rule of Civil Procedure 12 ........................................................................................... 2

Federal Rule of Civil Procedure 55 .................................................................i, 1, 2, 3, 4, 5, 6, 9, 10

Federal Rule of Civil Procedure 60 ........................................................................................... 9

Federal Rule of Civil Procedure 23 ........................................................................................ 2, 4

**Introduction**

Good cause exists to set aside the Default (ECF No. 12) (the "Default") entered against CFPN on October 19, 2022. Because no final default judgment has been entered, the Court need only consider the three factors recognized by the Sixth Circuit for evaluating motions brought under Rule 55(c), i.e., (i) whether the plaintiffs will be prejudiced if the motion is granted beyond a mere delay in an adjudication of the claims, (ii) whether the defendant has a meritorious defense that, if established, would change the result achieved by the default, and (iii) whether the defendant's delay was the result of some "culpable conduct" intended to impair the proceedings. As explained below, each of these factors weigh in CFPN's favor. Accordingly, the Default should be set aside so that CFPN may defend this case on the merits.

**Background**

**A.    Procedural History**

Plaintiff Matthew Kotila ("Kotila" or "Plaintiff") commenced this lawsuit on August 3, 2022, when he filed his then putative Class Action Complaint (ECF No. 1) (the "Complaint") against CFPN and a proposed Summons (ECF No. 2), which was approved the next day (ECF No. 4). The Complaint includes a single claim for relief based on CFPN's alleged violations of the privacy rights of Plaintiff and the other class members by selling, renting, or exchanging private reader data in contravention of the Michigan Preservation of Personal Privacy Act the "PPPA"), M.C.L. § 445.1711 *et seq.*, as it existed before July 2016.

On August 21, 2022, Plaintiff filed a proof of service attesting that both the Complaint and Summons had been delivered to CFPN's registered for service of process, Cogency Global, Inc., by leaving them with Theresa Gradison, an "Administrative Assistant," on August 11, 2022 (ECF No. 5, PageID.534). On September 28, 2022, Plaintiff submitted an application for the

1

entry of a default (ECF No. 7), stating that CFPN had failed to "answer, respond to, or otherwise defend this action within the time specified in Federal Rule of Civil Procedure 12(b)(1)(A)" (PageID.539). On October 19, 2022, the Clerk of the Court entered the Default.

On December 2, 2022, Plaintiff filed his Motion for Class Certification Pursuant to Rules 23(a) & 23(b)(3), and for Leave to Take Discovery Pursuant to Rule 55(b)(2) (ECF 13). On June 5, 2023, the Court entered its Opinion (ECF No. 16) and Order (ECF No. 17) granting the class certification motion on the condition that the Plaintiff provide a "more specific class definition" (PageID.652). Plaintiff attempted to address the concerns raised by the Court in document titled "Plaintiff's Response to the Court's May 12, 2023 Opinion and Order" and filed on May 19, 2023. On June 5, 2023, the Court entered an Order (ECF No. 17) granting class certification with its own modifications to the class definition specified therein (PageID.658-59). The Court also granted Plaintiff's request to conduct discovery to identify the class members for the purpose of calculating damages and required Plaintiff to file a motion for a default judgment no later than August 16, 2023. (PageID.659.)

On August 16, 2023, Plaintiff filed a Motion for Default Judgment Pursuant to Rules 23(b)(3) and 55(b)(2) and Approval of Plaintiff's Class Notice Plan (ECF No. 27) (the "Default Judgment Motion"). In the brief supporting the Default Judgment Motion (ECF No. 28), the lead plaintiff contended that he and each member of the class, which allegedly includes "at least 3,416" individuals (PageID.753), should each be awarded the maximum statutory damages of $5,000 available under the version of the PPPA in effect before July 31, 2016 (PageID.754).

As of the time of this filing, the Court has yet to rule on the Default Judgment Motion.

**B.    CFPN's Business Model, Recent History, and Knowledge and Investigation of This Lawsuit**

Based in Shrewsbury, New Jersey, CFPN was founded and incorporated under the laws of the State of Delaware in 2000. *See* Exhibit A, Declaration of Charles L. Stroller in Support of Defendant Charter Financial Publishing Network, Inc.'s Motion to Set Aside Default Pursuant to Fed. R. Civ. P. 55(c) (the "Stroller Decl."), at p. 1, ¶ 2. CFPN, which has 28 employees, publishes a monthly print and digital magazine titled *Financial Advisor* and maintains a website for the magazine which can be accessed at https://www.fa-mag.com. *Id.* at p. 1, ¶¶ 2-3.

CFPN provides *Financial Advisor* at no cost to its 40,000 subscribers. *Id.* at p. 1, ¶ 3. CFPN does not send *Financial Advisor* to members of the general public but, instead, only to licensed financial brokers and advisors whose license status CFPN first confirms. *Id.* at p. 2, ¶ 4. At its height, when print media was in greater demand, CFPN had 120,000 subscribers. Stroller Decl. at p. 2, ¶ 6.

Like many other businesses, CFPN's operations were dramatically affected by the Covid-19 pandemic. *Id.* at p. 2, ¶ 6. Among other things, CFPN's employees shifted to a remote/work-from-home environment, which only ended on September 6, 2023 when CFPN instituted a 2-day per week in-office requirement. *Id.* at p. 2, ¶ 7. Following the shutdowns in March 2020 and September 2023, CFPN had no employees working in its offices. *Id.* at p. 2, ¶ 8.

As CFPN began to prepare for its return to in-office work, it was also moving to a smaller office location in Shrewsbury. *Id.* at p. 2, ¶ 9. During that process, on July 23, 2023, CFPN's chief executive officer and chief financial officer, Charles L. Stroller ("Stroller"), learned about a subpoena that had been delivered to CFPN's office while another employee was present. *Id.* at p. 2, ¶ 9. Stroller did not see the subpoena until he returned to the office for the first time in

3

roughly a year. *Id.* at p. 2, ¶ 10. Upon examining the subpoena, Stroller noted that it referred to a competitor of CFPN, ALM Global, LLC, which publishes a magazine titled "*Investment Advisor.*" *Id.* Being unaware of the lawsuit and believing the subpoena had mistakenly referred to CFPN, Stroller did not appreciate that the matter required a response from CFPN. *Id.* at pp. 2-3, ¶ 10.

Stroller next heard of the lawsuit on July 31, 2023, when Stephanie Perrin ("Perrin"), CFPN's Director of Finance, informed him of an email she had received from CFPN's registered agent, Cogency Global, Inc., forwarding a document she believed was the same document that had been delivered on July 23 or pertained to the same matter. *Id.* at p. 3, ¶ 11. Stroller did not next hear about this lawsuit until August 21, 2023, when he received another email from Perrin forwarding a copy of a document titled "Plaintiff's Brief in Support of His Motion for Default Judgment Pursuant to Rules 23(b)(3) and 55(b)(2) and Approval of Plaintiff's Proposed Class Notice Plan." *Id.*, ¶ 13. Stroller forwarded the documents to CFPN's counsel in New Jersey who could not handle the matter and suggested that counsel in Michigan be retained and that CFPN's insurer be advised. *See id.* at p. 3, ¶¶ 13-14. On September 11, 2023, after CFPN's insurer advised that coverage was not available, Stroller retained counsel to represent CFPN in this matter. *Id.* at p. 3, ¶ 15.

As part of his investigation, Stroller requested that CFPN's Head of Technology, Chrisitan Eddleston ("Eddleston"), search CFPN's subscriber database records to confirm whether Plaintiff, or an individual with the Plaintiff's name, had ever been a subscriber to *Financial Advisor*. *Id.* at p. 3, ¶ 19. Eddleston's search of CFPN's subscriber database, which includes data going back 7 years, revealed no record of a "Matthew Kotila" in CFPN's system.

Eddleston Decl. at pp. 1-2, ¶¶ 3, 5.

Eddleston also attempted to verify if a "Matthew Kotila" was a licensed financial broker or advisor. *Id.* at pp. 3-4, ¶ 18; Exhibit B, Declaration of Christian Eddleston in Support of Defendant Charter Financial Publishing Network, Inc.'s Motion to Set Aside Default Pursuant to Fed. R. Civ. P. 55(c) (the "Eddleston Decl."), at p. 1, ¶ 2. To do so, Eddleston searched three websites that provide information about licensed and registered financial brokers and advisors maintained by the Securities & Exchange Commission ("SEC"), the Financial Industry Regulatory Authority ("FINRA"), and Institutional Shareholder Services, Inc. ("ISS"). Eddleston Decl. at p. 2, ¶ 4. Eddleston's searches of those websites, "Brokercheck" (https://brokercheck.finra.org), Investment Advisor Public Disclosure (https://adviserinfo.sec.gov), and Discovery Data (https://discoverydata.com"), also returned no positive current or historical results for a "Matthew Kotila." Eddleston Decl. at p. 2, ¶ 5.

### Standard of Decision

Rule 55(c) provides that a default may be set aside for "good cause." The decision to set aside a default under Rule 55(c) rests within the trial court's discretion and will only be reversed on appeal for an abuse thereof. *See O.J. Distributing, Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 352 (6th Cir. 2004). Because trials on the merits are favored in federal courts, any doubt should be decided in favor of the granting motion so that the case may proceed. *See United Coin Meter Co., Inc. v. Seaboard Coastline RR.*, 705 F.2d 839, 846 (6th Cir. 1983). The Sixth Circuit has ruled that a more lenient standard applies when only a default, and not a default judgment, has been entered. *Shepherd Claims Service, Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir. 1986).

**Argument**

In deciding a motion brought under Rule 55(c) to set aside a clerk's entry of a default, district courts must consider three factors: (1) whether the plaintiff will be prejudiced if the motion is granted; (2) whether the defendant has a meritorious defense; and (3) whether culpable conduct of the defendant led to the default. *Shepherd Claims*, 796 F.2d at 192. The court must consider all three factors, but when the first two weigh in favor or setting aside the default, it is an abuse of discretion to deny the motion absent the defendant's willful failure to appear and plead. *Shepherd Claims*, 796 F.2d 194 (6th Cir. 1986). As outlined below, not only do the first two factors support setting aside the default, but the third does as well.

**A.  The plaintiffs will not be prejudiced in a manner that supports denying CFPN's Motion to Set Aside Default.**

The first factor that must be addressed when deciding a Rule 55 motion is whether the plaintiff, or plaintiffs, will be prejudiced if the default is set aside. The prejudice must be more than a "[m]ere delay in satisfying a plaintiff's claim." *United Coin*, 705 F.2d at 845. Instead, in this context, "prejudice" is generally interpreted to mean "delay [that] will result in the loss of evidence, create increased discovery difficulties, or provide greater opportunity for fraud and collusion." *Dassault Systemes, SA v. Childress*, 663 F.3d 834, 842 (6th Cir. 2011).

Although this case was filed over a year ago, there is no danger that any evidence will be lost. Plaintiff has already had an opportunity to conduct discovery to identify class members, which information presumably is still in the possession of his counsel, and CFPN of course has access to its subscriber database. If anything, granting the motion will allow an opportunity to determine whether evidence exists that would support the Complaint's allegations. Despite its length, the Complaint contains no explicit references to records, documents, or other

information showing how CFPN violated the PPPA, when statutorily-proscribed information was shared, or what third parties had access to Plaintiff's or any class member's protected private information. Rather, the Complaint relies upon conclusory allegations and articles, Congressional letters, and news reports discussing the need to protect reader privacy. Indeed, it is unclear if Plaintiff has any proof to support the claims against CFPN or that the class definition, even as modified by the Court, is appropriate given that CFPN only provides *Financial Advisor* to licensed brokers and advisors who voluntarily sign up and agree to receive marketing information.

Likewise, there will be no increase in discovery difficulties. While the docket suggests that Plaintiff's counsel obtained some information from third parties, there is no reason to believe CFPN will not cooperate in good faith in discovery. Rather, CFPN has every reason to do so given the nature of its business, the claims made against it, and the amount of damages Plaintiff seeks on behalf of himself and the class.

Finally, granting CFPN's Motion will allow the parties and the Court to test each side's allegations, defenses, and other contentions so as to reach a just result on the merits. Accordingly, the first factor weighs in favor of setting aside the Default.

**B.     CFPN has meritorious defenses to the allegations because, among other things, it does not share subscriber data with third parties.**

The meritorious defense prong also supports setting aside the Default. The standard for determining the existence of a meritorious defense is not whether the defense will ultimately succeed, but whether the defendant has a defense that is "good at law." *United Coin Meter*, 705 F.2d at 845 (*citing Rooks v American Brass Co.*, 263 F2d 166, 168 (6th Cir. 1959). A defense is good at "if there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Burrell v. Henderson*, 434 F.3d 826, 834 (6th Cir. 2006). Here,

CFPN has several defenses that once established will lead to a different outcome. If permitted to plead or move in response to the Complaint, CFPN would assert the following as its defenses, among others:

- **Failure to State a Claim for Relief** – As Kotila was never a subscriber to *Financial Advisor*, does not appear to be a licensed financial broker or advisor, and is not included on CFPN's subscriber database, the Complaint fails to state a claim upon which relief can be granted in his favor.

- **Statute of Limitations** – To the extent Plaintiff relies on disclosures that occurred outside the applicable statute of limitations, Plaintiff and any other members of the class are barred from recovery. Notably, the Complaint alleges that CFPN violated the version of the PPPA in effect **before** the 2016 amendments became effective on July 31st of that year (*see* PageID.2). Plaintiff also states in footnote 1 to the Complaint that the applicable statute of limitations period is 6 years (PageID.2), meaning that the last day to bring claims based on the old version of the PPPA lapsed on July 31, 2022. The Complaint, however, was not filed until August 3, 2022. Accordingly, and because Michigan Supreme Court has abrogated the continuing wrongs doctrine in 2004, *see Garg v. Macomb Co. Comm. Mental Health Servs.*, 472 Mich 263, 282;696 N.W.2d 640, 658 (2004), all claims based on the old version of the PPPA are barred.

- **Doctrine of Laches** – To the extent Plaintiff or any other members of the class unduly delayed in bringing claims against CFPN for the conduct described in the Complaint, their claims are barred by the equitable doctrine of laches.

The foregoing defenses, as supported by Declarations of Stroller and Eddleston and other evidence that may be adduced, would require a different result once established. As such, the meritorious defense factor weighs in CFPN's favor.

**C.     CFPN committed no "culpable conduct" that would support denying this Motion.**

Because the first and second factors weigh in favor of CFPN's Motion to Set Aside Default, the Court essentially could grant the Motion without examining the third factor, whether "culpable conduct of the defendant" led to the delay in responding. Indeed, as the Sixth Circuit has observed, when the first two factors have been established, upholding a district court's denial of a Rule 55(c) motion would require a "dramatic balancing of the factors" in a plaintiff's favor. *See Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292-93 (6th Cir. 1992) (affirming trial court's denial of defendant's motion to set aside a default judgment under Rule 60, but noting the less strict standard applicable to motions to set aside defaults under Rule 55). There is no basis to do so in this case, and the Court need go no further. That said, to the extent the Court considers this third factor, it too supports granting CFPN's Motion.

To be considered culpable for purposes of analyzing a Rule 55 motion, the defendant's conduct in not timely responding "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [the] conduct on those proceedings." *Daussault Systemes*, 663 F.3d at 841. As shown by the Stroller Declaration, CFPN did not timely respond to the Complaint not because of an intentional act, but rather an unfortunate oversight resulting from having no in-office staff for over three years. While the Court may question CFPN's decision not to have a process in place to check for important mail and other documents, absent reason to believe CFPN was engaging in willful conduct to impair the conduct of these proceedings, which of course did not happen, the lack of oversight is not sufficient, in itself, to justify denying the

9

motion, especially where the first two factors supporting doing so. Moreover, CFPN's delay in responding need not be excusable to support setting aside the Default, as the appropriate standard for granting a motion under Rule 55(c) is "good cause." *See Shepherd Claims*, 796 F.2d at 194. Accordingly, the third and final factor weighs in favor or granting CFPN's request.

### Conclusion and Relief Requested

Each of the three factors be examined when considering a motion to set aside a default under Rule 55(c) favor granting CFPN's motion. Beyond a mere delay in the proceedings, the plaintiffs will not be prejudiced in any meaningful way. CFPN has meritorious defenses to the claims based upon the statute of limitations, and among others. And CFPN's delay in responding is not due to a willful or intentional act to frustrate these proceedings. Accordingly, and because the resolution of disputes on the merits are favored, this Court should grant CFPN's Motion to Set Aside Default.

WHEREFORE, CFPN prays that this Court enter an order (i) setting aside the Default, (ii) permitting CFPN to defend this action by, among other things, answering or otherwise responding to the Complaint as permitted by the Federal Rules of Civil Procedure, (iii) contesting class certification, and (iv) granting such other relief in CFPN's favor as is proper.

Respectfully submitted,

**BROOKS WILKINS
SHARKEY & TURCO PLLC**

By: /s/T.L. Summerville
T.L. Summerville (P63445)
Attorneys for Defendant Charter Financial Publishing Network, Inc.
401 S. Old Woodward Avenue, Suite 400
Birmingham, MI 48009
(248) 971-1719
summerville@bwst-law.com

Date: September 21, 2023

### **CERTIFICATE OF COMPLIANCE – LOCAL RULE 7.3(B)(II)**

     I hereby certify that the foregoing Brief contains 3,033 words, as calculated using the Word Count feature in Microsoft Word and exclusive of any words in the case caption, cover sheet, tables of content or authority, signature block, attachments, exhibits, affidavits, or other addenda.

                                                   */s/ T.L. Summerville*
                                                   T.L. Summerville

### **CERTIFICATE OF SERVICE**

     I hereby certify that, on September 21, 2023, I caused a copy of the foregoing document to be filed with the Clerk of the Court using the Court's electronic filing system, which will send notification of such filing to all counsel of record.

                                                   */s/ T.L. Summerville*
                                                   T.L. Summerville