UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MATTHEW KOTILA, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>CHARTER FINANCIAL PUBLISHING NETWORK, INC.,<br><br>     Defendant. | Case No. 1:22-cv-00704-PLM-RSK<br><br>Hon. Hala Y. Jarbou<br><br>Mag. Judge Ray S. Kent<br><br>CLASS ACTION |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SET ASIDE DEFAULT PURSUANT TO FED. R. CIV. P. 55(C)**

## <u>QUESTION PRESENTED</u>

Has Defendant met its burden to set aside the default entered here where Defendant was duly served with the lawsuit over a year before Defendant finally appeared to defend itself, and in which Plaintiff and his counsel expended significant resources, monetary and otherwise, and where Defendant Motion to vacate the default offers no credible explanation for the delay and where Defendant fails to establish a meritorious defense on the merits or that setting aside the default would not prejudice Plaintiff?

       Plaintiff's Answer: No.

## <u>MOST CONTROLLING AUTHORITY</u>

- *United Coin Meter Co. v. Seaboard Coastline RR*, 705 F.2d 839 (6th Cir. 1983)

- *Shepard Claims Serv., Inc. v. Williams Darrah & Assocs.*, 796 F.2d 190 (6th Cir. 1986)

# TABLE OF CONTENTS

BACKGROUND ................................................................................................1

ARGUMENT ...................................................................................................6

I.    Defendant Has failed to Show that It Acted With Anything Other Than "Reckless Disregard" for These Proceedings...................................................7

II.   Defendant Has Failed to Articulate a Defense to Plaintiffs' Claim That Has a Reasonable Likelihood of Success ................................................................12

III.  Defendant Fails to Establish That Setting Aside the Default Would Not Prejudice Plaintiff ..........................................................................................15

CONCLUSION ...................................................................................................17

## Cases

*Citizens Bank v. Parnes*,
  376 F. App'x 496 (6th Cir. 2010) ...................................................................15

*Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*,
  88 F.3d 948 (11th Cir. 1996) ...............................................................7, 11

*Controversy Music v. Packard Grill, LLC*,
  2011 WL 317736 (E.D. Mich. Feb. 1, 2011).....................................................10

*Dassault Systemes, SA v. Childress*,
  663 F.3d 832 (6th Cir. 2011) ...............................................................6, 7

*Gaines v. Nat'l Wildlife Fed'n*,
  2023 WL 3186284 (E.D. Mich. May 1, 2023) ...................................................13

*Gottsleben v. Informa Media, Inc.*,
  2023 WL 4397226 (W.D. Mich. July 7, 2023)....................................................14

*Horton v. GameStop Corp.*,
  380 F. Supp.3d 679 (W.D. Mich. 2018) ............................................................13

*In re Mindel-Stansberry*,
  2006 WL 3876500 (Bankr. E.D. Ky. May 11, 2006) ........................................11

*Lee v. Belvoir Media Grp., LLC*,
  2023 WL 6304682 (E.D. Mich. Sept. 27, 2023) ...............................................13

*Nilsson Robbins, Dalgarn, Berlin, Carson & Wurst v. La. Hydrolec*,
  854 F.2d 1538 (9th Cir. 1988) ......................................................................16

Nock v. Boardroom, Inc.,
  2023 WL 3572857 (E.D. Mich. May 19, 2023) ................................................13

*Petrella v. Metro–Goldwyn–Mayer, Inc.*,
  572 U.S. 663 (2014)...........................................................................................15

*Russett v. NTVB Media, Inc.*,
  2023 WL 6315998 (E.D. Mich. Sept. 28, 2023) ...............................................13

*S. Elec. Health Fund v. Bedrock Servs.*,
  146 F. App'x 772 (6th Cir. 2005) .....................................................................10

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*,
  580 U.S. 328 (2017)...........................................................................................15

*Schreiber v. Mayo Found. for Med. Educ. & Rsch.*,
  2023 WL 4512647 (W.D. Mich. July 13, 2023) (Jarbou, J.)............................13

*Shepard Claims Serv., Inc. v. Williams Darrah & Assocs.*,
  796 F.2d 190 (6th Cir. 1986) ....................................................... 6, 7, 17

*Turker v. Ohio Dep't of Rehab. & Corr.*,
  157 F.3d 453 (6th Cir. 1998) ...........................................................................13

*United Coin Meter Co. v. Seaboard Coastline RR*,
    705 F.2d 839 (6th Cir. 1983) ................................................................. 6, 11, 15
*United States v. Mack*,
    295 U.S. 480 (1935)............................................................................15
*Victoria's Secret Stores v. Artco Equip. Co.*,
    194 F. Supp. 2d 704 (S.D. Ohio 2002) ............................................11
*Waifersong, Ltd. Inc. v. Classic Music Vending*,
    976 F.2d 290 (6th Cir. 1992) ..............................................................7
*Wehrman v. Conklin*,
    155 U.S. 314 (1894)............................................................................15
*Williams v. Meyer*,
    346 F.3d 607 (6th Cir. 2003) ............................................................12

## Other Authorities

Mich. Executive Order 2020-58 .................................................................14
Mich. Supreme Court Administrative Order 2020-3 .................................14

## Rules

Fed. R. Civ. P. 12(a)(1)(A) ........................................................................2
Fed. R. Civ. P. 55(c)...................................................................................6

Plaintiff Matthew Kotila, individually and on behalf of all others similarly situated, respectfully submits this response in opposition to the motion to set aside the Clerk's entry of default (ECF No. 29 (the "Motion")) filed by Defendant Charter Financial Publishing Network, Inc. ("Defendant").

## BACKGROUND

On August 3, 2022, Plaintiff initiated this action by filing the Class Action Complaint against Defendant (ECF No. 1 (the "Complaint").) The Complaint alleges that Plaintiff and all members of the proposed class purchased subscriptions to *Financial Advisor* magazine from Defendant, and that Defendant, without providing notice to or obtaining consent from Plaintiff or any other proposed class member, disclosed Plaintiff's and all proposed class members' subscription-purchase records to third parties during the relevant time period, i.e., between April 25, 2016, and July 30, 2016.

On August 4, 2022, the Clerk of Court issued a Summons in a Civil Action as to Defendant. (ECF No. 4.)

On August 11, 2022, service of the Complaint and the Summons was effectuated on Defendant at the address of Defendant's registered agent, as specified by Defendant in its corporate filings. (*See* ECF No. 5, PageID.534; Declaration of E. Powell Miller ("Miller Decl.") ¶ 4 (Declaration attached hereto as Exhibit A.)

Defendant failed to answer or respond to the Complaint or otherwise defend the action within twenty-one days from the date of service of the Summons and Complaint, as required under Federal Rule of Civil Procedure 12(a)(1)(A).

Thus, on September 28, 2022, Plaintiff filed an application for the Clerk of Court to enter a default against Defendant pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 7.) Plaintiff served a copy of the application for entry of clerk's default on Defendant at the address of Defendant's registered agent, as specified by Defendant in its corporate filings. Miller Decl. ¶ 6.

On October 19, 2022, the Clerk of Court issued an Entry of Default against Defendant pursuant to Rule 55(a). (ECF No. 12.) Plaintiff served a copy of the Clerk's Entry of Default on Defendant at the address of Defendant's registered agent, as specified by Defendant in its corporate filings. Miller Decl. ¶ 8.

On December 2, 2022, Plaintiff filed a motion for class certification and for leave to take discovery pursuant to Federal Rule of Civil Procedure 55(b)(2). (ECF No. 13.) Plaintiff served a copy of the motion for class certification and for leave to take discovery on Defendant at the address of Defendant's registered agent, as specified by Defendant in its corporate filings. Miller Decl. ¶ 11.

On May 12, 2023, the Court issued an Opinion and Order conditionally granting Plaintiff's motion for class certification, but directing Plaintiff to provide a more specific proposed class definition. (ECF Nos. 14-15.) Plaintiff served a copy

of the Court's order conditionally certifying the class on Defendant at the address of Defendant's registered agent, as specified by Defendant in its corporate filings. Miller Decl. ¶ 13.

On May 19, 2023, Plaintiff filed a supplement to his motion for class certification and for leave to take discovery that provided a more specific class definition. (ECF No. 16.) Plaintiff served a copy of the supplement to the motion for class certification on Defendant at the address of Defendant's registered agent, as specified by Defendant in its corporate filings. Miller Decl. ¶ 15.

On June 5, 2023, the Court issued an Order granting certification of the class and authorizing Plaintiff to take discovery in order to identify the class members for purposes of calculating damages. (ECF No. 17.) The Court certified the following class pursuant to Federal Rule of Civil Procedure 23(b)(3):

> Plaintiff, as well as every other resident of Michigan who subscribed to any of Defendant's publications before July 31, 2016, and whose name together with the name of the publication(s) to which they subscribed were disclosed by Defendant (or an employee or agent of Defendant acting on Defendant's behalf) at any time between April 25, 2016, and July 30, 2016, to any third party without the consent of the subscriber.

(*Id.* at 1-2.) Plaintiff served a copy of the Court's order certifying the class on Defendant at the address of Defendant's registered agent, as specified by Defendant in its corporate filings. Miller Decl. ¶ 17.

Following the Court's June 5, 2023 Order, Plaintiff's counsel served 39 notices of subpoena pursuant to Federal Rule of Civil Procedure 45, directed to various third party data companies, on Defendant at the address of Defendant's registered agent, as specified by Defendant in its corporate filings. Miller Decl. ¶ 18. After serving Defendant with the notices of subpoena on or about July 14, 2023, Plaintiff's counsel then promptly served these subpoenas on each of the 39 third party data companies to which they were directed. *Id.* ¶ 19. Plaintiff's counsel expended $2,602.41 in out-of-pocket expenses in connection with effectuating service of the 39 subpoenas. Miller Decl. ¶ 20.

On July 17, 2023, Plaintiff received a response to his subpoena to Data Services, Inc. ("DSI") that included a subscriber list, transmitted by Defendant to DSI during the relevant time period, with the names and addresses of over 3,000 persons in Michigan. Miller Decl. ¶ 21. On August 15, 2023, Plaintiff received a response to his subpoenas to BPA Worldwide, Inc. ("BPA") and Alliance for Audited Media ("AAM") that included a subscriber list, transmitted by Defendant to BPA and/or AAM during the relevant time period, with the names and addresses of over 3,000 persons in Michigan. Miller Decl. ¶ 22. Together, the lists provided by DSI and BPA/AAM contain 3,416 unique names and addresses of persons in Michigan, who, together with Plaintiff, comprise the certified class in this case. (*See* ECF No. 17, PageID.658-59 (certifying class comprised of "Plaintiff, as well as

4

every other resident of Michigan who subscribed to any of Defendant's publications before July 31, 2016, and whose name together with the name of the publication(s) to which they subscribed were disclosed by Defendant (or an employee or agent of Defendant acting on Defendant's behalf) at any time between April 25, 2016, and July 30, 2016, to any third party without the consent of the subscriber") & ECF No. 28, PageID.752 (brief filed by Plaintiff quantifying number of class members in addition to Plaintiff.)

In early August of 2023, Plaintiff agreed to retain Kroll to serve as Plaintiff's proposed claims administrator in this matter. Miller Decl. ¶ 24. Throughout the month of August, Plaintiff's counsel worked with Kroll to devise a multi-part notice plan. *Id.*; *see also* PageID.746-47. First, Kroll will perform skip traces on any returned undeliverable notices and those notices will be remailed to any new found addresses; further, Kroll will establish a customized case website that shall contain additional comprehensive information about this class action, as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online (if needed for any unidentified class members), or an updated postal address. *Id.* Plaintiff's counsel agreed to retain Kroll, at a cost of $19,915.00, to perform these services in this matter. Miller Decl. ¶ 25.

On August 16, 2023, Plaintiff filed a motion for Court approval of Plaintiff's proposed notice plan to provide notice to the certified class members, as well as for

a default judgment against Defendant in an amount to be determined following the notice and opt-out period. (ECF No. 28.) Plaintiff served a copy of the motion for approval of the proposed notice plan on Defendant at the address of Defendant's registered agent, as specified by Defendant in its corporate filings. Miller Decl. ¶ 27.

On September 21, 2023, Defendant filed the instant Motion. (ECF No. 29.)

## ARGUMENT

Defendant does not contest that it was properly served. *See* ECF No. 29. Thus, the clerk's default may be set aside only upon a showing of good cause. *See* Fed. R. Civ. P. 55(c). In other words, "Rule 55(c) leaves to the discretion of the trial judge the decision whether to set aside an entry of default." *Shepard Claims Serv., Inc. v. Williams Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986). In considering whether default should be set aside under Rule 55(c), district courts must apply the following factors:

      i.     Whether culpable conduct of the defendant led to the default;

     ii.     Whether the defendant has a meritorious defense; and

    iii.     Whether the plaintiff will be prejudiced.

*United Coin Meter Co. v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983); *see also Dassault Systemes, SA v. Childress*, 663 F.3d 832, 838–39 (6th Cir. 2011). In this case, each of these three factors confirms that Defendant has not demonstrated the "good cause" necessary to set aside the default.

**I.    Defendant Has Failed to Show that It Acted With Anything Other Than "Reckless Disregard" for These Proceedings**

The first factor – which considers whether culpable conduct of Defendant led to the default, *United Coin Meter*, 705 F.2d at 845 – weighs against setting aside the default because Defendant has not demonstrated that its failure to respond to this lawsuit for over 13 months after being served with the Complaint was anything other than willful.

"When asked to set aside an entry of default, a court considers the first factor, defendant's culpability, in the general context of determining whether a petitioner is deserving of equitable relief." *Waifersong, Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). A defendant's conduct leading to a default is willful if the defendant "display[s] either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *See Dassault*, 663 F.3d at 841 (citing *Shepard*, 796 F.2d at 194). "[I]f a party willfully defaults by displaying either intentional <u>or reckless disregard</u> for the judicial proceedings, the court <u>need make no other finding in denying relief</u>." *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951–52 (11th Cir. 1996) (citing *Shepard*, 796 F.2d at 194–95) (emphasis added).

Here, Defendant acted with "reckless disregard for the effect of its conduct" – i.e., its failure to respond to the Complaint or otherwise defend itself – as the Motion and accompanying Stroller Declaration (ECF No. 29-2) demonstrate. In

particular, Defendant has submitted no evidence showing when Cogency, its registered agent, provided Defendant with a copy of the Complaint, which was duly served on August 11, 2022; a copy of Plaintiff's application for the Clerk of Court to enter a default, which was duly served on or about September 28, 2022; a copy of the Clerk's Entry of Default against Defendant, which was duly served on or about October 19, 2022; a copy of Plaintiff's motion for class certification and for leave to take discovery, which was duly served on or about December 2, 2022; a copy of the Court's Opinion and Order conditionally granting Plaintiff's motion for class certification, which were duly served on or about May 12, 2023; or a copy of the Court's Order granting certification of the class and authorizing Plaintiff to take discovery, which was duly served on or about June 5, 2023. Instead, the Motion and accompanying Stroller Declaration focus entirely on *Stroller's* receipt of *two recently served documents*: (1) Plaintiff's notice of subpoena to ALM, which was served on Defendant on or about July 14, 2023 and which Stroller says was provided to him on both July 23 and July 31, 2023 by two employees (one who received the document from the process server in the office, and the other who received an e-mail from Cogency containing the same document); and (2) Plaintiff's brief in support of his motion for approval of notice plan and for entry of default judgment that was served on Defendant on or about August 16, 2023 and which Stroller says was

provided to him by an employee on August 21, 2023, after the employee had received the document from Cogency via e-mail.

Defendant's failure to submit any evidence to establish when *Defendant* – i.e., anyone at the company, not just Stroller – received copies of the Complaint and the other earlier-filed documents in this case is telling. Even the limited information that Stroller *does* provide in his declaration makes clear that Cogency sent an e-mail to Defendant each time Cogency was served with a document in this case in its capacity as Defendant's registered agent, and that these e-mails contained copies of the documents that had been served. *See, e.g.*, Stroller Decl. ¶¶ 11-12 (indicating that employee had received emails from Cogency containing copies of the documents served). And indeed, as explained on Cogency's website, whenever Cogency is served with a document in its capacity as registered agent for one of its company clients, Cogency has a standard practice of "immediate[ly]" providing notification of its receipt of the document to that company, including by "e-mail, via a secured link and password-protected access." *See* Miller Decl. ¶ 4 & Ex. 1 thereto, at 2 (printout of Cogency website accessible at https://www.cogencyglobal.com/national-registered-agents). Thus, Cogency would have e-mailed copies of the Complaint and the various other earlier-filed documents in the case to Defendant immediately upon being served with them, just as it did with the notice of subpoena to ALM and Plaintiff's motion for default judgment that it e-mailed to Defendant on

July 31, 2023 and August 21, 2023, respectively. And while Defendant repeatedly cites to its employees' recent return to the office following the pandemic to justify its over year-long failure to defend this case, Defendant does not (and obviously cannot) claim that its employees did not have access to their e-mail while working remotely during that time.

Against this backdrop, Defendant's failure to respond to the Complaint or otherwise defend this action for over 13 months – between August 11, 2022 (when the Complaint was served) and September 19, 2023 (when Defendant first appeared in this case) – is a sure sign that Defendant chose to simply ignore the documents, in "reckless disregard" for these proceedings. *See S. Elec. Health Fund v. Bedrock Servs.*, 146 F. App'x 772, 777 (6th Cir. 2005) (where a party ignores legal documents, that conduct is viewed as a reckless disregard for the effect of the party's conduct on the proceedings). But at the very least, Defendant has submitted no evidence to establish that it did not receive the Complaint and other early-filed documents in this case from Cogency – evidence which would, at a bare minimum, be a necessary component to Defendant establishing that it did not act with "reckless disregard" for these proceedings. *See, e.g.*, *Controversy Music v. Packard Grill, LLC*, 2011 WL 317736, at *3 (E.D. Mich. Feb. 1, 2011) ("[T]he Defendants are culpable for the default in this case because they failed to answer Plaintiffs' Complaint. … A default was entered in this case due to Defendants' inaction. They

are therefore culpable inasmuch as they ignored the clear language of the Summons."); *In re Mindel-Stansberry*, 2006 WL 3876500, at *4 (Bankr. E.D. Ky. May 11, 2006), (finding the defendant culpable and dismissing the argument that the company never received notice from its registered agent).[1]

Though the Sixth Circuit generally favors trials on the merits, such policy "does not mandate that the Court conduct a trial on the merits when a party shows little initiative in litigating the claims. If it did, there would be no reason for the Sixth Circuit's *United Coin Meter* test." *Victoria's Secret Stores v. Artco Equip. Co.*, 194 F. Supp. 2d 704, 717 (S.D. Ohio 2002).

Accordingly, the first factor weighs heavily against setting aside the default, and the Court need go no further in the *United Coin Meter* analysis to deny the Motion. *See Compania*, 88 F.3d at 951-952 ("[I]f a party willfully defaults by

---

[1]  Instead of presenting evidence to show that Defendant was not provided copies of the Complaint and other early-filed documents in the case, Stroller summarily states in his declaration that "I did not become generally aware of the existence of this lawsuit until on or about July 23, 2023[.]" Stroller Decl. ¶ 9. But again, the question is not when *Stroller* became aware of the case, but rather when Cogency, the registered agent of the Defendant, was duly served – which Defendant does not dispute occurred on August 11, 2022. *See* ECF No. 5, PageID.534 & Stroller Decl. ¶ 16. Even if the question of when Defendant directly (as opposed to its agent Cogency) learned of "the existence of this case" is relevant to the willfulness factor under the *United Coin Meter* analysis, the question is still not when *Stroller* became aware of the case, but rather when the Defendant (i.e., any of its employees) became aware of the case. And yet, Stroller's declaration does not speak to this question. It is also entirely unclear what it means for Stroller to have "become *generally aware* of the existence of this lawsuit." Stroller Decl. ¶ 9 (emphasis added).

11

displaying either intentional or reckless disregard for the judicial proceedings, the court need make no other finding in denying relief.").

## II.    Defendant Has Failed to Articulate a Defense to Plaintiff's Claim That Has a Reasonable Likelihood of Success

The second factor – which considers whether Defendant has a meritorious defense to the Plaintiff's claim, *United Coin Meter*, 705 F.2d at 845 – also weighs against setting aside the default because each of the defenses cited in the Motion fails as a matter of law.

A meritorious defense for purposes of this factor is one that is "good at law." *Williams v. Meyer*, 346 F.3d 607, 614 (6th Cir. 2003).

Defendant says that it would have three potentially "meritorious defenses" to this case if the clerk's default is set aside: (1) Plaintiff fails to state a claim for relief; (2) Plaintiff's claim is time-barred because this case was filed more than six-years after the effective date of the amended version of Michigan's PPPA; and (3) laches, based on Plaintiff's "undue delay" in filing suit. PageID.777. None of these defenses is "good at law."

First, Defendant's "failure to state a claim upon which relief can be granted" defense has no reasonable chance of success because the same material factual allegations underlying Plaintiff's claim in this case have been found adequate to state claims for relief in numerous other PPPA cases recently filed in Michigan's federal courts. *See, e.g.*, *Schreiber v. Mayo Found. for Med. Educ. & Rsch.*, 2023 WL

12

4512647, at *4 (W.D. Mich. July 13, 2023) (Jarbou, J.) (finding that the plaintiff's allegations, which are materially the same as the allegations in this case, "are sufficient to state a plausible claim under the PPPA"); *Lee v. Belvoir Media Grp., LLC*, 2023 WL 6304682, at *4 (E.D. Mich. Sept. 27, 2023) (same result); *Nock v. Boardroom, Inc.*, 2023 WL 3572857, at *4 (E.D. Mich. May 19, 2023) (same); *Russett v. NTVB Media, Inc.*, 2023 WL 6315998, at *3 (E.D. Mich. Sept. 28, 2023) (same); *Gaines v. Nat'l Wildlife Fed'n*, 2023 WL 3186284, at *4 (E.D. Mich. May 1, 2023) (same); *Horton v. GameStop Corp.*, 380 F. Supp.3d 679, 682 (W.D. Mich. 2018). And the question of whether the Complaint's allegations adequately state a claim for relief is a question of law.[2] *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998) (whether a complaint states a claim for relief "is a question of law"). Thus, this defense is not "good at law" for the same reason it was not "good at law" in the numerous decisions cited above, each of which was based upon the same material facts that Plaintiff alleges here.

Second, Defendant contends that it has a statute of limitations defense that is "good at law" because "the last day to bring claims based on the old version of the

---

[2]    Indeed, Defendant's assertion that Plaintiff did not purchase a subscription to *Financial Advisor* prior to or during the relevant time period is irrelevant to the "failure to state a claim for relief" defense that Defendant claims is potentially meritorious. The Complaint plainly alleges that Plaintiff did purchase a subscription prior to or during the relevant time period, and any attempt to disprove those allegations cannot be resolved on a motion to dismiss for failure to state a claim.

PPPA lapsed on July 31, 2022" and "the Complaint … was not filed until August 3, 2022." (PageID.777; *see also id.* (also noting that the "Michigan Supreme Court [] abrogated the continuing wrongs doctrine in 2004").) This defense also fails as a matter of law. Plaintiff's claim is timely as a matter of law, even without application of a "continuing wrongs doctrine," because the Michigan Supreme Court and the Governor of Michigan both issued orders tolling the statute of limitations for all civil actions by 102 days during the COVID-19 pandemic. *See* Mich. Executive Order 2020-58; Mich. Supreme Court Administrative Order 2020-3. As this Court explained in another PPPA case, "the Michigan Supreme Court issued administrative orders tolling all Michigan statutes of limitations for 102 days during the COVID-19 pandemic in 2020." *Gottsleben v. Informa Media, Inc.*, 2023 WL 4397226, at *3 (W.D. Mich. July 7, 2023). Thus, the relevant time period for purposes of this case is April 25, 2016 through July 30, 2016. Because Plaintiff's claim is timely as a matter of law, the statute of limitations defense that Defendant hopes to raise is not "good at law" for purposes of this factor.

Third, Defendant speculates that, "[t]o the extent Plaintiff … unduly delayed in bringing [his] claim[] against [Defendant] for the conduct described in the Complaint, [his] claim[] [is] barred by the equitable doctrine of laches." (PageID.777.) This defense would be frivolous. Because Plaintiff filed suit within the applicable statutory period, as previously discussed, any laches defense raised

by Defendant would fail as a matter of law. *See United States v. Mack*, 295 U.S. 480, 489 (1935) ("Laches within the term of the statute of limitations is no defense at law"); *Wehrman v. Conklin*, 155 U.S. 314, 326 (1894) (same); *Petrella v. Metro–Goldwyn–Mayer, Inc.*, 572 U.S. 663, 679 (2014) (same); *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 580 U.S. 328, 331 (2017) (same).[3]

Accordingly, the second factor also weighs heavily against setting aside the default.

## III.   Defendant Fails to Establish That Setting Aside the Default Would Not Prejudice Plaintiff

The third factor – which considers whether setting aside the default would prejudice Plaintiff, *see United Coin Meter*, 705 F.2d at 845 – also weighs against setting aside the default because Plaintiff has invested significant resources over the past year addressing Defendant's default.

According to Defendant, Plaintiff would suffer no prejudice if the default entered against it is set aside, claiming that "there is no danger that any evidence will be lost" and that "there will be no increase in discovery difficulties" going forward in the litigation. (Mot at 5-6, PageID.774-75.) But Defendant fails to recognize that,

---

[3]      Additionally, Defendant offers no evidence in support of its proposed laches defense, and has thus failed to establish that the defense has any possibility of being "good at law," even if it did not fail as a matter of law for the reason explained above. *See Citizens Bank v. Parnes*, 376 F. App'x 496, 505 (6th Cir. 2010) (in considering this factor, courts are not obligated to merely accept a defendant's "general assertion of [a defense] without even a hint of suggestion of supporting evidence").

as it relates to this factor, "the most common type of prejudice is the additional expense caused by the delay[.]" *Nilsson Robbins, Dalgarn, Berlin, Carson & Wurst v. La. Hydrolec*, 854 F.2d 1538, 1546 (9th Cir. 1988).

And in this case, Plaintiff and his counsel have already expended significant resources, monetary and otherwise, as a direct result of Defendant's failure to appear to defend itself in this case for over a year. Specifically, following Defendant's default, Plaintiff's counsel expended $2,602.41 in out-of-pocket expenses to effectuate service of 39 subpoenas to third party data companies in order to assemble a class list, and has agreed to retain Kroll to the tune of $19,915.00 in fees and costs to disseminate notice to the class and otherwise administer this class action. Miller Decl. ¶¶ 20, 25. All told, Plaintiff's counsel will have expended $22,517.41 in costs as a result of Defendant's default. *Id.* ¶ 28. If the default were set aside, all of these costs – as well as all of the extensive work performed by Plaintiff's counsel in obtaining an order certifying the class, preparing 39 subpoenas, and preparing briefing in support of Plaintiff's motion for default judgment and for the dissemination of notice to the class – would have been expended for nothing, causing significant prejudice to Plaintiff and his counsel. *See, e.g.*, *Nilsson*, 854 F.2d at 1546. The Motion does not even attempt to explain why the payment of such expenses, and counsel's performance of over a year's worth of legal work addressing

Defendant's default, would not unduly prejudice Plaintiff and his counsel if the default were set aside.

Accordingly, the third and final factor also weighs heavily against setting aside the default.

## CONCLUSION

Defendant was duly served with this lawsuit over a year before it finally appeared to defend itself. During the lengthy period in which Defendant chose to simply ignore these proceedings, a clerk's default was properly entered against Defendant and Plaintiff and his counsel expended significant resources, monetary and otherwise, addressing the default for the benefit of the now-certified class.

Defendant's eleventh-hour Motion to vacate the default offers no "credible explanation for the delay that does not exhibit disregard for the judicial proceedings," so the default must stand, *see Shepard* , 796 F.2d at 195, especially given that Defendant has also failed to establish a meritorious defense on the merits or that setting aside the default would not prejudice Plaintiff. Simply put: Defendant has not met its burden under Rule 55(c), and the Motion should be denied.

Dated:  October 19, 2023          Respectfully submitted,

/s/ *E. Powell Miller*
E. Powell Miller (P39487)
THE MILLER LAW FIRM, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307

Tel: 248-841-2200
epm@millerlawpc.com

Joseph I. Marchese
Philip L. Fraietta
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163
jmarchese@bursor.com
pfraietta@bursor.com

Frank S. Hedin
David W. Hall
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801
fhedin@hedinhall.com
dhall@hedinhall.com

*Class Counsel*

## <u>CERTIFICATE REGARDING WORD COUNT</u>

Plaintiff Matthew Kotila, in compliance with W.D. Mich. LCivR 7.2(b)(i)-(ii) & 7.3(b)(i)-(ii), used 4,297 words in Plaintiff's foregoing brief. Microsoft Word for Office 365 Business version 1910 is the word processing software used to generate the word count in the attached brief.

Dated: October 19, 2023                 Respectfully Submitted,

                                         /s/ *E. Powell Miller*
                                         E. Powell Miller (P39487)
                                         **THE MILLER LAW FIRM, P.C.**
                                         950 W. University Drive, Suite 300
                                         Rochester, MI 48307
                                         Tel: 248-841-2200
                                         epm@millerlawpc.com

                                         *Counsel for Plaintiff and the Class*

19

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 19, 2023, a true and correct copy of the foregoing was served by electronic service via the Court's CM/ECF service on all counsel or parties of record on the service list in the above-entitled action.

/s/ *E. Powell Miller*
E. Powell Miller