UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MATTHEW KOTILA, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00704 |
| Plaintiff, | District Judge Hala Y. Jarbou |
| v. | Magistrate Judge Ray S. Kent |
| CHARTER FINANCIAL PUBLISHING NETWORK, INC., | |
| Defendant. | |

**DEFENDANT CHARTER FINANCIAL PUBLISHING NETWORK, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO SET ASIDE DEFAULT PURSUANT TO FED. R. CIV. P. 55(C)**

**Introduction**

Plaintiff's Response to CFPN's Motion to Set Aside Default, which was belatedly filed per Local Rule 7.3(c), fails to demonstrate why CFPN's Motion should be denied. Plaintiff's argument that it will suffer prejudice if the Motion is granted because of costs already incurred is an insufficient basis under governing Sixth Circuit case law. As for CFPN's meritorious defenses, Plaintiff ignores that the rulings it relies on to argue that the 101-day time period applies has been criticized by Michigan judges and is presently being reviewed by the Michigan Supreme Court in at least three cases. Plaintiff also ignores the CFPN's Motion asserts a meritorious defense, as CFPN did not sell *Financial Advisor* to the Plaintiff "at retail," which is a requirement for the PPPA to apply. Finally, the record simply does not establish that CFPN engaged in intentional or reckless conduct to frustrate these proceedings, Accordingly, CFPN's Motion to Set Aside should be granted.

**Argument**

A.  **Plaintiff will not be prejudiced in a manner that supports denying CFPN's Motion to Set Aside Default.**

Plaintiff complains that prejudice will result if the default is set aside because Plaintiff has, or "will have," expended $22,517.41 in costs associated with serving 39 subpoenas and retaining expert to "disseminate notice to the class and administer the class action." Essentially, Plaintiff alleges that the default should remain so he will have no further costs. Putting aside Plaintiff's failure to support that statement with actual invoices, Sixth Circuit case law has rejected the incurrence of additional costs as a basis for finding prejudice sufficient to deny a motion to set aside a default.

As noted in CFPN's original Brief in Support of Motion to Set Aside Default (ECF No. 29), the correct standard in this federal circuit is whether a delay occasioned by granting setting aside a default will "result in the loss of evidence, create discovery difficulties, or provide greater opportunity for fraud." S*ee United Coin Meter Co., Inc. v. Seaboard Coastline RR.*, 705 F.2d 839, 846 (6th Cir. 1983); *Dassault Systemes, SA v. Childress*, 663 F.3d 834,842 (6th Cir. 2011). Having to litigate the claims and incur additional costs is not sufficient. *Id.* Indeed, the Sixth Circuit has long recognized that consideration of a party's costs alone will not support denying the motion to set aside a default, as those matters can be addressed by court order. *See Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 656-657 (6th Cir. 1982).

In addition, the case Plaintiff relies upon, *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538 (9th Cir. 1988), does not support denying CFPN's motion. The *Louisiana Hydrolec* court was discussing prejudice in the context of determining whether the district court had appropriately conditioned setting aside a default on the

defendant's paying certain attorneys' fees and "completely and promptly" responding to discovery. *Id.* at 1546. In reaching its conclusion that the use of conditions was permissible, the Ninth Circuit discussed the plaintiff's costs in the context of noting that costs can be easily addressed. *Id.* at 1546-1547. That court did not, however, determine that a plaintiff's additional or incurred costs alone support denying a motion brought under Rule 55(c), as Plaintiff seems to be suggesting. Thus, *Louisiana Hydrolec* does not support denying CFPN's Motion, and Plaintiff has not shown the type of prejudice required by *United Coin Meter*.

**B.    CFPN has meritorious defenses.**

Not surprisingly, CFPN disputes Plaintiff's contention that it does not have a meritorious defense. First, with respect to Plaintiff's contention that CFPN's statute of limitations argument is not valid because AO 2020-3, which the Michigan Supreme Court issued on March 23, 2020, essentially provides up to an additional 101 days for certain claims to be brought, it is important to note Michigan Supreme Court has granted leave to appeal in two cases where the constitutionality of AO 2020-3 is at issue. *See Carter v. DTN Management Co.*, 511 Mich. 1025, 991 N.W.2d 586 (2023), and *Armijo v. Bronson Methodist Hospital*, 511 Mich. 1026, 991 N.W.2d 593 (2023), are both pending before the Michigan Supreme Court for oral argument. An application for leave to appeal filed in a third case, *Compagner v. Burch*, --- Mich. App. ---, --- N.W.2d --- (2023)[1], in which Judge Boonstra directly questioned the constitutionality of AO 2020-3 in dicta, is being held in abeyance pending the argument scheduled in *Carter* and *Armijo*. To the extent this issue is being reviewed by the Supreme Court and the rulings in *Carter* and *Armijo* that AO 2020-3 was constitutional may be reversed, CFPN submits that this Court should

---

[1] 2023 WL 3766734.

take the review of AO 2020-3 into consideration when assessing whether CFPN may assert the statute of limitations in this action. In other words, if the Michigan Supreme Court rules that AO 2020-3 was unconstitutionally issued, Plaintiff's claim will be time barred.

Second, CFPN's points out that its original Brief in Support, including the Stroller Affidavit, does assert at least one other meritorious defense. The version of the PPPA on which Plaintiff's claim rests provided, in relevant part:

> Except as provided in section 3 or as otherwise provided by law, a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials … shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.

Thus, in order for the statute to apply, the defendant must have sold *at retail*, rented, or loaned written books or materials. As shown in paragraphs 57 and 58 of the Complaint, Plaintiff alleges that CFPN "is engaged in the business of selling written materials at retail" and that he "purchas[ed] a subscription to *Financial Advisor* magazine." (PageID.21) But as stated in CFPN's Motion and supported by the Stroller Affidavit, CFPN does not sell *Financial Advisor*. Rather, it provides it to its subscribers "at no cost." (PageID.772, 783.) The PPPA's applicability only to sellers at retail was discussed by the Sixth Circuit in *Coulter-Owens v. Time Inc.*, 695 Fed. App'x 117 (6th Cir. 2017).

In *Coulter-Owens*, Time had successfully moved for summary judgment as to the PPPA claim, arguing that it had no liability under the statute because it had sold magazines wholesale to the subscription agent from whom the plaintiff had actually purchased her magazine subscription. In upholding the lower court's decision, the Sixth Circuit concluded that the Michigan Legislature's use of the words "at retail" in the PPPA must "mean something and at a

minimum … means that some types of sales must be 'nonretail,' which are consequently excluded." *See id.* at 123-124. Because Time had not sold its magazine to that Plaintiff, the PPPA did not apply to it. Here, although Plaintiff alleges that he, and the other members of the class by extension, subscribed to *Financial Advisor*, they did not purchase it at retail from CFPN. Indeed, they did not purchase it at all because the magazine is provided for free to licensed financial advisors who request it. Accordingly, following the logic of *Coulter-Owens* and applying meaning to the words used by the Michigan Legislature, the PPPA does not apply, and CFPN has that as a meritorious defense, as established in its Motion.

C.  **CFPN's delay evinces neither an intent to thwart these proceedings nor a reckless disregard for the effect of its conduct thereon.**

Having established that Plaintiff will suffer no prejudice and that CFPN has at least one meritorious defense to this action, the Court can and should grant CFPN's motion to set aside the default without going further. Nevertheless, it is worth noting that nothing in Plaintiff's Response supports a conclusion that CFPN intentionally or recklessly disregarded these proceedings.

CFPN's president, Charlie Stroller, has essentially admitted that CFPN did not have a process for confirming receipt of materials received from Cogency during the pandemic. (*See* Stroller Declaration ¶¶ 6-9, PageID.784.) He further stated that he did not become aware of this lawsuit until July 23, 2023, when he was informed that a subpoena had been delivered to CFPN's offices, a document he reviewed six days later and incorrectly believed had been sent to CFPN in error. (*Id.* ¶ 10, PageID.784-785.) It was not until July 31 that he learned about service via email of what he understood was the same or a similar document. (*Id.* ¶ 11, PageID.785.) And he did not fully appreciate that this matter required a response from CFPN until August 21, 2023, when he

5

received a copy of the Plaintiff's Motion for Entry of Default Judgment (ECF No. 28). (Stroller Declaration ¶ 12, PageID.785.) At that point, he quickly acted to respond by contacting CFPN's insurer, retaining counsel, and ultimately causing CFPN to file the Motion to Set Aside through its counsel – all of which happened within a month's time. Moreover, Stroller averred that he was not aware of the filing of the Complaint and was unable to confirm "whether, how, or when" Cogency had forwarded it. (*Id.* ¶ 16, PageID.785.) His respect for this Court and these proceedings is established by the actions he took starting in August and his statement that "[h]ad [he] been aware of the lawsuit and need to respond in August 2022 …, [he] would have acted quickly to retain counsel and defend the case." (*Id.* ¶ 17, PageID.785.)

Plaintiff's attempt to argue that because Cogency's website provides that it immediately or promptly forwards notice to its customers does not establish (a) receipt by CFPN or (b) an intentional or reckless decision to ignore this case. Rather, it is speculation. Indeed, the only evidence before the Court on this issue is the Stroller Declaration, which refutes Plaintiff's argument that CFPN's failure to respond was due to something more than carelessness or negligence.

Simply put, this is not a situation where CFPN understood that it was involved in litigation but chose to do nothing. *Cf. Southern Electric Health Fund v. Bedrock Services*, 146 Fed. App'x 772 (6th Cir. 2005) (defendant was served with a complaint but did nothing after speaking with a third party who said that the case would " 'go away' " and advised "not to worry about the lawsuit") Rather, CFPN's lack of a response was the result of negligence at best because of a process oversight. Accordingly, there is no basis in the record or otherwise, to conclude that CFPN acted intentionally or recklessly in the hope of somehow thwarting these proceedings.

6

**Conclusion and Relief Requested**

For the reasons stated above, and as otherwise explained in its original Brief in Support of Motion to Set Aside Default, CFPN requests that this Court grant its Motion to Set Aside Default Pursuant to Fed. R. Civ. P. 55(c).

WHEREFORE, CFPN prays that this Court enter an order (i) setting aside the Default, (ii) permitting CFPN to defend this action by, among other things, filing an answer to the Complaint, contesting class certification, or taking other action, including filing a motion under Fed. R. Civ. P. 12(b)(6) seeking the dismissal of this action for its failure to state a claim for relief, and (iii) granting such other relief in CFPN's favor as is proper.

Respectfully submitted,

**BROOKS WILKINS
SHARKEY & TURCO PLLC**

*By: T.L. Summerville*
T. L. Summerville (P63445)
Attorneys for Defendant Charter Financial
Publishing Network, Inc.
401 S. Old Woodward Avenue, Suite 400
Birmingham, MI 48009
(248) 971-1719
summerville@bwst-law.com

Date: October 31, 2023

**CERTIFICATE OF COMPLIANCE-LOCAL RULE 7.3(B)(II)**

I hereby certify that the foregoing Brief contains 1,881 words, as calculated using the Word feature in Microsoft Word and exclusive of any words in the case caption, cover sheet, tables of content or authority, signature block, attachments, exhibits, affidavits, or other addenda.

*/s/ T.L. Summerville*
T. L. Summerville