# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MATTHEW KOTILA, individually and
on behalf of all others similarly situated,

     Plaintiff,

v.

CHARTER FINANCIAL PUBLISHING
NETWORK, INC.,

     Defendant.

Case No. 1:22-cv-00704

District Judge Hala Y. Jarbou

Magistrate Judge Ray S. Kent

## DEFENDANT CHARTER FINANCIAL PUBLISHING NETWORK, INC.'S RESPONSE BRIEF IN OPPOSITION TO PLAINTIFF MATTHEW KOTILA'S MOTION FOR DEFAULT JUDGMENT PURSUANT TO RULES 23(b)(3) AND 55(b)(2) AND APPROVAL OF PLAINTIFF'S PROPOSED CLASS NOTICE PLAN

## ORAL ARGUMENT REQUESTED

## QUESTIONS PRESENTED

1.    Should the Court enter a default judgment against CFPN where entry of such judgment would not prejudice Plaintiff and where CFPN's delay in responding to Plaintiff's Complaint was not caused by CFPN's culpable conduct?

CFPN answers no.

2.    Should the Court approve the class notice plan detailed in Plaintiffs Motion for Default Judgment pursuant to Rules 23(b)(3) and 55(b)(2).

CFPN answers that notwithstanding its objections to the class definition and the class members' standing, it does not object to the class notice plan, but no default judgment should be entered.

# TABLE OF AUTHORITIES

**Rules**                                                                **Page(s)**

W.D. Mich. L.R. 7.3(c) .......................................................................... 17

Fed. R. Civ. P. 12(b) .............................................................................. 3

Fed. R. Civ. P. 23(a) .............................................................................. 3

Fed. R. Civ. P. 23(b) ............................................................................ 3, 5

Fed. R. Civ. P. 55(b) ................................................................... 3, 5, 6, 7, 16


**Statutes**

M.C.L. § 445.1711 ............................................................................... 2, 9

M.C.L. § 445.1712 ................................................................................. 9


**Cases**

*Armijo v. Bronson Methodist Hospital*, 511 Mich. 1026, 991 N.W.2d 593 (2023) ........................... 12

*Binno v. American Bar Ass'n*, 826 F.3d 338 (6th Cir. 2016) ............................................. 8

*Buxton v. Hartin Asset Mgmt.*, No. 1:22-cv-600, 2023 WL 4861724 (W.D. Mich. Jul. 31, 2023) .... 8

*Carter v. DTN Management Co.*, 511 Mich. 1025, 991 N.W.2d 586 (2023) ................................. 12

*Dassault Systemes, SA v. Childress*, 663 F.3d 834 (6th Cir. 2011) .......................................... 10, 15

*Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837 (E.D. Mich. 2006) .................................... 8

*General Elec. Capital Corp. v. MacDonald's Indus. Products, Inc.* No. 1:07-CV-502, 2008 WL 2578818 (W.D. Mich. Jun. 26, 2008) ........................................................................ 7, 15

*Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F. 3.d 298 (6th Cir. 2001) ............ 13

*In re Monumental Live Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ................................. 9

*In re Tuli,* 172 F.3d 707 (9th Cir. 1999) ........................................................ 8

*INVST Fin. Grp., Inc. v. Chem-Nuclear Sys. Inc.*, 815 F.2d 391 (6th Cir. 1987) ...................... 10, 16

*Powers v. Hamilton Cty. Pub. Def. Comm'n.*, 501 F.3d 592, 619 (6th Cir. 2007) ........................... 9

*Russel v. City of Farmington Hills*, 34 Fed. App'x. 196 (6th Cir. 2002) ........................... 7

*Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005)................................................. 9

*Shepard Claims Serv. Inc. v. Williams Darrah & Assoc.*, 796 F.2d 190 (6th Cir. 1986)................ 6, 7

*Toler v. Glob. Coll. Of Nat Med., Inc.*, 2016 WL 67529 (E.D. Mich. Jan. 6, 2016).......................... 7

*United Coin Meter Co., Inc. v. Seaboard Coastline RR.*, 705 F.2d 839 (6th Cir. 1983)................ 7, 15

*Westfield Ins. Co. v. Pavex Corp.*, No. 17-14042, 2019 WL 851029 (E.D. Mich. Feb. 22, 2019).. 6, 7

*Williams v. Life Sav. & Loan*, 802 F.2d 1200 (10th Cir. 1986)...................................................... 8

*Vance v. Grand Rapids Hous. Comm'n*, No. 1:18-cv-1188, 2016 WL 7078496 (W.D. Mich. Dec. 21, 2018).............................................................................................................................................. 8

*Young v. Bradley*, 142 F. 2d. 658 (6th Cir. 1944)............................................................................ 13

**Publications**

Charles Alan Wright, Arther R. Miller, & Mary Kay Kane, Feder Practice and Procedure § 2684 (4th ed. 2016)................................................................................................................................... 7

**Administrative Orders**

Administrative Order 2020-3........................................................................................................ 12

## TABLE OF CONTENTS

Introduction ..................................................................................................................................1

Background .................................................................................................................................. 2

    A.   Procedural history ........................................................................................................ 2

    B.   CFPN's business model, recent history, and knowledge of this lawsuit ............................ 4

Argument ....................................................................................................................................7

    A.   This Court does not have jurisdiction to enter a default judgment. ................................... 8

    B.   Plaintiff will not be prejudiced if this Court refuses to enter the default judgment............10

    C.   CFPN has meritorious defenses. .....................................................................................12

    D.   Plaintiff's Complaint does not resolve the questions regarding standing, class definition, and damages. ..................................................................................................................... 13

    E.   The Amount in controversy is substantial enough to put defendant out of business. ........14

    F.   Defendant's failure to timely answer the Complaint was excusable...................................14

    G.   Public policy favors CFPN being allowed to participate in its defense..............................15

Conclusion ................................................................................................................................16

## **Introduction**

The Court should not enter a default judgment in favor of Plaintiff Matthew Kotilla ("Kotila"), individually and on behalf of others similarly situated (the "Class") (collectively "Plaintiff"), against Defendant Charter Financial Publishing Network, Inc. ("CFPN") in the amount requested in Plaintiff's motion or any other amount. Plaintiff does not have standing to bring the present claim because he does not fall into the class of customers protected under the Michigan Preservation of Personal Privacy Act (the "PPPA"). Regardless of a defendant's default, courts must evaluate plaintiff's standing and the court's jurisdiction before entering any default judgment. Plaintiff's lack of standing here deprives this Court of jurisdiction to render a judgment. Default judgment is also inappropriate because CFPN has meritorious defenses; its failure to timely the answer was not intentional, or due to recklessness or indifference; and public policy disfavors judgment by default against a willing and active litigant.

CFPN's meritorious defenses include questions over Plaintiff's standing, whether the applicable statute of limitations has been met, and whether the equitable doctrine of latches bars Plaintiff's claims. Regarding Plaintiff's standing, the PPPA affords a remedy only to "customers," which is defined by the statute as "a person who purchase[d], rent[ed], or borrow[ed] a book or other written material" from a defendant who sold such materials "at retail" or leased or loaned them. Neither Kotila nor any member of the Class qualifies as a customer because CFPN does not sell *Financial Advisor* at retail or otherwise. Rather, it provides it for free. Thus, no member of the class paid for a subscription to, rented, or borrowed *Financial Advisor*. Simply put, Plaintiff and the class members lack standing to recover under the PPPA, which deprives this Court of jurisdiction to hear their claims. As further explained below, there

are also legitimate questions whether Plaintiff's brought this lawsuit in a timely manner.

On the other hand, CFPN's failure to respond timely to the Complaint was not due to an intentional or reckless disregard for these proceedings, indifference, or a refusal to participate in this defense. Instead, CFPN's leadership simply did not understand that a lawsuit had been filed against it until August 21, 2023, when it received the notice of hearing for the present motion. Since that time, CFPN has obtained representation, filed a motion to set aside the default, and is participating in its defense of Plaintiff's claims. This class action lawsuit is still in its relatively early stages, as Plaintiff has not yet identified the full scope of class members or provided notice to the Class. Furthermore, public policy disfavors adjudication by default judgment, and Plaintiff would not be prejudiced by CFPN's participation here.

For those reasons, and others as stated below, CFPN requests that this Court deny Plaintiff's Motion for Default Judgment.

## Background

### A.    Procedural history

Plaintiff commenced this lawsuit on August 3, 2022, when he filed his then putative Class Action Complaint (ECF No. 1) (the "Complaint") against CFPN and a proposed Summons (ECF No. 2), which was approved the next day (ECF No. 4). The Complaint includes a single claim for relief based on CFPN's alleged violations of the privacy rights of Plaintiff and the other class members by selling, renting, or exchanging private reader data in contravention of the PPPA. M.C.L. § 445.1711 *et seq.*, as it existed before July 2016.

On August 21, 2022, Plaintiff filed a proof of service attesting that the Complaint and Summons had been delivered to CFPN's registered agent for service of process, Cogency Global,

Inc., by leaving them with Theresa Gradison, an "Administrative Assistant," on August 11, 2022 (ECF No. 5, PageID.534). On September 28, 2022, Plaintiff submitted an application for the entry of a default (ECF No. 7), stating that CFPN had failed to "answer, respond to, or otherwise defend this action within the time specified in Federal Rule of Civil Procedure 12(b)(1)(A)" (PageID.539). On October 19, 2022, the Clerk of the Court entered the Default.

On December 2, 2022, Plaintiff filed his Motion for Class Certification Pursuant to Rules 23(a) & 23(b)(3), and for Leave to Take Discovery Pursuant to Rule 55(b)(2) (ECF 13). On June 5, 2023, the Court entered its Opinion (ECF No. 16) and Order (ECF No. 17) granting the class certification motion on the condition that the Plaintiff provide a "more specific class definition" (PageID.652). Plaintiff attempted to address the concerns raised by the Court in the document titled "Plaintiff's Response to the Court's May 12, 2023 Opinion and Order," and filed on May 19, 2023. On June 5, 2023, nearly eight months after CFPN was defaulted, the Court entered an Order (ECF No. 17) granting class certification with its own modifications to the class definition specified therein (PageID.658-59). The Court also granted Plaintiff's request to conduct discovery to identify the class members for the purpose of calculating damages and required Plaintiff to file a motion for a default judgment no later than August 16, 2023. (PageID.658-659).

On August 16, 2023, Plaintiff filed a Motion for Default Judgment Pursuant to Rules 23(b)(3) and 55(b)(2) and Approval of Plaintiff's Class Notice Plan (ECF No. 27) (the "Default Judgment Motion"). However, to date, it does not appear that Plaintiff has determined the size of the Class with any certainty. In the brief supporting the Default Judgment Motion (ECF No. 28), Kotila contended that he and each member of the Class, which allegedly includes "at least 3,416" individuals (PageID.753), should each be awarded the maximum statutory damages of

$5,000 (PageID.754). Plaintiff is therefore seeking a minimum of $17,080,000 – an amount that would certainly put CFPN out of business.

**B.    CFPN's business model, recent history, and knowledge of this lawsuit**

Based in Shrewsbury, New Jersey, CFPN was founded and incorporated under the laws of the State of Delaware in 2000. See Exhibit A, Declaration of Charles L. Stroller, at p. 1 ¶ 2. CFPN, which has 24[1] employees, publishes a monthly print and digital magazine titled *Financial Advisor* and maintains a website for the magazine which can be accessed at https:// fa-mag.com. *Id.* at p. 1, ¶¶ 2-3.

CFPN does not sell *Financial Advisor*, but instead provides it at no cost to its roughly 40,000 subscribers. *Id.* at p. 1, ¶ 3. In addition, CFPN does not send *Financial Advisor* to members of the general public but, instead, only to licensed financial brokers and advisors whose license status CFPN first confirms. *Id.* at p.2, ¶ 4. At its height, when print media was in greater demand, CFPN had 120,000 subscribers. *Id.* ¶ 6.

Like many other businesses, CFPN's operations were dramatically affected by the Covid-19 pandemic. *Id.* Among other things, in March 2020, CFPN shifted its operations to a remote/working-from-home environment, which only ended on September 6, 2023, when CFPN instituted a 2-day per week in-office requirement. *Id.* at ¶ 7. During that time, CFPN had no employees working in its offices. *Id.* at ¶ 8.

As CFPN began to prepare for its return to in-office work, it was also moving to a smaller location in Shrewsbury. *Id.* at ¶ 9. During that process, on July 23, 2023, CFPN's chief executive

---

[1] Defendant's previously file Motion to Set Aside the Default Judgment (ECF No. 29), referenced that CFPN employed 28 people. The updated employee count reflects a recent reduction in CFPN's work force prompted by its diminishing annual revenues.

officer and chief financial officer, Charles L. Stroller ("Stroller"), was informed that a document, which he later learned to be a subpoena issued in this case, had been delivered to CFPN's office. *Id.* Stroller did not see the subpoena until a few weeks later when he physically returned to the office for the first time since March 2020. *Id.* at ¶ 10. Upon examining it, Stroller observed that it referred to a competitor of CFPN, ALM Global, LLC, which publishes a magazine titled "*Investment Advisor.*" *Id.* Being unaware of the lawsuit and believing the subpoena had been mistakenly sent to CFPN, Stroller did not appreciate that the matter required a response from CPFN. *Id.* at pp. 2-3 ¶ 10.

Stroller next heard of the lawsuit in late July or early August 2023, when Stephanie Perrin ("Perrin") CFPN's Director of Finance, informed him of emails she had received from CFPN's registered agent, Cogency Global, Inc., forwarding a document pertaining to this case, which Stroller believed was the same document regarding ALM Global he had earlier reviewed. *Id.* at p. 3, ¶ 11.

The next time Stroller heard about this lawsuit was on August 21, 2023, when he received an email from Perrin forwarding a copy of a document titled "Plaintiff's Brief in Support of His Motion for Default Judgment Pursuant to Rules 23(b)(3) and 55(b)(2) and Approval of Plaintiff's Proposed Class Notice Plan." *Id.* ¶ 13. Stroller forwarded the documents to CFPN's counsel in New Jersey who could not handle the matter and suggested he advise CFPN's insurer and consider retaining counsel in Michigan. See *id.* at p. 3 ¶¶ 13-14. On September 11, 2023, after CFPN's insurer advised that coverage was not available, Stroller retained the undersigned counsel to represent CFPN in this matter. *Id.* at p. 3, ¶ 15.

Being unaware of the bases for this lawsuit, Stroller requested that CFPN's Head of

Technology, Chrisitan Eddleston ("Eddleston"), search CFPN's subscriber database records to confirm whether Plaintiff, or an individual with the Plaintiff's name, had ever been a subscriber to *Financial Advisor*. *Id.* at p. 3, ¶ 19. Eddleston's search of CFPN's subscriber database, which includes data going back 7 years, revealed no record of a "Matthew Kotila" in CFPN's system. Exhibit B, Eddleston Declaration at pp. 1-2, ¶¶ 3, 5.

Eddleston also attempted to verify if a "Matthew Kotila" was a licensed financial broker or advisor. *Id.* at ¶. 1, ¶ 2. To do so, Eddleston searched three websites that provide information about licensed and registered financial brokers and advisors maintained by the Financial Industry Regulatory Authority ("FINRA"), the Securities & Exchange Commission ("SEC"), and Institutional Shareholder Services, Inc. ("ISS"). *Id.* at p. 2, ¶ 4. Eddleston's searches of those websites, "Brokercheck" (https://brokercheck.finra.org), Investment Advisor Public Disclosure (https://adviserinfo.sec.gov), and Discovery Data (https://discoverydata.com"), also returned no positive current or historical results for a "Matthew Kotila." *Id.* ¶ 5.

## <u>Standard of Decision</u>

Under Rule 55, a plaintiff may request a default judgment against a defendant who "has failed to please or otherwise defend…." An entry of default under Rule 55(a) is the first procedural step necessary to obtain a default. *Westfield Ins. Co. v. Pavex Corp.*, No. 17-14042, 2019 WL 851029, at * 2 (E.D. Mich. Feb. 22, 2019) (citing *Shepard Claims Serv. Inc. v. Williams Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir. 1986). The party must then apply to the Court for entry of the default judgment. Fed. R. Civ. P. 55(b)(2). A default judgment may be entered by the clerk when the plaintiff's claim is for a sum certain or a sum which can be made certain. Fed. R. Civ. P. 55(b)(1).

Default judgment is generally disfavored because there is a "strong preference for trials on the merits." *Shepard Claims Serv.,* 796 F.2d at 193. According to the Sixth Circuit, "judgment by default is a drastic step which should be resorted to in the most extreme cases." *United Coin Meter Co., Inc. v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983); see also *General Elec. Capital Corp. v. MacDonald's Indus. Products, Inc.* No. 1:07-CV-502, 2008 WL 2578818 at * 1 (W.D. Mich. Jun. 26, 2008). "When considering whether to enter a default judgment, a court should take into account: 1) possible prejudice to the plaintiff; 2) the merits of the claims; 3) the sufficiency of the complaint; 4) the amount of money at stake; 5) possible disputed material facts; 6) whether the default was due to excusable neglect; and 7) the preference for decisions on the merits." *Westfield, supra* at * 2 (quoting *Russel v. City of Farmington Hills*, 34 Fed. App'x. 196, 198 (6th Cir. 2002); see also *Toler v. Glob. Coll. Of Nat Med., Inc.,* 2016 WL 67529, at * 4 (E.D. Mich. Jan. 6, 2016). "To avoid entering a default judgment that can be later be successfully attacked as void under [Rule 60(b)(4)], a Court should determine whether it has jurisdiction over the parties and the subject matter." *Id.* at *5.

Under Rule 55(b)(2)(A)-(D), a court may conduct a hearing for any of the following: to conduct an accounting of the matter, to determine the amount of damages, to establish the truth of any allegation or evidence, or to investigate any additional matter. Fed. R. Civ. P. 55(b)(2)(A)-(D). Thus, under Rule 55(b), "the court has the discretion to decide whether to enter a judgment by default" or to "hold hearings" first. Charles Alan Wright, Arther R. Miller, & Mary Kay Kane, Feder Practice and Procedure § 2684 (4th ed. 2016).

## **Argument**

7

**A.**    **This Court does not have jurisdiction to enter a default judgment.**

"In order to render a valid judgment, a court must have jurisdiction over the subject matter and the parties and must act in a manner consistent with due process." *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006). "Standing is, of course, a threshold requirement for federal jurisdiction. If a party does not have standing to bring an action then the court has no authority to hear the matter and must dismiss the case." *Vance v. Grand Rapids Hous. Comm'n*, No. 1:18-cv-1188, 2016 WL 7078496 at * 2 (W.D. Mich. Dec. 21, 2018) (quoting *Binno v. American Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016). Therefore, this Court has a "responsibility to determine that it has the power to enter the default judgment," which creates a "affirmative duty to look into its jurisdiction… over the… parties." *Buxton v. Hartin Asset Mgmt.*, No. 1:22-cv-600, 2023 WL 4861724  (W.D. Mich. Jul. 31, 2023) (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)); see also *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attached as void, a court should determine whether it has the power. i.e., the jurisdiction, to enter the judgment in the first place.").

Here, Plaintiff does not have standing to bring a PPPA claim against CFPN because CFPN does not sell subscriptions to *Financial Advisor* – it provides the publication to its subscribers free of charge. Exhibit A at p. 1, ¶3. Absent standing to bring a PPPA claim, Plaintiff and the Class are not entitled to a default judgment in any amount. The PPPA applies to parties "engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings" and protects "customers" against the disclosure of "record[s] or information that personally identifies the customer as having purchased, leased,

rented, or borrowed those materials from the [party] engaged in the business." M.C.L. § 445.1712. The PPPA defines "customer" as "an individual who *purchases, rents, or borrows* a book, other written material, a sound recording, or a video recording. M.C.L. § 445.1711 (emphasis added). Because Plaintiff did not purchase, rent, or borrow *Financial Advisor* from CFPN, he is not a "customer" under the PPPA.

Plaintiff's lack of standing also raises issues with the Court's definition for the Class. Indeed, the Class definition established in the Court's June 5, 2023 Order (ECF No. 17) would provide relief to individuals not covered by the PPPA, as it refers to "Plaintiff [and] every other resident of Michigan who subscribed to any of [CFPN's] publications," PageID.658-659, rather than "customers" or Michigan residents who "purchased" *Financial Advisor*. Thus, not only does the Plaintiff does not have standing to pursue a PPPA claim against CFPN, but the class definition would provide a windfall to individuals the Michigan Legislature did not include within the PPPA's purview. The Court should exercise its broad discretion to modify the Class definition to resolve this standing issue. See *Powers v. Hamilton Cty. Pub. Def. Comm'n.*, 501 F.3d 592, 619 (6th Cir. 2007) ("[C]ourts must be vigilant to ensure that a certified class is properly constituted." "[D]istrict courts have broad discretion to modify class definitions.") (citing *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) (noting that "[l]itigants and judges regularly modify class definitions"); *In re Monumental Live Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ("District courts are permitted to limit or modify class definitions to prove the necessary precision.").

In short, neither the Plaintiff nor any potential class member is entitled to a recovery under the PPPA because none purchased, rented, or borrowed *Financial Advisor*. Accordingly,

the Court should not enter a default judgment not only because it lacks subject matter jurisdiction over Plaintiff's PPPA claim but also because doing so would unjustly enrich the Plaintiff and the class members. Instead, the Court should modify the class definition to reflect the PPPA's statutory language and conduct a hearing to determine why Plaintiff's claim should not be dismissed for lack of standing.

**B.**     **Plaintiff will not be prejudiced if this Court refuses to enter the default judgment.**

Plaintiff argues that he and the Class would suffer irreparable prejudice if this Court refuses to enter the default judgment because "Plaintiff and the other Class member have been waiting for over a year for relief in this matter." PageID.751. Plaintiff's prejudice argument lacks weight because delay alone is insufficient to establish prejudice. *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys. Inc.*, 815 F.2d 391, 398 (6th Cir. 1987). Instead, "it must be shown that the delay will result in loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion. *Id.*, see also *Dassault Systemes, SA v. Childress*, 663 F.3d 834, 842 (6th Cir. 2011).

Although the case was filed over a year ago, Plaintiff fails to address how CFPN's delayed participation in the case has resulted in loss of evidence, created discovery hurdles, or provided the opportunity for fraud or collusion. Contrary to Plaintiff's bare allegations, this Court's refusal to enter a default judgment will not prejudice Plaintiff because this class action litigation is still in its relatively early stages. The class was only certified on June 5, 2023, mode of notice has not been approved, and Plaintiff is still working to identify all members of the Class (of which none are entitled to a recovery under the PPPA). Plaintiff has already had an opportunity to conduct discovery to identify class members, which information is presumably still in the possession of his

counsel, and CFPN of course has access to its subscriber database. If anything, denying the motion will allow an opportunity to resolve the dispositive jurisdictional and class definition questions raised above.

Neither Plaintiff's Complaint nor the motion contain explicit references to records, documents, or other information showing how CFPN violated the PPPA, when statutorily-proscribed information was shared, or what third parties had access to Plaintiffs protected private information. Rather, the Complaint and motion rely upon conclusory allegations and articles, Congressional letters, and news reports discussing the need to protect reader privacy. Indeed, it is unclear if Plaintiff has any proof to support the claims against CFPN or that the Class definition, even as modified by the Court, is appropriate given that CFPN only provides *Financial Advisor* to licensed brokers and advisors who voluntarily sign-up and agree to receive marketing information and for free. *See* Exhibit C, copy of *Financial Advisor* online subscription application and renewal form.[2]

Likewise, there will be no increase in discovery difficulties. While the docket suggests that Plaintiff's counsel obtained some information from third-parties, there is no reason to believe CFPN will not cooperate in good faith discovery. Rather, CFPN has every reason to do so given the nature of the business, the claims made against it, the amount of damages Plaintiff seeks on behalf of himself and the Class, and class member has standing under the PPPA.

Finally, rejecting Plaintiff's motion for default judgment will allow the parties and the Court to test each side's allegations, defenses, and other contentions so as to reach a just result on the merits. Accordingly, this factor weighs in favor of rejecting Plaintiff's motion for default judgment.

---

[2] Subscribe to Financial Advisor Magazine (b2bmediaportal.com)

C.    **CFPN has meritorious defenses.**

As stated in further detail in Defendant Motion to Set Aside the Default (ECF No. 29), CFPN has meritorious defenses. First, as explained above, Plaintiff does not have standing to bring the present action under the PPPA because neither he nor any member of the class is a "customer" as defined in the statute. Because CFPN does not sell, rent, or lend *Financial Advisor* to its subscribers, the subscribers are not statutorily defined "customers" of CFPN. Therefore, Plaintiff is not entitled to the protections of the PPPA or the statutory damages sought.

CFPN also has a potential statute of limitations defense. To the extent Plaintiff relies on disclosures that occurred outside the applicable statute of limitations, Kotila and other members of the Class are barred from recovery. Notably, the Complaint alleges that CFPN violated the version of the PPPA in effect before the 2016 amendments became effective on July 31 of that year (*see* PageID.2). Plaintiff also states in footnote 1 to the Complaint that the applicable statute of limitations period is 6 years (PageID.2), meaning that the last day to bring claims based on the old version of the PPPA lapsed on July 31, 2022. The Complaint, however, was not filed until August 3, 2022. Insofar as Plaintiff has argued that Michigan Supreme Court Administrative Order 2020-3 ("AO 2020-3"), issued on March 23, 2020, tolls the statute of limitations for up to an additional 101 days, it is important to note that question of the constitutionality of AO 2020-3 is currently pending before that court in two cases: *Carter v. DTN Management Co.*, 511 Mich. 1025, 991 N.W.2d 586 (2023), and *Armijo v. Bronson Methodist Hospital*, 511 Mich. 1026, 991 N.W.2d 593 (2023). If the Supreme Court determines that it lacked the authority to extend the limitations period, Plaintiff's claim will be time barred.

Regardless of whether this action falls under the general six-year statute of limitations, CFPN may also have a meritorious defense under the doctrine of laches. See *Young v. Bradley*, 142 F. 2d. 658, 662 (6th Cir. 1944) (Laches may apply irrespective of the statute of limitations). Laches applies in situations where there is lack in diligence by plaintiff in asserting its claims, which results in prejudice to defendant. *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F. 3.d 298, 320 (6th Cir. 2001). To the extent Plaintiff or any other members of the class unduly delayed in bringing claims against CFPN for the conduct described in the complaint, their claims are barred by the equitable doctrine of latches. The foregoing defenses, as supported by Declarations of Stroller and Eddleston (Exhibits A and B) and other evidence that may be adduced, would require a different result once established. As such, the meritorious defense factor weighs in CFPN's favor.

**D.     Plaintiff's Complaint does not resolve the questions regarding standing, class definition, and damages.**

CFPN's liability for violations under the PPPA is not conclusive even if all of Plaintiff's Complaint allegations are deemed admitted. As detailed above and in CFPN's pending motion to set aside the default (ECF No. 29), Plaintiff's Complaint does not make explicit references to records, documents, or other information showing how CFPN violated the PPPA, when statutorily-proscribed information was shared, or what third parties had access to Plaintiffs protected private information. The Complaint instead relies on conclusory allegations and articles, Congressional letters, and news reports discussing the need to protect reader privacy. Indeed, it is unclear if Plaintiff has any proof to support the claims against CFPN or that the Class definition, even as modified by the Court, is appropriate given that CFPN only provides Financial Advisor to licensed brokers and advisors who voluntarily sign-up and agree to receiving

marketing information. Notwithstanding the status of those allegations being admitted, they raise questions as to standing and jurisdiction, which is a threshold issue that this Court must evaluate before entering a default judgment against CFPN. Moreover, because the PPPA does not apply to mere subscribers to *Financial Advisor*, it cannot be said that the statutory damages sought are for a sum certain other than zero. Accordingly, this factor weighs in CFPN's favor.

**E.    The Amount in controversy is substantial enough to put defendant out of business.**

If a default judgment were entered against CFPN for the full amount Plaintiff requests and awarded to the class as currently defined, it would force CFPN to permanently shut down its operations. CFPN is a small publisher with fewer than 25 employees. Over the past 5 years, CFPN has not had total annual revenues greater than $6 million and is on track to earn substantially less than that for 2023. If this Court were to enter a default judgment for the entire statutory amount for each class member, the resulting judgment would exceed $17 million. Given CFPN's relatively modest annual revenues, it would not be able to continue operations as a going concern if such a substantial default judgment was entered against it. The substantial sum at issue makes this factor favor CFPN.

**F.    Defendant's failure to timely answer the Complaint was excusable.**

Defendant's failure to answer the complaint was due to a combination of factors including a shift in Defendant's operations resulting from the Covid-19 pandemic and a change in physical office locations. As detailed in CFPN's motion to set aside the default (ECF No. 29) and supporting reply brief (ECF No. 38), CFPN's delay in taking action to defend this case was not the result of culpable conduct and is therefore excusable. To be considered culpable for the purposes of analyzing a Rule 55 motion, the defendant's conduct in not timely responding "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [the]

conduct on those proceedings." *Dassault Systemes, SA v. Childress*, 663 F.3d 834, 841 (6th Cir. 2011). As shown by the Stroller Declaration, CFPN did not timely respond to the Complaint not because of an intentional act, but rather an unfortunate oversight resulting from having no in-office staff for over three years. Exhibit A, pp. 1-3.  Although the Court may question CFPN's decision to not having a process in place to check for important mail and other documents, absent reason to believe CFPN was engaging in willful conduct to impair the conduct of these proceedings – which Plaintiff does not allege and, of course, did not happen – lack of oversight is not sufficient, in itself, to justify denying the motion.

**G.      Public policy favors CFPN being allowed to participate in its defense.**

According to the Sixth Circuit, "judgment by default is a drastic step which should be resorted to in the most extreme cases." *United Coin Meter Co., Inc. v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983); see also *General Elec. Capital Corp. v. MacDonald's Indus. Products, Inc.* No. 1:07-CV-502, 2008 WL 2578818 at * 1 (W.D. Mich. Jun. 26, 2008). Public Policy does not favor the entry of default judgments where the defendant is actively participating in the case. Plaintiff's only argument in support of this factor is that at the time the motion was filed, CFPN had not answered or appeared. (PageID.753). This argument does not hold weight. As stated above, the notice of hearing for this present motion for entry of default judgment was the first notice that confirmed CFPN's understanding that it had been sued. From the time it received notice of this motion, on August 21, 2023, CFPN has been actively participating in its defense, including seeking Plaintiff's stipulation to set aside the default, filing a motion to set aside the default, and defending the present motion for default judgment. Absent substantial prejudice to Plaintiff or culpable conduct by CFPN, the policy of hearing claims on the merits weighs in favor

of allowing the claims to go forward. See *INVST Financial Group*, 815 F. 2d at 398-99.

Because there will not be substantial prejudice to Plaintiff and because the delay in responding was not due to CFPN's culpable conduct, this factor favors denying Plaintiff's request for default judgment and allowing CFPN to defend Plaintiff's claims on their merits.

### Conclusion

Each of the seven factors to be examined when considering whether to enter a default judgment under Rule 55(b) favor denying Plaintiff's motion. Beyond a mere delay in the proceedings, Plaintiff and the Class will not be prejudiced in any meaningful way. CFPN has meritorious defenses to the claims, and its delay in responding was not due to a willful or intentional act to frustrate these proceeding. Accordingly, and because resolution of disputes on the merits are favored, this Court should deny Plaintiff's Motion for Default Judgment. CFPN does not object to the notice procedure described in the motion.

Respectfully submitted,

**BROOKS WILKINS
SHARKEY & TURCO PLLC**

By:    */s/T.L. Summerville*
T.L. Summerville (P63445)
Attorneys for Defendant Charter Financial
Publishing Network, Inc.
401 S. Old Woodward Avenue, Suite 400
Birmingham, MI 48009
(248) 971-1719
summerville@bwst-law.com

Date: December 4, 2023

16

## <u>CERTIFICATE OF COMPLIANCE-LOCAL RULE 7.3(B)(II)</u>

     I hereby certify that the foregoing Brief contains 4,824 words, as calculated using the Word feature in Microsoft Word and exclusive of any words in the case caption, cover sheet, tables of content or authority, signature block, attachments, exhibits, affidavits, or other addenda.

                                 */s/ T.L. Summerville*
                                 T.L. Summerville

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that, on December 4, 2023, I electronically filed the foregoing document with the Clerk of the Court using the electronic filing system which will send notification of such filing to all counsel of record.

                                   */s/ T.L. Summerville*
                                 T.L. Summerville

# Exhibit A

## UNITED STATES DISTRICT COURT

### FOR THE WESTERN DISTRICT OF MICHIGAN

MATTHEW KOTILA, individually and
on behalf of all others similarly situated,

Case No. 1:22-cv-00704

Plaintiff,

District Judge Hala Y. Jarbou

v.

Magistrate Judge Ray S. Kent

CHARTER FINANCIAL PUBLISHING
NETWORK, INC.,

Defendant.

### DECLARATION OF CHARLES L. STROLLER IN SUPPORT OF DEFENDANT CHARTER FINANCIAL PUBLISHING NETWORK, INC.'S MOTION TO SET ASIDE DEFAULT PURSUANT TO FED. R. CIV. P. 55(C)

Charles L. Stroller, for his declaration in support of Defendant Charter Financial

Publishing Network, Inc.'s ("CFPN") Motion to Set Aside Default Pursuant to Fed. R. Civ. P.

55(c) ("Motion to Set Aside Default"), states as follows:

1.    I am the chief executive officer and chief financial officer of CFPN and make this

Declaration in support of its Motion to Set Aside Default in that capacity based upon my

personal knowledge and review of company records, except with respect to matters stated upon

information and belief, which I believe to be true.

2.    Founded in 2000 and incorporated under Delaware law that same year, CFPN has

website for *Financial Advisor*, https://www.fa-mag.com.

4.    CFPN does not provide *Financial Advisor* to the general public. Rather,

subscriptions are only issued to licensed financial brokers and advisors, as confirmed by CFPN.

5.    At its height, when print media was in greater demand, CFPN had 120,000

subscribers.

6.    Until March 2020, CFPN's employees worked in its offices, but like many other

businesses, its operations were dramatically affected by the Covid-19 pandemic.

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

MATTHEW KOTILA, individually and
on behalf of all others similarly situated,

Plaintiff,

v.

CHARTER FINANCIAL PUBLISHING
NETWORK, INC.,

Defendant.

Case No. 1:22-cv-00704

District Judge Hala Y. Jarbou

Magistrate Judge Ray S. Kent

## DECLARATION OF CHARLES L. STROLLER IN SUPPORT OF DEFENDANT CHARTER FINANCIAL PUBLISHING NETWORK, INC.'S MOTION TO SET ASIDE DEFAULT PURSUANT TO FED. R. CIV. P. 55(C)

Charles L. Stroller, for his declaration in support of Defendant Charter Financial

Publishing Network, Inc.'s ("CFPN") Motion to Set Aside Default Pursuant to Fed. R. Civ. P.

55(c) ("Motion to Set Aside Default"), states as follows:

1.      I am the chief executive officer and chief financial officer of CFPN and make this

Declaration in support of its Motion to Set Aside Default in that capacity based upon my

personal knowledge and review of company records, except with respect to matters stated upon

information and belief, which I believe to be true.

2.      Founded in 2000 and incorporated under Delaware law that same year, CFPN has

28 employees, including myself, and has its office in Shrewsbury, New Jersey.

3.      CFPN is the publisher of *Financial Advisor*, which is a subscription-based,

monthly print and digital magazine focused on providing essential market information and

strategies to CFPN's approximately 40,000 subscribers at no cost; CFPN also maintains a

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

MATTHEW KOTILA, individually and
on behalf of all others similarly situated,

Case No. 1:22-cv-00704

Plaintiff,

District Judge Hala Y. Jarbou

Magistrate Judge Ray S. Kent

v.

CHARTER FINANCIAL PUBLISHING
NETWORK, INC.,

Defendant.

### DECLARATION OF CHARLES L. STROLLER IN SUPPORT OF DEFENDANT CHARTER FINANCIAL PUBLISHING NETWORK, INC.'S MOTION TO SET ASIDE DEFAULT PURSUANT TO FED. R. CIV. P. 55(C)

Charles L. Stroller, for his declaration in support of Defendant Charter Financial

Publishing Network, Inc.'s ("CFPN") Motion to Set Aside Default Pursuant to Fed. R. Civ. P.

55(c) ("Motion to Set Aside Default"), states as follows:

1. I am the chief executive officer and chief financial officer of CFPN and make this

Declaration in support of its Motion to Set Aside Default in that capacity based upon my

personal knowledge and review of company records, except with respect to matters stated upon

information and belief, which I believe to be true.

2. Founded in 2000 and incorporated under Delaware law that same year, CFPN has

28 employees, including myself, and has its office in Shrewsbury, New Jersey.

3. CFPN is the publisher of *Financial Advisor*, which is a subscription-based,

monthly print and digital magazine focused on providing essential market information and

strategies to CFPN's approximately 40,000 subscribers at no cost; CFPN also maintains a

website for *Financial Advisor*, https://www.fa-mag.com.

4.      CFPN does not provide *Financial Advisor* to the general public. Rather, subscriptions are only issued to licensed financial brokers and advisors, as confirmed by CFPN.

5.      At its height, when print media was in greater demand, CFPN had 120,000 subscribers.

6.      Until March 2020, CFPN's employees worked in its offices, but like many other businesses, its operations were dramatically affected by the Covid-19 pandemic.

7.      When the shutdowns to stop the spread of Covid-19 took effect, CFPN's employees shifted to remote work, as did many other businesses. However, CFPN only recently began its return to an in-office environment on September 6, 2023, when it instituted a 2-day per week in-office requirement.

8.      Between March 2020 and September 2023, CFPN had no employees working in its offices on a regular basis.

9.      I did not become generally aware of the existence of this lawsuit until on or about July 23, 2023, when CFPN's Director of Finance, Stephanie Perrin, informed me that a document, which she understood to be a subpoena, had been left at our offices and that she would leave the documents on my desk in my absence.

10.     On July 29, while in the office for the first time in over a year, I examined the documents left on July 23, a copy of which is attached hereto as Exhibit 1. That document appeared to request records from a competitor, ALM Global, LLC, which publishes a magazine titled "*Investment Advisor*." Because I was unaware of the lawsuit, I unfortunately did not appreciate that the matter required a response from CFPN. In fact, I believed CFPN was

2

mistakenly referenced in the document.

11.     On July 31, Ms. Perrin informed me that she had received via email sent by our designated registered agent, Cogency Global, Inc., which she believed to be a copy of the same document delivered on July 23 or that it pertained to the same matter that I did not believe involved CFPN.

12.     I did not hear again about this lawsuit until August 21, 2023, when Ms. Perrin forwarded via email a copy of a document titled "Plaintiff's Brief in Support of His Motion for Default Judgment Pursuant to Rules 23(b)(3) and 55(b)(2) and Approval of Plaintiff's Proposed Class Notice Plan."

13.     On August 25, 2023, I forwarded the documents received on August 21 to our counsel in New Jersey, who could not handle the matter.

14.     On September 5, 2023, at the suggestion of CFPN's New Jersey counsel, I asked Ms. Perrin to forward the documents received on August 21 to our insurer. Unfortunately, Ms. Perrin did not do so until September 8, 2023.

15.     On September 11, 2023, our insurer advised that coverage would not be provided for this matter. Thereafter, I began the process of retaining counsel in Michigan to represent CFPN.

16.     Although I later learned that the Complaint had been served on our registered agent on August 11, 2022, I have been unable to confirm precisely whether, how, or when CFPN's registered agent forwarded the Complaint and accompanying Summons.

17.     Had I been aware of the lawsuit and need to respond in August 2022 or shortly thereafter, I would have acted quickly to retain counsel and defend the case.

18.     I have also had a chance to review the allegations made in the Complaint by the plaintiff, Matthew Kotila, that CFPN shared his personal subscriber data with third party advertisers.

19.     After reviewing the Complaint, I requested that CFPN's Head of Technology, Christian Eddleston, search CFPN's subscriber database to confirm whether an individual named Matthew Kotila was, or had ever been, a CFPN subscriber.

20.     Eddleston performed that search and, as evidenced by his own Declaration in support of CFPN's Motion to Set Aside Default, found no record that "Matthew Kotila" was ever a subscriber to *Financial Advisor* or was otherwise listed in CFPN's subscriber database. *See* Exhibit C to Motion to Set Aside Default, Declaration of Christian Eddleston in Support of Defendant Charter Financial Publishing Network, Inc.'s Motion to Set Aside Default ("Eddleston Decl."), at p. 1, ¶ 3.

21.     Eddleston also searched available and well-recognized websites with databases of licensed financial brokers and advisors to confirm whether "Matthew Kotila" was a licensed financial broker or advisor in Michigan or any other U.S. state or territory. *See* Eddleston Decl. at p. 2, ¶¶ 4-5.

22.     Based on my review of the Complaint's allegations against CFPN, my knowledge of CFPN's business operations since March 2020, and Eddleston's investigation, if the Default is set aside and CFPN is permitted to respond, CFPN would assert at least the following meritorious defenses:

- **Failure to State a Claim for Relief** – As Kotila was never a subscriber to *Financial Advisor*, does not appear to be a licensed financial broker or advisor, and

4

is not included on CFPN's subscriber database, the Complaint fails to state a claim upon which relief can be granted in his favor.

- **Statute of Limitations** – To the extent Plaintiff relies on disclosures that occurred outside the applicable statute of limitations, Plaintiff and any other members of the class are barred from recovery.

- **Doctrine of Laches** – To the extent Plaintiff or any other members of the class unduly delayed in bringing claims against CFPN for the conduct described in the Complaint, their claims are barred by the equitable doctrine of laches.

23.    I declare under penalty of perjury that the foregoing statements are true and correct.

FURTHER DECLARANT SAYETH NOT.

Charles L. Stroller

Date: September 21, 2023

5

# Exhibit 1

Cogency Global welcomes Tax Guard into our growing family! Read more **here.**    



PLACE AN ORDER | PAY INVOICE          LOGIN 🔒



Representation & Compliance
## REGISTERED AGENT SERVICES

# NATIONAL REGISTERED AGENTS AND REGISTERED OFFICES

## WHAT A REGISTERED AGENT



**VIEW ALL SERVICES**



Compan
ies and
nonprofi
ts are
required
by law
to
appoint
register
ed
agents
and registered offices for every state they're located in
to receive and respond to sensitive legal documents
(service of process), tax information, compliance
communications, and more. Organizations that
operate in multiple states often choose to appoint a
national registered agent company. When your
company was formed, your registered agent may have
been chosen for you without you understanding the
details.

A qualified, nationwide registered agent ensures
important legal documents are handled promptly and
in accordance with the laws of the jurisdiction in all
states where you do business. When you appoint our
experts as your registered agent or registered office in



**VIEW ALL SERVICES**

**Download our resource guide to learn the do's and don'ts of working with a registered agent.**

Download Your Free Registered Agent White Paper

# HOW DO I HIRE A REGISTERED AGENT?

If you're looking for a registered agent for a corporation or any other entity, we'll become a trusted part of the team, from preparing and filing your agency appointment to providing the most responsive service of process delivery in our industry, nationwide, and around the world.

Get notified immediately when your company is served. Choose the format you prefer for immediate notification (email, secured link, password-protected access and/or express courier). Then, access your real-time updates, deadlines, status changes, and information anywhere with our secure online system, Entity Central®.

# YOUR REGISTERED AGENT AND REGISTERED OFFICE SERVICES

Whether you need statutory representation for nonprofits, companies in a REIT portfolio, or for other for-profit entities, we work hard to be the smart choice

 **VIEW ALL SERVICES**

Our registered agent services include:

- A registered agent and registered office address to fulfill state requirements.
- Experienced handling of service of process, as well as legal and state tax notifications in every state and many countries around the world.
- Immediate notification of new documents.
- Secure notification options for service of process (email, via a secured link and password-protected access, and express courier delivery).
- Use of our online entity management system, [Entity Central®](#), for easy access to entity information, customized reports, and real-time status updates right from smart devices anywhere.



*Due to the nature of our business, COGENCY GLOBAL exclusively serves established organizations with professional email addresses.*

## CONTACT US

Email*

Job Title*

Please Select ▾

Number of Appointments*

Appointment = one entity in one state

Please Select ▾

Current Agent*



**VIEW ALL SERVICES**

How Did You Hear About Us?*

Please Select

By submitting this form, you give us permission to contact you and you agree to the terms of our global privacy policy.

protected by **reCAPTCHA**
Privacy · Terms

CONTACT US NOW

# Related Resources

**7 REASONS TO LOVE YOUR REGISTERED AGENT**

**VIEW ALL SERVICES**

## NEW REQUIREMENTS FOR OVERSEAS ENTITIES IN THE UK

## YOU MAKE ME FEEL LIKE A... NATURAL PERSON?

What this is: Did you know many states require that a communications contact, or authorized contact for

≡    **VIEW ALL SERVICES**

Read More Articles »

---

## Sign Up For COGENCY GLOBAL Email Updates

SIGN UP

**Registered Agent Downloads**

Registered Agent Address List
Registered Agent Contact Info Form

**ABOUT US**

Company History

Employment

Contact Us

News and Events

Blog

**WHO WE HELP**

Law Firms

Lenders

Nonprofits

Companies

**WHAT WE DO**

Registered Agent Services

Corporate Services

 **VIEW ALL SERVICES**

Process Agent Services

Authentication, Legalization and Apostille Services

Independent Director and Manager Services

Nonprofit Services

UCC, IP and Related Due Diligence Services

Real Property Services

Court Services

Federal Agency Services

Library Services


**ONLINE TOOLS**

Entity Central

Entity Management System

UCC ProFile

Corporate Forms Library

State Links

County Lookup

State Records Central

Delaware Annual Report Filing System

My Invoices


**CORPORATE RESOURCES**

CTA Resources

General Corporate Information and Resources

Authentication and Legalization Resources

Misleading Annual Report and Compliance Solicitations

Government Resources

Other Corporate Resources


**UCC RESOURCES**

Article 9 Forms

UCC Article 9 Filing and Searching Info

Article 9 Court Cases of Interest

Other Helpful UCC Links


 **VIEW ALL SERVICES**

### CORPORATE HQ

COGENCY GLOBAL INC.

122 E. 42ND STREET, 18TH FL.
NY, NY 10168

P: 800.221.0102
F: 800.944.6607
INT'L: +1.212.947.7200
INT'L FAX: +1.212.564.6083

### EUROPEAN HQ

COGENCY GLOBAL (UK) LIMITED

REGISTERED IN ENGLAND &
WALES, REGISTRY #8010712

6 LLOYDS AVENUE, UNIT 4CL
LONDON EC3N 3AX, UK

P: +44 (0)20.3961.3080

### ASIA PACIFIC HQ

COGENCY GLOBAL (HK) LIMITED
A HONG KONG LIMITED COMPANY

UNIT B, 1/F
LIPPO LEIGHTON TOWER
103 LEIGHTON RD.
CAUSEWAY BAY, HONG KONG

P: +852.2682.9633
F: +852.2682.9790



## VIEW ALL SERVICES

CONNECT WITH US



© Copyright 2023 COGENCY GLOBAL INC. All Rights Reserved. | Privacy Policy | Terms of Use | Cookies Settings

**VIEW ALL SERVICES**

# Exhibit B

## UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF MICHIGAN

MATTHEW KOTILA, individually and
on behalf of all others similarly situated,

       Plaintiff,

v.

CHARTER FINANCIAL PUBLISHING
NETWORK, INC.,

       Defendant.

Case No. 1:22-cv-00704

District Judge Hala Y. Jarbou

Magistrate Judge Ray S. Kent

### DECLARATION OF CHRISTIAN EDDLESTON IN SUPPORT OF DEFENDANT CHARTER FINANCIAL PUBLISHING NETWORK, INC.'S MOTION TO SET ASIDE DEFAULT PURSUANT TO FED. R. CIV. P. 55(C)

Christian Eddleston states as follos for his Declaration in support of Defendant Charter Financial Publishing Network, Inc.'s ("CFPN") Motion to Set Aside Default Pursuant to Fed. R. Civ. P. 55(c) ("Motion to Set Aside Default"):

1.     I am employed by CFPN as its Head of Technology and make this Declaration in support of its Motion to Set Aside Default in that capacity based upon my personal knowledge and review of company records, except with respect to matters stated upon information and belief, which I believe to be true.

2.     In September 2023, at the request of Charles L. Stroller, CFPN's CEO and CFO, I searched CFPN's internal subscriber database records to determine whether the named plaintiff in this action, Matthew Kotila, was or had been a subscriber to *Financial Advisor*, a monthly, print magazine published by CFPN.

3.     The results of my search revealed no record for the name "Matthew Kotila"

within the database, which includes the names of individuals who had a subscription, whether active or lapsed, at any time over the last 7 years.

4.      Because CFPN only provides copies of *Financial Advisor* magazine to licensed financial brokers or advisors, I also searched three databases recognized in the financial industry that provide information about licensed financial brokers and advisors: the Investment Advisor Public Disclosure website, https://adviserinfo.sec.gov, which is maintained by the Securities and Exchange Commission ("SEC"); "Brokercheck" (https://brokercheck.finra.org), which is maintained by the Financial Industry Regulatory Authority ("FINRA"); and Discovery Data (https://discoverydata.com"), which is maintained by Institutional Shareholder Services, Inc.

5.      My searches of the foregoing websites, which upon information and belief include records for every U.S. state and territory, revealed no positive current or historical results for the name "Matthew Kotila."

6.      I declare under penalty of perjury that the foregoing statements are true and correct.

FURTHER DECLARANT SAYETH NOT.

_____

Chrisitan Eddleston

Date: September 21, 2023

### UNITED STATES DISTRICT COURT

### FOR THE WESTERN DISTRICT OF MICHIGAN

MATTHEW KOTILA, individually and
on behalf of all others similarly situated,

      Plaintiff,

v.

CHARTER FINANCIAL PUBLISHING
NETWORK, INC.,

      Defendant.

Case No. 1:22-cv-00704

District Judge Hala Y. Jarbou

Magistrate Judge Ray S. Kent

### DECLARATION OF CHRISTIAN EDDLESTON IN SUPPORT OF DEFENDANT CHARTER FINANCIAL PUBLISHING NETWORK, INC.'S MOTION TO SET ASIDE DEFAULT PURSUANT TO FED. R. CIV. P. 55(C)

Christian Eddleston states as follos for his Declaration in support of Defendant Charter

Financial Publishing Network, Inc.'s ("CFPN") Motion to Set Aside Default Pursuant to Fed.

R. Civ. P. 55(c) ("Motion to Set Aside Default"):

1. I am employed by CFPN as its Head of Technology and make this Declaration in

support of its Motion to Set Aside Default in that capacity based upon my personal knowledge

and review of company records, except with respect to matters stated upon information and

belief, which I believe to be true.

2. In September 2023, at the request of Charles L. Stroller, CFPN's CEO and CFO,

I searched CFPN's internal subscriber database records to determine whether the named

plaintiff in this action, Matthew Kotila, was or had been a subscriber to *Financial Advisor*, a

monthly, print magazine published by CFPN.

3. The results of my search revealed no record for the name "Matthew Kotila"

*E.CE.*

within the database, which includes the names of individuals who had a subscription, whether active or lapsed, at any time over the last 7 years.

4.      Because CFPN only provides copies of *Financial Advisor* magazine to licensed financial brokers or advisors, I also searched three databases recognized in the financial industry that provide information about licensed financial brokers and advisors: the Investment Advisor Public Disclosure website, https://adviserinfo.sec.gov, which is maintained by the Securities and Exchange Commission ("SEC"); "Brokercheck" (https://brokercheck.finra.org), which is maintained by the Financial Industry Regulatory Authority ("FINRA"); and Discovery Data (https://discoverydata.com"), which is maintained by Institutional Shareholder Services, Inc.

5.      My searches of the foregoing websites, which upon information and belief include records for every U.S. state and territory, revealed no positive current or historical results for the name "Matthew Kotila."

6.      I declare under penalty of perjury that the foregoing statements are true and correct.

FURTHER DECLARANT SAYETH NOT.

Christian Eddleston

Date: September 21, 2023

2

# Exhibit C



# FREE Subscription Application and Renewal Form

A complimentary subscription to the print edition of Financial Advisor Magazine will be sent to applicants who qualify. All questions must be answered completely.

For non U.S. based subscriptions there will be a shipping charge. Canada is $89.00 and $149.00 for all other countries. Please contact jill@fa-mag.com to subscribe. The Publisher reserves the right to limit the number of free subscriptions.

## Lookup Your Subscription

If you are a current subscriber, you may pre-fill your contact information in the form below by entering your account number (how do I find my account number?) along with the first 3 characters of your city, the first 3 characters of your last name, and clicking **Find My Subscription**.

If you do not know your account number, you may renew by entering all your contact information below.

If you are a new subscriber, we ask that you complete all the contact information below.

Sample Info Account = 1 and City = Cit and Last name = Doe

Lookup by Account

Account#

First 3 Letters of City:

First 3 Letters of Last Name:

Find My Subscription

All fields and questions marked with an asterisk are required

Key Code:                      WEBNEW

First Name: *                  Enter First Name

Middle:                        Enter Middle

Last: *                        Enter Last

Title: *                       Enter Title

Company: *                     Enter Company

Address1: *                    Enter Address

Address2:                      Enter Address

City: *                        Enter City

State: *                       Please Select a State

Zip: *                         Enter Zip

Country: *                     United States

Business Telephone:            Enter Business Telephone

Business Fax:                  Enter Business Fax

Email†:                    | Enter Email |

†Email address is required for subscription verification. For details about the use of the information, please read the [Privacy Statement](#).

Do you wish to receive/continue to receive a FREE subscription to Financial Advisor Magazine? *

○ Yes   ○ No

Do you wish to receive any Financial Advisor's newsletters or promotions?

☐ **YES**, I'd like to receive Financial Advisor's bi-weekly newsletter, FA news.

☐ **YES**, I'd like to receive information via e-mail from Financial Advisor and sponsored content from carefully selected third parties.

Do you personally recommend or sell investments or provide investment advice? *

○ Yes   ○ No

Which of the following best describes your primary business activity? *

| Select a Value... |

What is your income source? *

| Select a Value... |

What are your total assets under management? *

| Select a Value... |

In order to verify your request for this publication, without the availability of a signature our audit bureau requires that we ask a personal identifying question. This information is *

used solely for the purpose of auditing your request.

What is the first letter of the month in which you were born?

Select a Value...

**Share this incredible FREE offer with your colleagues!**

1) Enter the names and email address of up to 3 colleagues.
2) Click submit and we will immediately send them an invitiation to receive a FREE subscription!

| First Name | Last Name | Email |
|---|---|---|
| | | |
| First Name | Last Name | Email |
| | | |
| First Name | Last Name | Email |
| | | |

Submit My Subscription