# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MATTHEW KOTILA and ROBERT CRAUN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER FINANCIAL PUBLISHING NETWORK, INC.,<br><br>Defendant. | Case No. 2:22-CV-00704-HYJ-RSK<br><br>Hon. Hala Y. Jarbou<br><br>Mag. Judge Ray S. Kent |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

The undersigned counsel certifies that counsel communicated with counsel for Defendant, via email on February 15, 2024, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; counsel for Defendant has communicated that Defendant does not oppose this motion and the relief requested herein.

For the reasons set forth in Plaintiffs' Brief in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the Settlement Class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint E. Powell Miller of The Miller Law Firm, P.C., Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., and Frank S. Hedin and Arun G. Ravindran of Hedin LLP as Class Counsel; (4) appoint Matthew Kotila and Robert Craun as the Class Representatives for the Settlement Class; and (5) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice") and direct distribution of the Proposed Notice.[1]

---

[1]    The Settlement Agreement and its exhibits are included in the accompanying Supporting Brief.

Dated:  February 16, 2024          Respectfully submitted,

By: */s/ E. Powell Miller*
One of Plaintiffs' Attorneys

E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200
epm@millerlawpc.com
ssa@millerlawpc.com

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Philip L. Fraietta (P85228)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Fl
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163

Frank S. Hedin
fhedin@hedinllp.com
Arun G. Ravindran
aravindran@hedinllp.com
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801

*Proposed Class Counsel*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERNERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MATTHEW KOTILA and ROBERT CRAUN, individually and on behalf of all others similarly situated, | Case No. 2:22-CV-00704-HYJ-RSK |
| | Hon. Hala Y. Jarbou |
| Plaintiffs, | Mag. Judge Ray S. Kent |
| v. | |
| CHARTER FINANCIAL PUBLISHING NETWORK, INC., | |
| Defendant. | |

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
## <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Does the proposed Settlement Class meet Fed. R. Civ. P. 23's

requirements for class certification for settlement purposes?

**Plaintiffs' Answer: Yes.**

2.      Should Plaintiffs' Counsel be appointed as Class Counsel?

**Plaintiffs' Answer: Yes.**

3.      Should Plaintiffs Matthew Kotila and Robert Craun be appointed as

the Class Representatives for the Settlement Class?

**Plaintiffs' Answer: Yes.**

4.      Based on an initial evaluation, is the proposed Settlement fair,

adequate, and reasonable, sufficient to warrant notice to the proposed Settlement

Class?

**Plaintiffs' Answer: Yes.**

5.      Does the Notice Plan satisfy the requirements of Fed. R. Civ. P. 23

and Due Process?

**Plaintiffs' Answer: Yes.**

## <u>CONTROLLING AND MOST APPROPRIATE AUTHORITIES</u>

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
    133 S. Ct. 1884 (2013)

*Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015)
    308 F.R.D 524 (E.D. Mich. 2015)

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013)

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)
    497 F.3d 615 (6th Cir. 2007)

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................1

II.    BACKGROUND ................................................................................4

       A.    Michigan's Preservation of Personal Privacy Act .....................4

       B.    Pre-Filing Investigation .................................................................5

       C.    History of the Litigation and Settlement Negotiations ..............6

       D.    Class Counsel's History Litigating Michigan PPPA Claims......7

III.   KEY TERMS OF THE SETTLEMENT............................................11

IV.    THE PROPOSED CLASS IS APPROPRIATE FOR
       CERTIFICATION FOR SETTLEMENT PURPOSES .....................13

       A.    The Numerosity Requirement Is Satisfied................................14

       B.    The Commonality Requirement Is Satisfied.............................15

       C.    The Typicality Requirement Is Satisfied .................................16

       D.    The Adequacy Requirement Is Satisfied .................................17

       E.    The Proposed Settlement Class Meets Rule 23(b)(3)
             Requirements ...............................................................................19

             1.    Common Questions Predominate ...................................19

             2.    A Class Action Is a Superior Mechanism......................20

V.     PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS
       COUNSEL………………….. ........................................................21

VI.    PRELIMINARY SETTLEMENT APPROVAL IS APPROPRIATE .21

A.  The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval ....................................................................................23

B.  The Sixth Circuit's *UAW* Factors Weight in Favor of Preliminary Approval.................................................................23

1.  There is No Risk of Fraud of Collusion ........................23

2.  Litigation Through Trial Would be Complex, Costly, and Long ................................................................................24

3.  Discovery Has Allowed the Parties to Resolve the Case Responsibly.....................................................................25

4.  Plaintiffs Would Face Real Risks if the Case Proceeded .......................................................................................26

5.  Proposed Class Counsel and Class Representative Support the Settlement...................................................27

6.  The Reaction of Absent Class Members ........................28

7.  The Settlement Serves the Public Interest .....................28

VII.  THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE....................................................................30

VIII.  CONCLUSION ..................................................................31

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................. passim
*Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*,
  133 S. Ct. 1184 (2013) .................................................................13
*Armijo v. Bronson Methodist Hosp.*,
  991 N.W.2d 593 (Mich. 2023).....................................................27
*Beattie v. CenturyTel, Inc.*,
  511 F.3d 554 (6th Cir. 2007)........................................................17
*Boelter v. Advance Magazine Publishers Inc.*,
  210 F. Supp. 3d 579 (S.D.N.Y. 2016).............................................8
*Boelter v. Hearst Commc'ns, Inc.*,
  192 F. Supp. 3d 427 (S.D.N.Y. 2016).........................................4, 8
*Boelter v. Hearst Commc'ns, Inc.*,
  269 F. Supp. 3d 172 (S.D.N.Y. 2017).............................................9
*Borcea v. Carnival Corp.*,
  238 F.R.D. 664 (S.D. Fla. 2006) ..................................................25
*Coulter-Owens v. Rodale, Inc.*,
  No. 14-cv-12688 (E.D. Mich.)........................................................2
*Coulter-Owens v. Time, Inc.*,
  308 F.R.D 524 (E.D. Mich. 2015) .......................................... passim
*Curry v. SBC Commc'ns, Inc.*,
  250 F.R.D 301 (E.D. Mich. 2008) ................................................14
*Edwards v. Hearst Commc'ns, Inc.*,
  No. 15-cv-9279-AT-JLC, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016)...............9
*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ..............................................................29, 30
*Gilkey v. Central Clearing Co.*,
  202 F.R.D. 515 (E.D. Mich. 2001) ...............................................16
*Gottsleben v. Informa Media, Inc.*,
  No. 1:22-cv-866, 2023 WL 4397226 (W.D. Mich. July 7, 2023) ......27
*Horton v. GameStop, Corp.*,
  380 F. Supp. 3d 679 (W.D. Mich. 2018) ...................................4, 5, 9
*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996).................................................14, 16
*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ...............................................28

*In re Packaged Ice Antitrust Litig.*,
  2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) .....................................................22
*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013)................................................................ 14, 15, 20
*Int'l Union v. Ford Motor Co.*,
  2006 WL 1984363 (E.D. Mich. July 13, 2006) .....................................................17
*Kain v. The Economist Newspaper NA, Inc.*,
  No. 4:21-cv-11807 (E.D. Mich. Mar. 16, 2023)............................................. 2, 10
*Krassick v. Archaeological Inst. of Am.*,
  No. 2:21-cv-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022) (Jarbou, J.).....10
*Leonhardt v. AvrinMeritor, Inc.*,
  581 F. Supp. 2d 818 (E.D. Mich. 2008)................................................................24
*Loftus v. Outside Integrated Media, LLC*,
  No. 2:21-cv-11809 (E.D. Mich. Aug. 9, 2022).......................................... 2, 8, 10
*Machesney v. Lar-Bev of Howell, Inc.*,
  317 F.R.D. 47 (E.D. Mich. 2016) .........................................................................19
*Moeller v. American Media, Inc.*,
  235 F. Supp. 3d 868 (E.D. Mich. 2017).................................................................8
*Moeller v. American Media, Inc.*,
  No. 16-cv-11367 (E.D. Mich.).................................................................................2
*Moeller v. The Week Publications, Inc.*,
  No. 1:22-cv-10666 (E.D. Mich. Oct. 11, 2023)......................................................3
*Palmer Park Square, LLC v. Scottsdale Insurance Company*,
  878 F.3d 530 (6th Cir. 2017)...................................................................................9
*Parker v. Time Warner Ent. Co., L.P.*,
  239 F.R.D. 318 (E.D.N.Y. 2007) ..........................................................................15
*Perlin v. Time, Inc.*,
  No. 16-cv-10635 (E.D. Mich.).................................................................................2
*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
  501 F.3d 592 (6th Cir. 2007)................................................................................20
*Pratt v. KSE Sportsman Media, Inc.*,
  586 F. Supp. 3d 666 (E.D. Mich. 2022)................................................................10
*Pratt v. KSE Sportsman Media, Inc.*,
  No. 1:21-cv-11404, 2023 WL 5500832 (E.D. Mich. Aug. 25, 2023) .................15
*Pratt v. KSE Sportsman Media, Inc.*,
  No. 1:21-cv-11404, 2024 WL 113755 (E.D. Mich. Jan. 10, 2024)................. 3, 10
*Sheick v. Auto. Component Carrier, LLC*,
  2010 WL 3070130 (E.D. Mich. Aug. 2, 2010).....................................................24
*Sims v. Pfizer, Inc.*,
  2016 WL 772545 (E.D. Mich. Feb. 24, 2016).......................................................29

*Strano v. Kiplinger Washington Editors, Inc.*,
  No. 1:21-cv-12987 (E.D. Mich. Oct. 11, 2023) ................................................ 3, 10
*UAW v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ...................................................................... passim
*Vassalle v. Midland Funding LLC*,
  708 F.3d 747 (6th Cir. 2013) ...................................................................... 17
*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ............................................................................ 15, 19
*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2010) ...................................................................... 20

## Statutes

28 U.S.C. § 1715 .......................................................................................... 31
H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), *id.* § 5, added
  by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989) ................... 1
M.C.L. § 445.1712 ........................................................................................ 4
M.C.L. § 445.1715 ........................................................................................ 4
Michigan Preservation of Personal Privacy Act ....................................................... 1

## Rules

Fed. R. Civ. P. 23 .................................................................................... passim
Fed. R. Civ. P. 23(a) ......................................................................... 13, 14, 19
Fed. R. Civ. P. 23(a)(1) ................................................................................ 14
Fed. R. Civ. P. 23(a)(2) ................................................................................ 15
Fed. R. Civ. P. 23(a)(3) ................................................................................ 16
Fed. R. Civ. P. 23(b) ................................................................................... 19
Fed. R. Civ. P. 23(b)(3) ............................................................................ passim
Fed. R. Civ. P. 23(c)(2)(B) ............................................................................ 30
Fed. R. Civ. P. 23(e)(1)(B) ............................................................................ 30
Fed. R. Civ. P. 23(e)(2) ............................................................................ 22, 23
Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv) .................................................................... 21
Fed. R. Civ. P. 23(g)(1)(B) ............................................................................ 21
M.C.R. 3.501(A)(5) ....................................................................................... 8

## Other Authorities

MANUAL FOR COMPLEX LITIGATION § 21.632 (4TH ED. 2004) ................................ 22
NEWBERG ON CLASS ACTIONS, § 11.41 (4th ed. 2002) ..................................... 21, 30
NEWBERG, § 11:53 at 167 .............................................................................. 30

## I.  INTRODUCTION

The Settlement negotiated here by Plaintiffs and proposed Class Counsel ("Class Counsel"), brought under the Michigan Preservation of Personal Privacy Act (the "PPPA"),[1] represents an excellent per-class member recovery in a PPPA settlement. Pursuant to the Settlement Agreement, Defendant has agreed to pay $1,000,000 to establish an all-cash, non-reversionary Settlement Fund, equating to a per-Class Member aggregate recovery of $454, from which every Settlement Class Member (except for those who request for exclusion from the Settlement) will <u>automatically</u> receive (i.e., without having to file a claim form) a *pro rata* cash payment of approximately $265. The Settlement also provides meaningful prospective relief, as Defendant has agreed not to disclose any Michigan customer information to any third-party companies not related to the payment, production, or delivery of magazine subscription orders, without prior express written consent of the affected customers. Thus, if approved, the Settlement will provide meaningful relief to all Settlement Class Members, in a timely and streamlined manner.

The Settlement is the product of efficiently-prosecuted litigation and extensive arm's-length negotiations between the Parties, including a full-day mediation with Tom McNeill, Esq. of Tom McNeill ADR, PLLC. The Settlement

---

[1] The version of the PPPA at issue in this case is found at H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989).

outperforms nearly every other prior PPPA settlement in terms of recovery per class member. Moreover, unlike many prior PPPA settlements, the Settlement here does not require Settlement Class Members to submit claim forms, and instead provides automatic cash payments to approximately 2,168 Settlement Class Members (except for any who choose to exclude themselves); thus, upon final approval, each Settlement Class Member will receive a cash payment of approximately $265, far exceeding the per-class member recovery in previous PPPA settlements. The automatic relief secured by the Settlement provides fair, reasonable, and adequate relief to the Settlement Class, and its terms and notice procedures readily satisfy due process and the procedural requisites of Rule 23.

Moreover, the Settlement compares very favorably with settlements in similar cases. *See, e.g.*, *Perlin v. Time, Inc.*, No. 2:16-cv-10635 (E.D. Mich. July 5, 2018) (approving class settlement to pay between $25-50 per claimant); *Coulter-Owens v. Rodale, Inc.*, No. 2:14-cv-12688 (E.D. Mich. May 3, 2016) (approving class settlement paying roughly $42 per claimant); *Moeller v. Am. Media, Inc.*, No. 2:16-cv-11367 (E.D. Mich. June 8, 2017) (approving PPPA class settlement paying roughly $100 per claimant); *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809 (E.D. Mich. Aug. 9, 2022) (approving PPPA class settlement paying roughly $50 per claimant); *Kain v. The Economist Newspaper NA, Inc.*, No. 4:21-cv-11807 (E.D. Mich. Mar. 16, 2023) (approving PPPA class settlement paying roughly $261

per claimant); *Strano v. Kiplinger Washington Editors, Inc.*, No. 1:21-cv-12987 (E.D. Mich. Oct. 11, 2023) (approving class settlement paying roughly $248 per class member); *Moeller v. The Week Publications, Inc.*, No. 1:22-cv-10666 (E.D. Mich. Oct. 11, 2023) (approving class settlement paying roughly $248 per class member); *Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-cv-11404, 2024 WL 113755 (E.D. Mich. Jan. 10, 2024) (approving $9.5 million class settlement for a settlement class that included 14,503 persons and paid each class member approximately $415).

Accordingly, the Court should have no hesitation granting preliminary approval here, and Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the Settlement Class under Fed. R. Civ. P. 23(b)(3); (3) appoint E. Powell Miller of the Miller Law Firm, P.C., Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., and Frank S. Hedin and Arun G. Ravindran of Hall LLP as Class Counsel; (4) appoint Matthew Kotila and Robert Craun as the Class Representatives for the Settlement Class; and (5) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement ("Proposed Notice"),[2] and direct distribution of the Proposed Notice.

---

[2]     These are attached as Exhibits A-C to the Settlement Agreement.

## II.    BACKGROUND

### A.  Michigan's Preservation of Personal Privacy Act

The Michigan legislature passed the PPPA to preserve personal "privacy with respect to the purchase, rental, or borrowing of written materials." Complaint (ECF No. 1) ("Compl."). As such, the PPPA (as it existed until July 30, 2016) provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712. It authorizes civil actions and provides for statutory damages of $5,000, plus costs and reasonable attorney fees. *See* M.C.L. § 445.1715.

In May 2016, the Michigan legislature amended the PPPA effective July 31, 2016, but this does not apply retroactively to claims accruing prior to the effective date. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 439-41 (S.D.N.Y. 2016) ("[T]he amendment to the [PPPA] does not apply to Plaintiffs' claims, and the Court will assess the sufficiency of those claims under the law as it was when Plaintiffs' claims accrued.") (citations omitted herein unless noted). Because the claims alleged herein accrued, and thus vested, prior to the July 31, 2016 effective date of the amended version of the PPPA, the pre-amendment version of the PPPA applies in this case. *See Horton v. GameStop, Corp.*, 380 F. Supp. 3d 679, 683 (W.D.

4

Mich. 2018).

## B. Pre-Filing Investigation

Class Counsel conducted pre-filing investigations concerning every aspect of

the factual and legal issues here—these extensive efforts included:

- Researching the nature of Defendant's business, its practices of selling magazines, consumer-privacy policies, and public statements concerning the same;

- Interviewing numerous individuals in Michigan who subscribed to Defendant's publications prior to July 31, 2016, including about their process of purchasing a subscription and any disclosures they received or agreed to during the purchase process;

- Researching and analyzing Defendant's list rental and other disclosure practices, including data cards and other public information available online concerning the practices prior to July 31, 2016;

- Analyzing versions of Defendant's Privacy Policy, Terms of Service, and other public documents on its websites during the relevant time period;

- Researching the relevant law and assessing the merits of a potential PPPA claim against Defendant and defenses that Defendant might assert thereto; and

- Reviewing caselaw and statutes concerning the applicable limitation period for a PPPA claim, analyzing the arguments regarding a six-year period, and analyzing the arguments for the applicability of tolling pursuant to Michigan Supreme Court's administrative orders issued during the COVID-19 pandemic (the "COVID Orders").

*See* Declaration of E. Powell Miller in Support of Plaintiffs' Unopposed Motion For

Preliminary Approval ("Decl.") (**Exhibit A**) ¶ 5. As a result, Class Counsel

developed a viable theory of liability for a PPPA claim against Defendant and prepared a thorough Complaint against Defendant. *Id.* ¶ 6.

### C. History of the Litigation and Settlement Negotiations

On August 3, 2022, Plaintiff Matthew Kotila filed the Class Action Complaint against Defendant. Compl. ECF No. 1. Plaintiff Kotila alleged that before July 30, 2016, Defendant disclosed information related to its customers' magazine subscription histories and personal reading habits without their consent in violation of the PPPA. *Id.* ¶¶ 1-2, 5-8, 41-48. On October 19, 2022, the Clerk of the Court entered the Default for Defendant's failure to appear within the time specified by the Federal Rules of Civil Procedure. ECF No. 12. On June 5, 2023, the Court entered an Order (ECF No. 17) granting class certification and Mr. Kotila's request to conduct discovery to identify the class members for the purpose of calculating damages.

Thereafter, Mr. Kotila served numerous subpoenas on third parties seeking customer lists that they had received from Defendant during the relevant time period. *See* ECF No. 28-1, PageID.762. On August 16, 2023, Plaintiff Kotila filed a Motion for Default Judgment and Approval of Plaintiff's Class Notice Plan. ECF Nos. 27, 28. On September 21, 2023, Defendant, through newly appearing counsel, filed a motion to set aside the default. ECF No. 29.

While the motions were pending, the Parties agreed to participate in a

mediation with Tom McNeill, Esq. of Tom McNeill ADR, PLLC. In advance of the mediation, the Parties had numerous discussions, and exchanged informal discovery, including on the size and scope of the putative class, which includes approximately 2,168 persons, and Defendant's financial condition and ability to fund a settlement. Decl. ¶ 11. The Parties also exchanged lengthy mediation briefing pertaining to the merits of the case. *Id.* On December 4, 2023, the Parties participated in a mediation with Mr. McNeill. *Id.* ¶ 12. The mediation lasted the entire day. While the Parties negotiated in good faith, they were unable to reach an agreement that day. *Id.* However, because significant progress was made, Mr. McNeill made a mediator's proposal at the end of the mediation. On December 6, 2023, the Parties accepted Mr. McNeill's mediator's proposal, reached an agreement on all material terms of a class action settlement, and executed a term sheet. *Id.* ¶ 13.

In the weeks following, the Parties negotiated and finalized the full-form Settlement Agreement, attached to the Decl. as Exhibit 1 thereto, selected a proposed Settlement Administrator, and worked together to finalize the Settlement Class List. *Id.* ¶ 14.

**D.  Class Counsel's History Litigating Michigan PPPA Claims**

The unprecedented result here would not have been possible without the significant investments of time and resources in the prosecution of PPPA actions over the past decade by Class Counsel—providing knowledge and experience, and

developing the body of PPPA jurisprudence necessary to achieve the Settlement Agreement.[3] Class Counsel's accumulated knowledge and experience, in a niche area of law, was vital to prosecuting this litigation and to obtain the result achieved here.

Beginning in 2015, Class Counsel began investigating and litigating cases against publishers for alleged PPPA violations. *See* Decl. ¶ 19. The theory of liability was novel. Although a few other cases had been filed against publishers, none had progressed through class certification or summary judgment. *Id.* Despite the uncertainty, Class Counsel litigated numerous PPPA issues of first impression, such as: (i) whether an alleged violation of the statute was sufficient to confer Article III standing; (ii) whether the statute violated the First Amendment on its face or as applied; (iii) whether plaintiffs could pursue class action claims for statutory damages in federal court under Rule 23 in light of M.C.R. 3.501(A)(5); and (iv) whether a 2016 amendment to the statute applied retroactively. Decl. ¶ 20. *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016); *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579 (S.D.N.Y. 2016). Class

---

[3]     For example, in granting final approval to a similar class in *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809 (E.D. Mich. Aug. 9, 2022), the Honorable Mark A. Goldsmith commended the work of the attorneys representing the class – the same counsel here – and noted that "the class has benefited in a concrete way" from the "very effective work" done by Plaintiff's counsel. *See* Decl., Exhibit 5, Aug. 8, 2022 Hearing Tr. at 7:13-17.

Counsel then conducted vigorous discovery, including in-depth research into data industry practices, such as data appending and data cooperatives, and ultimately third-party discovery from those companies. Decl. ¶ 21. Through that discovery, Class Counsel amassed a wealth of institutional knowledge regarding the data industry. *Id.* Class Counsel won a motion for summary judgment in *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017). Decl. ¶ 22. This summary judgment victory provided a roadmap to liability for publishers based on the above data industry practices. *Id.*

Class Counsel then successfully argued that the amended version of the PPPA does not apply to claims that accrued prior to its effective date of July 31, 2016. Decl. ¶ 23. *See Horton v. GameStop, Corp.*, 380 F. Supp. 3d 679, 683 (W.D. Mich. 2018) (holding amended version of the PPPA does not apply to claims filed after its effective date of July 31, 2016 where the alleged disclosures occurred prior to the effective date). *Id.* And, in the above PPPA litigation, it was assumed that PPPA cases were governed by a 3-year statute of limitations. Decl. ¶ 24. *See, e.g.*, *Hearst*, 269 F. Supp. 3d at 189; *Edwards v. Hearst Commc'ns, Inc.*, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016). Nonetheless, Class Counsel later recognized that the Sixth Circuit's opinion in *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 878 F.3d 530 (6th Cir. 2017), and relevant Michigan authority, arguably provided a basis for applying a six-year limitation period to PPPA claims, and thus may provide an

avenue for class recovery under the original PPPA. *Id.* After conducting extensive pre-suit investigative analysis, Class Counsel initiated litigation with the six-year limitation period as its foundation. *Id.* Through Class Counsel's advocacy, in *Pratt*, Judge Ludington issued a first-of-its-kind published opinion, finding that a six-year statute of limitations applies to PPPA claims.[4] Decl. ¶ 25. *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 675 (E.D. Mich. 2022). Other Michigan courts soon followed in accord. *See, e.g.*, *Krassick v. Archaeological Inst. of Am.*, No. 2:21-cv-180, 2022 WL 2071730, at *3 (W.D. Mich. June 9, 2022) (Jarbou, J.). The groundbreaking litigation led by Class Counsel paved the way for this and other PPPA cases. *See, supra*, *e.g.*, *Loftus*, *Kain*, *Strano*, *Moeller*. Decl. ¶ 26.

Moreover, for this and other PPPA cases filed within the same timeframe, the case relied on Class Counsel's analysis and advocacy in regards to the COVID Orders. Decl. ¶ 17. In following this six-year limitation period, Class Counsel initially believed that the latest that a suit could reasonably be filed was by July 31, 2022. *Id.* But, through extensive research and legal analysis, Class Counsel determined that the 101 days of tolling provided by the COVID Orders would allow a suit to be brought through October 2022. *Id.* Class Counsel have actively consulted

---

[4]     And as noted above, Judge Ludington recently finally approved the class action settlement in *Pratt*. *See Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-cv-11404, 2024 WL 113755 (E.D. Mich. Jan. 10, 2024) (approving $9.5 million class settlement which pays each class member approximately $415).

with other Michigan litigants who were pursuing this theory, including the appellate

counsel in the COVID Orders cases which have now been taken up by the Michigan

Supreme Court. *Id.* Again, it was through the efforts and legal acuity of Class

Counsel that even permitted a viable theory of recovery for the Settlement Class.

## III.    KEY TERMS OF THE SETTLEMENT

**Class Definition.** The "Settlement Class" is:

> [A]ll Michigan residents who subscribed to any of
> Defendant's publications before July 31, 2016, and whose
> name, together with the name of the publication(s) to
> which they subscribed, were disclosed by Defendant (or
> any employee or agent of Defendant acting on
> Defendant's behalf) at any time between April 25, 2016
> and July 30, 2016, to any third party without the consent
> of the subscriber.[5]

Settlement Agreement ¶ 1.31.[6]

**Monetary Relief.** Defendant shall establish a $1,000,000 non-reversionary

Settlement Fund from which all Settlement Class Members who do not exclude

themselves shall automatically receive a *pro rata* cash payment of approximately

---

[5]    Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) Persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons. *Id.*

[6]    Plaintiffs can submit the full list of individual Class members for an in-camera review upon request of the Court.

$265 after payment of notice, administrative expenses, attorneys' fees, and service awards to the proposed Class Representatives. Settlement Agreement ¶¶ 1.33, 2.1. No portion of the Settlement Fund will revert back to Defendant. *Id.* ¶ 2.1(h).

**Prospective Relief.** As part of the Settlement, Defendant will agree not to disclose any Michigan customer information to any third-party companies without the prior express written consent of the affected customers, provided however, that nothing herein shall prevent Defendant from disclosing Michigan customer information to third parties as may be reasonably required to produce, deliver, bill, collect payment for, renew, and otherwise manage, market, and fulfill orders for Defendant's publications, or as otherwise permitted by M.C.L. § 445.1713 or other applicable law. *Id.* ¶ 2.2.

**Release.** In exchange for the $1,000,000 cash payment, Defendant (and all "Released Parties" — defined in Settlement Agreement ¶ 1.27) will receive a full release of all claims arising out of or related to Defendant's disclosure of its Michigan customers' magazine subscription information. *See* Settlement Agreement ¶¶ 1.26-1.28 for full release language.

**Notice and Administration Expenses.** The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Settlement Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. Settlement Agreement ¶¶ 1.29, 1.30, 1.33.

**Service Award.** In recognition of their efforts on behalf of the Settlement Class, Defendant agrees that Plaintiffs may receive, subject to Court approval, a service award of $5,000 each from the Settlement Fund, as appropriate compensation for their time, effort, and leadership as class representatives. Settlement Agreement ¶ 8.3; Decl. ¶¶ 35-38 (detailing same).

**Attorneys' Fees and Expenses.** As part of the Settlement Agreement, Defendant has agreed that Class Counsel are entitled to reasonable attorneys' fees in an amount to be determined by the Court by petition. Class Counsel has agreed to limit its request for fees, costs, and expenses to 35% of the Settlement Fund. Settlement Agreement ¶¶ 1.33, 8.1; *see also infra* § VI.A (listing PPPA cases where fee requests of 35% or more were approved).

## IV.  THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION FOR SETTLEMENT PURPOSES

Before granting preliminary approval of the proposed Settlement, the Court must determine that the proposed settlement class is appropriate for certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements. Fed. R. Civ. P. 23(a); *see Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Also, because Plaintiffs seek certification under Rule 23(b)(3), they must demonstrate that common questions of law or fact predominate over individual issues and that a class action is

the superior device to adjudicate the claims. *Amchem*, 521 U.S. at 615-16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). As explained below, the proposed Settlement Class satisfies all of the Rule 23(a) and 23(b)(3) prerequisites, and thus, should be certified.

In the only PPPA case to reach decision on a contested class certification motion, Judge Steeh granted certification. *See Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015). And similar classes have been certified for settlement purposes in other PPPA cases. The proposed Settlement Class here likewise should be certified.

### A.  The Numerosity Requirement Is Satisfied

Numerosity is met when joining a large number of plaintiffs in one case would be impracticable. Fed. R. Civ. P. 23(a)(1); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Though there is no fixed number determining impracticability, "[i]n most cases, a class in excess of forty members will do." *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008). Only a reasonable estimate is required. *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 520 (E.D. Mich. 2013). Here, there are approximately 2,168 persons in the Settlement Class. Decl. ¶ 11. Thus, joinder would be impractical and thus numerosity is therefore satisfied.

14

## B. The Commonality Requirement Is Satisfied

Commonality is satisfied under Rule 23(a)(2) when there are questions of law or fact common to the class—the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). And even a single question will do. *See Whirlpool*, 722 F.3d at 582-83.

Here, Plaintiffs allege that all class members' claims hinge on two common questions, one factual and one legal: (1) whether Defendant disclosed its customers' protected personal reading information to third parties between April 25, 2016 and July 30, 2016; and (2) whether such disclosures violated the PPPA. Plaintiffs contend that both can be answered on a class-wide basis with common proof which will drive the litigation forward. *See, e.g.*, *Parker v. Time Warner Ent. Co., L.P.*, 239 F.R.D. 318, 329 (E.D.N.Y. 2007) (in a case about disclosure of plaintiff's statutorily-protected information without proper notification, commonality found where claims were based on same legal theory and factual question). Numerous courts have certified PPPA claims, finding commonality satisfied. *See, Coulter-Owens*, 308 F.R.D. at 532-34 (litigation found to be "driven by issues that are common" to the entire class); *see also Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-CV-11404, 2023 WL 5500832, at *3 (E.D. Mich. Aug. 25, 2023) (finding commonality satisfied in PPPA case and preliminarily approving class settlement where "[b]oth questions

are common to all members of the Class and can be answered on a class-wide basis with common proof which will drive the litigation forward").

Given that there are multiple questions of law and fact common to members of the Settlement Class, the commonality requirement is satisfied.

## C.  The Typicality Requirement Is Satisfied

Typicality requires that a class representative has claims that are typical of those of other class members. Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Am. Med. Sys.*, 75 F.3d at 1082. "Typicality may be presumed when the plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *Gilkey v. Cent. Clearing Co.*, 202 F.R.D. 515, 524 (E.D. Mich. 2001). In other words, when the basis of the suit is the defendant's systematic business practices towards the named plaintiff and the members of the proposed class, typicality is satisfied.

Plaintiffs allege that Defendant's disclosure of their subscription information was part of its standard business practice of disclosing its customers' subscription information to third parties without consent. Compl. ¶¶ 1-2, 5-8, 41-48. And this was true for that of all Settlement Class Members, who had their information disclosed to the same third parties and for the same purpose—and that these practices thus

violated the PPPA. And to redress such violations, the PPPA authorizes each Settlement Class Member to recover the same statutorily-set damages ($5,000). Thus, Plaintiffs' pursuit of their own claims here will necessarily advance the interests of the Settlement Class, satisfying the typicality requirement. *See, e.g.*, *Coulter-Owens*, 308 F.R.D. at 534-35

### D.  The Adequacy Requirement Is Satisfied

Class representatives under Fed. R. Civ. P. 23(a)(4) must fairly and adequately protect the interests of the class. In order to do so, "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Int'l Union v. Ford Motor Co*., 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006). The representatives must be part of the class, possess the same interest, have suffered the same injury, and seek the same type of relief as other class members. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007).

In this case, the Complaint alleges that Plaintiffs—like each Settlement Class Member—purchased a magazine subscription from Defendant while residing in Michigan and had their subscription information disclosed to third parties without their consent. Compl. ¶¶ 9, 41-48. Thus, Plaintiffs and Settlement Class Members have the exact same interest in recovering the statutory damages to which they are

entitled under the PPPA. As such, Plaintiffs do not have any interest antagonistic to those of the proposed Settlement Class.

Likewise, proposed Class Counsel have extensive experience in litigating similar class actions. Decl. ¶¶ 27-29. Class Counsel regularly engage in consumer privacy cases, have the resources necessary to prosecute this case, and have frequently been appointed lead class counsel. *Id.*; *see* Firm Resumes (attached to Decl. as Exhibits 2-4 thereto).

Class Counsel have devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Settlement Class, obtaining, reviewing and analyzing discovery, participating in mediation, and ultimately, negotiating a settlement that provides an excellent ever per-class member recovery in a PPPA case, despite the substantial litigation risks that were present. Decl. ¶¶ 5-15. In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to work diligently on behalf of the Settlement Class throughout the settlement administration process. *Id.*

Because Plaintiffs and proposed Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

## E.  The Proposed Settlement Class Meets Rule 23(b)(3) Requirements

After meeting the prerequisites of Rule 23(a), a plaintiff seeking class certification must also show that the action qualifies under at least one of the categories outlined in Rule 23(b). Fed. R. Civ. P. 23(b); *see also Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 535 (E.D. Mich. 2013). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As explained below, the proposed Settlement Class meets these requirements.

### 1.  Common Questions Predominate

Fed. R. Civ. P. 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 349-60, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The Rule 23(b)(3) predominance requirement is akin to the commonality requirement Rule 23(a) "in that both require that common questions exist, but [Rule 23](b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 61 (E.D. Mich. 2016). In other words, where commonality is satisfied when there is a single factual or legal question

common to the class, the "predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). As such, "cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Id.*

Here, Defendant's alleged common course of conduct presents multiple questions of law and fact that are central to liability, predominating over any issues affecting individual class members. Thus, courts have regularly found common questions to predominate over individual issues in the course of approving PPPA settlements. *See, e.g.*, *Coulter-Owens*, 308 F.R.D. at 536. Defendant engaged in a single course of conduct with respect to all members of the Settlement Class, so their claims "will prevail or fail in unison"—thus, predominance is met. *Whirlpool*, 722 F.3d at 859.

## 2. A Class Action Is a Superior Mechanism

A class action is also the superior means of adjudicating this case because it "achieve[s] economies of time, effort and expense and promote[s] . . . uniformity of decision as to persons similarly situated." *Amchem*, 521 U.S. at 615. A class action is preferred over small individual suits because it provides a mechanism through which individuals who may not otherwise have the opportunity to seek redress through litigation. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012). Claims alleging a standard course of conduct are particularly well-suited for

class certification because they facilitate efficiency and uniformity. *Id*. As held in *Coulter-Owens*, "it makes sense to proceed as a class action and address the issues one time rather than [in] potentially hundreds of separate cases." 308 F.R.D. at 537.

## V.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Under Fed. R. Civ. P. 23(g)(1)(B), "a court that certifies a class must appoint counsel . . . [to] fairly and adequately represent the interests of the class." The Court considers proposed class counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed, proposed Class Counsel have extensive experience in prosecuting consumer class actions in general, and privacy class actions specifically. *See* § IV.D, *supra*. And as a result of their zealous efforts in this case, they secured an excellent per class member recovery in this PPPA case. Thus, the Court should formally appoint proposed Class Counsel as Class Counsel.

## VI.    PRELIMINARY SETTLEMENT APPROVAL IS APPROPRIATE

Settlement of class action suits is favored. NEWBERG ON CLASS ACTIONS, § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The first step is a "preliminary, pre-

notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). A court makes an "initial evaluation" of the fairness of the proposed settlement. MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004).

Fed. R. Civ. P. 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate," examining whether: (A) class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, reviewing: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the processing of class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition, the Sixth Circuit has laid out its own factors to consider. *See UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). They are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.*

22

### A.  The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval

This Settlement easily satisfies the Rule 23(e)(2) factors.

<u>First</u>, Plaintiffs and Class Counsel have adequately represented the class, securing the best-ever per-class member recovery. *See* Introduction, *supra*.

<u>Second</u>, the Settlement was negotiated at arm's-length through mediation after exchanging information sufficient to assess the strengths and weaknesses of the case, and Defendant's financial condition. *See supra*.

<u>Third</u>, the relief is adequate. The Settlement Agreement provides for the receipt of cash payments of roughly $265 for Settlement Class Members without even filing a claim form as well as robust prospective relief. Settlement Agreement ¶¶ 2.1-2.2. Attorneys' fees and costs are consistent with other PPPA settlements. *See supra*.

<u>Fourth</u>, the proposed Settlement treats Settlement Class Members equitably to each other as every Settlement Class Member will receive an identical *pro rata* cash payment under the Settlement. Settlement Agreement ¶ 2.1.

<u>Finally</u>, all terms affecting the Settlement Class are contained within the Settlement Agreement.

### B. The Sixth Circuit's *UAW* Factors Weigh in Favor of Preliminary Approval

All seven *UAW* factors favor approval or, at least, are neutral.

#### 1.  There Is No Risk of Fraud or Collusion.

The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at

631. "Courts presume the absence of fraud or collusion in class action settlements." *Leonhardt v. AvrinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008). Here, a non-collusive settlement was reached through arm's-length negotiations via a neutral mediator. *See Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy.").

## 2. Litigation Through Trial Would Be Complex, Costly, and Long.

The second *UAW* factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW*, 2006 WL 891151, at *17.

Here, Defendant has moved to set aside the default entered against it and has opposed Plaintiffs' Motion for Default Judgment. Decl. ¶¶ 9; ECF Nos. 29, 39. And throughout this litigation, Plaintiffs have engaged in significant discovery through third-party subpoenas. *Id.* ¶ 8. Absent a settlement, further discovery, dispositive motions, and depositions would follow. Defendant indicated that it would continue to assert numerous defenses to both class certification and the merits, including that it did not sell *Financial Advisor* "at retail," as is required to be within the purview of the PPPA, and that the case is time-barred. Class Counsel is also aware that

24

Defendant would prepare a competent defense at trial and would appeal any adverse result at trial (and any order certifying a class). *Id.* ¶ 32. This would result in lengthy and expensive litigation.

Rather than pursuing protracted and uncertain litigation, Plaintiffs and their counsel negotiated a Settlement Agreement that provides immediate, certain, and meaningful relief. The second factor weighs in favor of finding the Settlement fair, reasonable, and adequate. *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006).

### 3. Discovery Has Allowed the Parties to Resolve the Case Responsibly.

The third factor is "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631. Prior to filing, Class Counsel conducted a wide-ranging investigation into Defendant's practices, described *supra*, and obtained several key documents evidencing those practices. *See* Decl. ¶ 5. Moreover, during informal discovery and in settlement negotiations, Plaintiffs obtained wide-ranging discovery from Defendant and third parties on issues pertaining to class certification, the merits, and Defendant's ability to withstand a classwide judgment. *Id*. ¶ 11.

This information and material enabled Plaintiffs and their counsel to properly assess the strengths and weaknesses of the claims and defenses and to negotiate a Settlement that is fair, reasonable, and adequate. *Id.* Class Counsel's experience in similar cases, and the efforts made by counsel on both sides, confirms that they are

sufficiently well apprised of the facts here and the viability of their respective cases to make an intelligent analysis of the proposed settlement. Accordingly, the third factor weighs in favor of finding the Settlement fair, reasonable and adequate.

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded.

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. Although Plaintiffs believe their case is strong, it is not without risk. As mentioned, Plaintiffs moved for default judgment, and in turn, Defendant moved to vacate the clerk's entry of default. ECF Nos. 27, 29. Both motions remain pending. If the Court vacated the default, lengthy discovery and motion practice would follow. Defendant would likely argue that individual questions preclude class certification, that a class action is not a superior method, and that a trial would not be manageable. And even if the Court certified a class, Defendant would likely challenge certification through a Rule 23(f) application and then move to decertify. Defendant would also continue to assert numerous defenses on the merits, including that it does not sell *Financial Advisor* "at retail," as required to come into the purview of the PPPA.

Moreover, even if Plaintiffs survived all of those obstacles, they faced significant risk in recovering a classwide judgment. Indeed, this case presents a unique risk on statute of limitations questions, because its timeliness depends on the applicability of the Michigan Supreme Court's orders tolling the statute of

limitations during the early days of the COVID-19 pandemic. *See* ECF No. 45, PageID.951 at n.2. And while this Court has held that the Michigan Supreme Court's COVID tolling orders are applicable to a PPPA case, *see Gottsleben v. Informa Media, Inc.*, No. 1:22-cv-866, 2023 WL 4397226, at *3-4 (W.D. Mich. July 7, 2023), the constitutionality of those orders is currently being addressed by the Michigan Supreme Court. *See Armijo v. Bronson Methodist Hosp.*, 991 N.W.2d 593 (Mich. 2023) (setting briefing schedule and directing the scheduling of oral argument). An adverse decision could have deprived the Settlement Class of any recovery whatsoever. And, even if Plaintiffs survived *Armijo*, Plaintiffs would face additional challenges in prevailing because of the fragile nature of Defendant's financial condition; accordingly, Defendant would likely be unable to withstand a classwide judgment.

The risks of losing on the merits, of losing class certification, of maintaining certification through trial, and of collecting on any classwide judgment, were all significant hurdles to obtaining classwide relief in this case. The Settlement eliminates this risk, as well as the attendant expense and delay. Accordingly, the fourth factor also favors preliminary approval.

**5. Proposed Class Counsel and Class Representative Support the Settlement**

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel

is entitled to significant weight, and supports the fairness of the class settlement."
*UAW*, 2008 WL 4104329, at *26. Here, both proposed Class Counsel and the Class
Representatives support the Settlement. *See* Decl. ¶ 34. This *UAW* factor, therefore,
favors preliminary approval.

### 6. The Reaction of Absent Class Members.

The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497
F.3d at 631. Notice has not yet been disseminated, and the Settlement Class has
accordingly not yet had an opportunity to voice any opposition to (or support for)
the Settlement. Nonetheless, Plaintiffs and Class Counsel strongly support the
Settlement, which they believe is fair, reasonable, and adequate and in the best
interest of the Settlement Class. Accordingly, the sixth factor weighs in favor of
preliminary approval.

### 7. The Settlement Serves the Public Interest.

The seventh and final *UAW* factor is "the public interest." *UAW*, 497 F.3d at
631. Settlements may serve the public interest by advancing a statute's goals or by
conserving judicial resources. *See In re Cardizem CD Antitrust Litigation*, 218
F.R.D. 508, 530 (E.D. Mich. 2003). The Settlement here accomplishes both.

First, "[t]here is a strong public interest in encouraging settlement of complex
litigation and class action suits because they are notoriously difficult and
unpredictable and settlement conserves judicial resources." *Id.* Further, when

individual class members seek a relatively small amount of statutory damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974). Here, if the Settlement does not receive the Court's final approval, the Parties anticipate a complex and lengthy litigation that would continue and would require significantly more motion practice and potential appeals. *See Sims v. Pfizer, Inc.*, 2016 WL 772545, at *9 (E.D. Mich. Feb. 24, 2016) (finally approving settlement and finding that "absent settlement, all class members would be subject to the uncertainties, hardship, and delay attendant to continued litigation"). Thus, by avoiding complex class action litigation that can consume a court's time and money, the Settlement furthers the public interest.

Second, the Settlement also serves the public interest by furthering the objectives of the Michigan legislature in enacting the PPPA. The PPPA recognizes that "one's choice in videos, records, and books is nobody's business but one's own." House Legis. Analysis Section, H.B. No. 5331. Class action litigation in this area is a means of safeguarding the privacy of readers under the PPPA, especially because some consumers may be unaware of the data sharing practices alleged here (i.e., that Defendant disclosed its customers' personal reading information without their consent). This factor therefore supports preliminary approval.

Thus, all of the *UAW* factors weigh in favor of approval. Because the settlement on its face is fair, reasonable, and adequate, and not a product of collusion,

the Court should grant preliminary approval.

## VII.  THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

"For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen*, 417 U.S. at 173. Further, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23(c)(2)(B). Notice is "adequate if it may be understood by the average class member." NEWBERG, § 11:53 at 167.

Here, the Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and Due Process. First, the Settlement Administrator ("Administrator") will send direct notice by U.S. mail to all Settlement Class Members for whom the Administrator has been able to identify a postal address which it concludes has a reasonable likelihood of reflecting the

current residence of such Settlement Class Member. Settlement Agreement ¶ 4.1(b)(ii); Settlement Agreement Ex. B. If more than one postal address is identified, the Administrator will send the notice by U.S. mail to both addresses, and each notice will indicate the address to which the Settlement Class Member's cash award check will be sent. *Id.* ¶ 4.1(b)(iii). Next, for any Settlement Class Member for whom the Administrator is unable to identify at least one postal address, the Administrator will send notice via email. *Id.* ¶ 4.1(b)(iv); Settlement Agreement Ex. A. Further, the Administrator will establish a Settlement Website that shall contain the "long form notice" (*see* Settlement Agreement Ex. C), as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online (if needed for any unidentified class members), or an updated postal address. *Id.* ¶ 4.1(c). Finally, the Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by CAFA, 28 U.S.C. § 1715. *Id.* ¶ 4.1(d).

## VIII.  CONCLUSION

Based on the above, Plaintiffs respectfully request that the Court grant their Unopposed Motion for Preliminary Approval of the Settlement. A Proposed Order[7] granting preliminary approval, certifying the Settlement Class, appointing Class

---

[7]     Of note, the Proposed Order includes a relatively elongated schedule to ensure sufficient timing for Defendant to fully fund the Settlement.

Counsel, and approving the Proposed Notice of Settlement is submitted herewith (attached as **Exhibit B**).

Dated:  February 16, 2024                    Respectfully submitted,


By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
epm@millerlawpc.com
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Philip L. Fraietta (P85228)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150

Frank S. Hedin
fhedin@hedinllp.com
Arun G. Ravindran
aravindran@hedinllp.com
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107

*Proposed Class Counsel*

## <u>CERTIFICATE REGARDING WORD COUNT</u>

Plaintiffs Matthew Kotila and Robert Craun, in compliance with W.D. Mich.

LCivR 7.2(b)(i)-(ii), used 7,317 words in Plaintiffs' foregoing brief. Microsoft Word

for Office 365 Business version 1910 is the word processing software used to

generate the word count in the attached brief.

Dated:  February 16, 2024   Respectfully Submitted,

        /s/ *E. Powell Miller*
        E. Powell Miller (P39487)
        **THE MILLER LAW FIRM, P.C.**
        950 W. University Drive, Suite 300
        Rochester, MI 48307
        Tel: 248-841-2200
        epm@millerlawpc.com

        *Proposed Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, E. Powell Miller, an attorney, hereby certify that on February 16, 2024, I served the above and foregoing ***Brief in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

*/s/ E. Powell Miller*
E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste 300
Rochester, MI 48307
Tel: 248.841.2200
