# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MATTHEW KOTILA and ROBERT CRAUN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER FINANCIAL PUBLISHING NETWORK, INC.,<br><br>Defendant. | Case No. 2:22-CV-00704-HYJ-RSK<br><br>Hon. Hala Y. Jarbou<br><br>Mag. Judge Ray S. Kent |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

The undersigned counsel certifies that Plaintiffs' counsel communicated with counsel for Defendant telephonically on May 17, 2024, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; counsel for Defendant has communicated that Defendant does not oppose this motion and the relief requested herein.

For the reasons set forth in Plaintiffs' Brief in Support of their Unopposed Motion for Final Approval of Class Action Settlement, Plaintiffs respectfully request that the Court grant final approval to the Class Action Settlement[1] and enter final judgment.[2]

Dated: May 21, 2024                    Respectfully submitted,

                                       By: */s/ E. Powell Miller*
                                       One of Plaintiffs' Attorneys

                                       E. Powell Miller (P39487)
                                       **THE MILLER LAW FIRM, P.C.**
                                       950 W. University Drive, Suite 300
                                       Rochester, MI 48307
                                       Tel: 248.841.2200
                                       epm@millerlawpc.com

                                       Joseph I. Marchese (P85862)
                                       jmarchese@bursor.com
                                       Philip L. Fraietta (P85228)
                                       pfraietta@bursor.com
                                       **BURSOR & FISHER, P.A.**

---

[1]    The Settlement Agreement and its exhibits are included in the accompanying Supporting Brief.

[2]    A proposed Final Judgment and Order of Dismissal with Prejudice is attached to the Supporting Brief as **Exhibit E**.

1

1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163

Frank S. Hedin
fhedin@hedinllp.com
Arun G. Ravindran
aravindran@hedinllp.com
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801

*Class Counsel*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MATTHEW KOTILA and ROBERT CRAUN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER FINANCIAL PUBLISHING NETWORK, INC.,<br><br>Defendant. | Case No. 2:22-CV-00704-HYJ-RSK<br><br>Hon. Hala Y. Jarbou<br><br>Mag. Judge Ray S. Kent |

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## **STATEMENT OF ISSUES PRESENTED**

1.      Whether this Court should find that notice to the Settlement Class satisfies the requirements of Due Process and Federal Rule of Civil Procedure 23, when direct notice—detailing the terms of the Settlement Agreement and individual options for objecting, opting-out, or automatically receiving payment—was transmitted via postcard notice or e-mail and reached 96.16% of the Settlement Class Members?

**Plaintiffs' Answer: Yes.**

2.      Whether this Court should grant final approval to the Settlement Agreement under Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-1715 ("PPPA"), finding it fair, reasonable, and adequate, when it delivers meaningful monetary relief to the Settlement Class?

**Plaintiffs' Answer: Yes.**

3.      Whether the Settlement Class should be finally certified under Federal Rule of Civil Procedure 23(a) and 23(b)(3) where this Court has conditionally certified the Class for settlement purposes and nothing has changed to alter the propriety of this Court's certification?

**Plaintiffs' Answer: Yes.**

## <u>CONTROLLING AND MOST APPROPRIATE AUTHORITIES</u>

- Fed. R. Civ. P. 23

- *Eisen v. Carlisle & Jacquelin*,
     417 U.S. 156 (1974)

- *In re Cardizem CD Antitrust Litig.*,
     218 F.R.D. 508 (E.D. Mich. 2003)

- *Leonhardt v. ArvinMeritor, Inc.*,
     581 F. Supp. 2d 818 (E.D. Mich. 2008)

- *UAW v. Gen. Motors Corp.*,
     2006 WL 891151 (E.D. Mich. Mar. 31, 2006)

- *UAW v. Gen. Motors Corp.*,
     497 F.3d 615 (6th Cir. 2007)

- *Williams v. Vukovich*,
     720 F.2d 909 (6th Cir. 1983)

- Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process
     Checklist and Plain Language Guide (2010)

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ....................................................................................2

    A.    Michigan's Preservation of Personal Privacy Act.................................2

    B.    Pre-Filing Investigation ........................................................3

    C.    History of the Litigation and Settlement Negotiations..........................5

    D.    Class Counsel's History Litigating Michigan PPPA Claims ................7

III.  KEY TERMS OF THE SETTLEMENT......................................................111

IV.   THE NOTICE PLAN COMPORTS WITH DUE PROCESS ......................14

V.    THE SETTLEMENT WARRANTS FINAL APPROVAL .........................166

    A.    The Rule 23(e)(2) Factors Weigh in Favor of Final Approval ..........177

    B.    The Sixth Circuit's *UAW* Factors Weigh in Favor of Final Approval.18

        1.    There Is No Risk of Fraud or Collusion. ...........................................18

        2.    Litigation Through Trial Would Be Complex, Costly, and Long.....19

        3.    Discovery Allowed Plaintiffs to Intelligently Negotiate the
Settlement. ........................................................................................200

        4.    Plaintiffs Would Face Real Risks if the Case Proceeded. ..............211

        5.    Proposed Class Counsel and Class Representative Support the
Settlement. ........................................................................................233

        6.    The Reaction of Absent Class Members. ........................................233

        7.    The Settlement Serves the Public Interest. .....................................244

VI.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED.......255

VII.  CONCLUSION ..........................................................................266

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Armijo v. Bronson Methodist Hospital*,
   991 N.W.2d 593 (Mich. 2023) ................................................................22

*Boelter v. Advance Magazine Publishers Inc.*,
   210 F. Supp. 3d 579 (S.D.N.Y. 2016) .......................................................8

*Boelter v. Hearst Communications, Inc.*,
   192 F. Supp. 3d 427 (S.D.N.Y. 2016) ...................................................3, 8

*Boelter v. Hearst Communications, Inc.*,
   269 F. Supp. 3d 172 (S.D.N.Y. 2017) ...................................................8, 9

*Dick v. Sprint Commc'ns Co. L.P.*,
   297 F.R.D. 283 (W.D. Ky. 2014) ............................................................14

*Edwards v. Hearst Commc'ns, Inc.*,
   2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016) ............................................9

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ......................................................................... 14, 24

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) ...................................................................14

*Gascho v. Glob. Fitness Holdings, LLC*,
   822 F.3d 269 (6th Cir. 2016) ...................................................................15

*Gottsleben v. Informa Media, Inc.*,
   2023 WL 4397226 (W.D. Mich. July 7, 2023) ........................................22

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.*,
   2013 WL 692856 (E.D. Mich. Feb. 26, 2013) .........................................16

*Hanlon v. Chrysler*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................24

*Horton v. GameStop, Corp.*,
   380 F. Supp. 3d 679 (W.D. Mich. 2018) ...............................................3, 9

*In re Cardizem CD Antitrust Litigation*,
   218 F.R.D. 508 (E.D. Mich. 2003) ...................................................... 23, 24

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) .........................................15

*Kain v. The Economist Newspaper NA, Inc.*,
   No. 4:21-cv-11807 (E.D. Mich.) ..............................................................11

*Krassick v. Archaeological Inst. of Am.*,
   2022 WL 2071730 (W.D. Mich. June 9, 2022) .......................................10

*Leonhardt v. AvrinMeritor, Inc.*,
   581 F. Supp. 2d 818 (E.D. Mich. 2008) .............................................. 16, 18

*Loftus v. Outside Integrated Media, LLC*,
  No. 2:21-cv-11809 (E.D. Mich. Aug. 9, 2022)...................................................7, 11
*Massiah v. MetroPlus Health Plan, Inc.*,
  2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)..........................................24
*Moeller v. The Week Publications, Inc.*,
  No. 1:22-cv-10666 (E.D. Mich.)...........................................................13
*Olden v. Gardner*,
  294 F. App'x 210 (6th Cir. 2008) .........................................................23
*Palmer Park Square, LLC v. Scottsdale Insurance Company*,
  878 F.3d 530 (6th Cir. 2017)................................................................9
*Raden v. Martha Stewart Living OmniMedia, Inc.*,
  2017 WL 3085371 (E.D. Mich. July 20, 2017), *reconsideration denied*, 2018 WL
  460072 (E.D. Mich. Jan. 18, 2018).......................................................9
*Sheick v. Auto. Component Carrier, LLC*,
  2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ................................. 18, 19
*Sims v. Pfizer, Inc.*,
  2016 WL 772545 (E.D. Mich. Feb. 24, 2016)..........................................24
*UAW v. Gen. Motors Corp.*,
  2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ........................... 14, 19
*UAW v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007)........................................................ passim
*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983)................................................................16

**Statutes**
M.C.L. § 445.1712 .....................................................................................3
M.C.L. § 445.1715 .....................................................................................3
Michigan Preservation of Personal Privacy Act .......................................1

**Rules**
Fed. R. Civ. P. 12(b)(6)..............................................................................5
Fed. R. Civ. P. 15(a)(1)..............................................................................5
Fed. R. Civ. P. 23 .............................................................................. passim
Fed. R. Civ. P. 23(c)(2)(B) ........................................................................14
Fed. R. Civ. P. 23(e)....................................................................................16
Fed. R. Civ. P. 23(e)(2)...................................................................... passim
Fed. R. Civ. P. 23(f)....................................................................................21
Fed. R. Civ. P. 26 .......................................................................................7
MCR 3.501(A)(5).........................................................................................8

v

## I.    INTRODUCTION

In this putative class action, Plaintiffs allege that Defendant disclosed records reflecting that Plaintiffs and Defendant's other Michigan-based customers had purchased subscriptions to *Financial Advisor* magazine to third parties, in violation of Michigan's Preservation of Personal Privacy Act (the "PPPA"), H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989).

After extensive arm's-length negotiations between the Parties, including a full-day mediation with Tom McNeill, Esq. of Tom McNeill ADR, PLLC, Class Representatives and Class Counsel negotiated a settlement that, upon final approval by the Court, will require Defendant to pay $1,000,000.00 (one million dollars) to establish an all-cash, non-reversionary Settlement Fund for the Settlement Class's benefit.[1] Each of the 2,160 Settlement Class Members will automatically receive a *pro rata* cash payment of approximately $265 from the Settlement Fund.

As previously explained, the $1 million Settlement presently before the Court for final approval compares favorably with prior PPPA class action settlements on a per-class member basis. *See* Plaintiffs' Unopposed Motion for Service Awards and Fee Award, ECF No. 58, PageID.1762-63 (chart listing other PPPA settlements).

---

[1]    Unless otherwise defined herein, all capitalized terms appearing herein have the meanings ascribed to them in the Settlement Agreement.

On February 21, 2024, the Court issued an order granting preliminary approval to the Settlement. ECF No. 53. Shortly thereafter, the Settlement Administrator successfully implemented the Court-approved Notice Plan and direct notice has reached 96.16% of the certified Settlement Class. The reaction from the Settlement Class has been overwhelmingly positive, which is not surprising given the strength of the Settlement. Specifically, of the 2,160 Settlement Class Members, zero have objected, and zero have requested to be excluded.[2]

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, warranting this Court's final approval.

## II.    BACKGROUND

### A.  Michigan's Preservation of Personal Privacy Act

The Michigan legislature passed the PPPA to preserve personal "privacy with respect to the purchase, rental, or borrowing of written materials." Amended Complaint (ECF No. 45). As such, the PPPA (as it existed until July 30, 2016) provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

---

[2]    The deadline to object to or request exclusion from the Settlement was May 19, 2024. Preliminary Approval Order, ECF No. 53, PageID.1733, ¶ 15.

M.C.L. § 445.1712. It authorizes civil actions and provides for statutory damages of $5,000, plus costs and reasonable attorney fees. *See* M.C.L. § 445.1715.

In May 2016, the Michigan legislature amended the PPPA effective July 31, 2016, but this does not apply retroactively to claims accruing prior to the effective date. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 439-41 (S.D.N.Y. 2016) ("[T]he amendment to the [PPPA] does not apply to Plaintiffs' claims, and the Court will assess the sufficiency of those claims under the law as it was when Plaintiffs' claims accrued.") (citations omitted herein unless noted). Because the claims alleged herein accrued, and thus vested, prior to the July 31, 2016 effective date of the amended version of the PPPA, the pre-amendment version of the PPPA applies in this case. *See Horton v. GameStop, Corp.*, 380 F. Supp. 3d 679, 683 (W.D. Mich. 2018).

## B.  Pre-Filing Investigation

Class Counsel conducted an exhaustive pre-filing investigation, beginning in December 2020, concerning Defendant's (and other defendants') subscriber list disclosure practices in effect during the relevant pre-July 31, 2016 time period. With respect to the instant matter in particular, prior to filing suit Class Counsel investigated every aspect of the factual and legal issues underlying Plaintiffs' claims, including:

3

- Researching the nature of Defendant's business, its practices of selling newsletters, consumer-privacy policies, and public statements concerning the same;

- Interviewing numerous individuals in Michigan who subscribed to Defendant's publications prior to July 31, 2016, including about their process of purchasing a subscription and any disclosures they received or agreed to during the purchase process;

- Researching and analyzing Defendant's list rental and other disclosure practices, including data cards and other public information available online concerning the practices prior to July 31, 2016;

- Analyzing versions of Defendant's Privacy Policy, Terms of Service, and other public documents on its websites during the relevant time period;

- Researching the relevant law and assessing the merits of a potential PPPA claim against Defendant and defenses that Defendant might assert thereto;

- Reviewing caselaw and statutes concerning the applicable limitation period for a PPPA claim, analyzing the arguments regarding a six-year period; and

- Analyzing the arguments for the applicability of tolling pursuant to Michigan Supreme Court's administrative orders issued during the COVID-19 pandemic (the "COVID Orders"), including consulting with appellate lawyers briefing the matter before the Michigan Supreme Court.

*See* **Exhibit A** hereto, Declaration of E. Powell Miller in Support of Plaintiffs' Unopposed Motion For Final Approval ("Miller Decl.") ¶ 6; **Exhibit B** hereto, Declaration of Frank S. Hedin in Support of Plaintiffs' Unopposed Motion For Final Approval ("Hedin Decl.") ¶ 17. As a result, Class Counsel developed a viable theory

of liability for a PPPA claim against Defendant and prepared a thorough Class Action Complaint to initiate this action. Hedin Decl. ¶ 18; Miller Decl. ¶ 7.

### C.  History of the Litigation and Settlement Negotiations

On August 3, 2022, Plaintiff Matthew Kotila filed the Class Action Complaint against Defendant. Compl. ECF No. 1. The material allegations of the complaint centered on Defendant's alleged disclosure of its customers' personal information and reading choices to third parties before July 30, 2016, in violation of the PPPA. *Id.* ¶¶ 1-2, 5-8, 41-48. On October 19, 2022, the Clerk of the Court entered the Default for Defendant's failure to appear within the time specified by the Federal Rules of Civil Procedure. ECF No. 12. On June 5, 2023, the Court entered an Order (ECF No. 17) granting class certification and Mr. Kotila's request to conduct discovery to identify the class members for the purpose of calculating damages.

Thereafter, Mr. Kotila served numerous subpoenas on third parties seeking customer lists that they had received from Defendant during the relevant time period. *See* ECF No. 28-1, PageID.762. On August 16, 2023, Plaintiff Kotila filed a Motion for Default Judgment and Approval of Plaintiff's Class Notice Plan. ECF Nos. 27, 28. On September 21, 2023, Defendant, through newly appearing counsel, filed a motion to set aside the default. ECF No. 29.

Upon the appearance of counsel for Defendant, the Parties engaged in direct communication, and, pursuant to their obligations under Fed. R. Civ. P. 26,

discussed resolution. *See* Hedin Decl. ¶ 24; Miller Decl. ¶ 45. While the above motions were pending, the Parties agreed to participate in a mediation with Tom McNeill, Esq. of Tom McNeill ADR, PLLC. Hedin Decl. ¶ 25; Miller Decl. ¶ 11. In advance of the mediation, the Parties had numerous discussions and exchanged informal discovery, including on the size and scope of the putative class, which has now been determined to include 2,160 persons, and Defendant's financial condition and ability to fund a settlement. Hedin Decl. ¶ 26; Miller Decl. ¶ 12. Also, Class Counsel expended significant time reviewing the financial materials provided by Defendant. *Id.* These materials demonstrated the perilous financial state of Defendant, and, thus, the collectability risks posed by continued litigation absent reaching a settlement. *Id.*

The Parties also exchanged lengthy mediation briefing pertaining to the merits of the case. *Id.* On December 4, 2023, the Parties participated in a mediation with Mr. McNeill. Hedin Decl. ¶ 28; Miller Decl. ¶ 14. The mediation lasted the entire day. *Id.* While the Parties negotiated in good faith, they were unable to reach an agreement that day. *Id.* However, because significant progress was made, Mr. McNeill made a mediator's proposal at the end of the mediation. *Id.* On December 6, 2023, the Parties accepted Mr. McNeill's mediator's proposal, reached an agreement on all material terms of a class action settlement, and executed a term sheet. Hedin Decl. ¶ 29; Miller Decl. ¶ 15.

After reaching an agreement in principle to resolve the case, the Parties devoted considerable time over the following several weeks drafting and then executing the Settlement Agreement, attached to the Miller Declaration as Exhibit 1 thereto, retaining (at the conclusion of a competitive bidding process) the now Court-appointed Settlement Administrator (Kroll Settlement Administration LLC ("Kroll")), and working together to finalize the Settlement Class List. *See* Hedin Decl. ¶ 30; Miller Decl. ¶ 16.

### D.  Class Counsel's History Litigating Michigan PPPA Claims

The unprecedented result here would not have been possible without the significant investments of time and other resources (monetary and otherwise) expended by Class Counsel identifying, investigating and litigating claims on behalf of Michigan consumers under the PPPA for the better part of the past decade. It was these extensive efforts, in a niche area of law, that afforded Class Counsel the knowledge, experience, and well-developed body of jurisprudence necessary to achieve the Settlement in this case.[3]

---

[3]    For example, in granting final approval to a similar class in *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809, ECF No. 36 (E.D. Mich. Aug. 13, 2022), the Honorable Mark A. Goldsmith commended the work of the attorneys representing the class – the same counsel here – and noted that "the class has benefited in a concrete way" from the "very effective work" done by Plaintiff's counsel. *See* PageID.1681 (Aug. 9, 2022 *Loftus* Fin. Approv. Hrg. Tr. at 7:13-17).

Beginning in 2015, Class Counsel began investigating and litigating cases against publishers for alleged PPPA violations. *See* Hedin Decl. ¶ 3; **Exhibit C**, Declaration of Philip L. Fraietta in Support of Plaintiffs' Unopposed Motion for Final Approval ("Fraietta Decl.") ¶ 4. The theory of liability was novel. Although a few other cases had been filed against publishers, none had progressed through class certification or summary judgment. *Id*. Despite the uncertainty, Class Counsel litigated numerous PPPA issues of first impression, such as: (i) whether an alleged violation of the statute was sufficient to confer Article III standing; (ii) whether the statute violated the First Amendment on its face or as applied; (iii) whether plaintiffs could pursue class action claims for statutory damages in federal court under Rule 23 in light of MCR 3.501(A)(5); and (iv) whether a 2016 amendment to the statute applied retroactively. Fraietta Decl. ¶ 5. *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016); *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579 (S.D.N.Y. 2016). Class Counsel then conducted vigorous discovery, including in-depth research into data industry practices, such as data appending and data cooperatives, and ultimately third-party discovery from those companies. Fraietta Decl. ¶ 6. Through that discovery, Class Counsel amassed a wealth of institutional knowledge regarding the data industry. *Id*. Class Counsel won a motion for summary judgment in *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017). Fraietta Decl. ¶ 7. This summary judgment victory

provided a roadmap to liability for publishers based on the above data industry practices. *Id.*

After the Michigan legislature amended the PPPA, effective July 31, 2016, to make "actual damages" a prerequisite to stating a claim and remove a prevailing plaintiff's entitlement to statutory damages, Class Counsel then successfully argued that the amended version of the PPPA does not apply to claims that accrued prior to its effective date of July 31, 2016. Hedin Decl. ¶ 4; Fraietta Decl. ¶ 8. *See Horton*, 380 F. Supp. 3d at 683 (holding amended version of the PPPA does not apply to claims filed after its effective date of July 31, 2016 where the alleged disclosures occurred prior to the effective date).[4]

And throughout all of that prior litigation, it was assumed that PPPA cases were governed by a 3-year statute of limitations. Hedin Decl. ¶ 8; Fraietta Decl. ¶ 9; *see, e.g.*, *Hearst*, 269 F. Supp. 3d at 172; *Edwards v. Hearst Commc'ns, Inc.*, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016). Nonetheless, Class Counsel later recognized that the Sixth Circuit's opinion in *Palmer Park Square, LLC v. Scottsdale Ins. Co.*,

---

[4]    Notably, Class Counsel obtained this result even though another district court had previously held that the amended version of the statute applied to any claim brought on or after the amendment's July 31, 2016 effective date. *See Raden v. Martha Stewart Living OmniMedia, Inc.*, 2017 WL 3085371, at *4 (E.D. Mich. July 20, 2017), *reconsideration denied*, 2018 WL 460072 (E.D. Mich. Jan. 18, 2018). For nearly a year after the *Raden* decision, the consensus among the rest of the plaintiff's bar was that the PPPA was officially dead and, as such, no other PPPA cases were filed until Class Counsel filed the *Horton* matter on May 29 2018.

878 F.3d 530 (6th Cir. 2017), and relevant Michigan authority, established a basis for applying a six-year limitation period to PPPA claims, and thus provided an avenue for class recovery under the original PPPA even as long as six years after a defendant's pre-July 31, 2016 disclosure practices. Hedin Decl. ¶ 9; Fraietta Decl. ¶ 9. After conducting extensive pre-suit investigative analysis, Class Counsel initiated litigation with the six-year limitation period as its foundation. Hedin Decl. ¶ 10; Miller Decl. ¶ 5; Fraietta Decl. ¶ 10. Through Class Counsel's advocacy, in *Pratt*, Judge Ludington issued a first-of-its-kind published opinion, finding that a six-year statute of limitations applies to PPPA claims.[5] Hedin Decl. ¶ 12; Miller Decl. ¶ 27; Fraietta Decl. ¶ 11; *see Pratt v. KSE Sportsman, Inc.*, 586 F. Supp. 3d 666, 675 (E.D. Mich. 2022). Other Michigan courts soon followed in accord. Hedin Decl. ¶ 13; *see, e.g.*, *Krassick v. Archaeological Inst. of Am.*, 2022 WL 2071730, at *3 (W.D. Mich. June 9, 2022).

Moreover, for this and many other later-filed PPPA cases, the plaintiffs' and class members' claims relied on Class Counsel's analysis and advocacy in regards to the COVID Orders. Hedin Decl. ¶ 40; Miller Decl. ¶ 19. Originally, Class Counsel determined that the latest that a suit could reasonably be filed was by July 31, 2022.

---

[5]    Notably, Judge Ludington recently finally approved the class action settlement in *Pratt*. *See Pratt v. KSE Sportsman Media, Inc.*, 2024 WL 113755 (E.D. Mich. Jan. 10, 2024) (approving $9.5 million class settlement paying each class member approximately $420).

*Id.* But, through extensive research and legal analysis, Class Counsel determined that the 102 days of tolling provided by the COVID Orders would allow a suit to be brought through October 2022. *Id.* Class Counsel consulted with other Michigan litigants who were pursuing this theory, including the appellate counsel in COVID Orders cases which have now been taken up by the Michigan Supreme Court. *Id.* Again, it was through the efforts and advocacy of Class Counsel that even permitted a viable theory of recovery for the Settlement Class. *Id.*

Simply put: Class Counsel's tireless efforts over the past decade identifying, developing, and pursuing this groundbreaking PPPA litigation paved the way for this and other important cases that otherwise never would have been pursued – and led to the recovery of meaningful relief for hundreds of thousands of consumers in Michigan. *See, supra*, *e.g.*, *Pratt*, *Loftus*, *Kain*, *Strano*, *Moeller*.[6]

## III.    KEY TERMS OF THE SETTLEMENT

**Class Definition. Class Definition.** The "Settlement Class" is:

> [A]ll Michigan residents who subscribed to any of Defendant's publications before July 31, 2016, and whose name, together with the name of the publication(s) to which they subscribed, were disclosed by Defendant (or any employee or agent of Defendant acting on Defendant's behalf) at any time between April 25, 2016

---

[6]      *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809 (E.D. Mich.); *Kain v. The Economist Newspaper NA, Inc.*, No. 4:21-cv-11807 (E.D. Mich.); *Strano v. Kiplinger Washington Editors, Inc.*, No. 1:21-cv-12987 (E.D. Mich.); *Moeller v. The Week Publications, Inc.*, No. 1:22-cv-10666 (E.D. Mich.).

and July 30, 2016, to any third party without the consent
of the subscriber.[7]

Settlement Agreement ¶ 1.31; Preliminary Approval Order, ECF No. 53,
PageID.1729-30 at ¶ 9.[8]

**Monetary Relief.** Defendant shall establish a $1,000,000 non-reversionary
Settlement Fund from which all Settlement Class Members who do not exclude
themselves shall automatically receive a *pro rata* cash payment of approximately
$265 after payment of notice, administrative expenses, attorneys' fees, and service
awards to the proposed Class Representatives. Settlement Agreement ¶¶ 1.33, 2.1.
No portion of the Settlement Fund will revert back to Defendant. *Id.* ¶ 2.1(h).

**Release.** In exchange for providing the monetary relief set forth above,
Defendant (and all "Released Parties" – defined in Settlement Agreement ¶ 1.27)
will receive a full release of all claims arising out of or related to Defendant's
disclosure of its Michigan customers' subscription information. *See* Settlement
Agreement ¶¶ 1.26-1.28 for full release language.

---

[7]     Excluded from the Settlement Class are (1) any Judge or Magistrate presiding
over this Action and members of their families; (2) the Defendant, Defendant's
subsidiaries, parent companies, successors, predecessors, and any entity in which the
Defendant or its parents have a controlling interest and their current or former
officers, directors, agents, attorneys, and employees; (3) Persons who properly
execute and file a timely request for exclusion from the class; and (4) the legal
representatives, successors or assigns of any such excluded persons. *Id.*
[8]     Plaintiffs can submit the full list of individual Class members for an in-camera
review upon request of the Court.

12

**Notice and Administration Expenses.** The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Settlement Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. Settlement Agreement ¶¶ 1.29, 1.30, 1.33. The Parties selected the now Court-appointed Kroll Settlement Administration LLC to serve as Settlement Administrator. *See* Hedin Decl. ¶ 30; Miller Decl. ¶ 16.

**Service Awards and Fee Award.** On May 6, 2024, Plaintiffs their Unopposed Motion for Service Awards and Fee Award (ECF No. 58) ("Fee Petition") seeking Service Awards of $1,000 to Mr. Kotila and $500 to Mr. Craun (PageID.1805). The Fee Petition also seeks a Fee Award for attorneys' fees, costs, and expenses in the amount of 35% of the Settlement Fund (*id.*); *see also* Agreement ¶ 8.1. The Fee Petition requesting Service Awards for the Class Representatives and a Fee Award for attorneys' fees, costs, and expenses for Class Counsel is unopposed, and, with the deadline now passed, no objections have been filed in response to it. *See* **Exhibit D**, Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Fenwick Decl."), ¶¶ 14, 15. Payment of attorneys' fees, costs, and expenses is due within 10 days after entry of Final Judgment. Agreement ¶ 8.2.

## IV.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, Due Process and Rule 23 require that the notice provided to the class members is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice "need only be reasonably calculated … to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006) (citation omitted). Notice must clearly state essential information, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014). At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interest." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007) (citation omitted)

Due Process does not require that every class member receive notice, and a notice plan is reasonable if it reaches at least 70% of the class. *See Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010); *see also In re*

14

*Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (finding notice plan to be "the best notice practicable" where combination of mail and publications notice reached 81.8% of the class); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) (finding that notice and claims processes were appropriate where 90.8% of notices were successfully delivered to addresses associated with class members). The notice plan here readily meets these standards, as it provided direct notice via a postcard or email to approximately 96.16% of the Settlement Class. Fenwick Decl. ¶ 13.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and Due Process. ECF No. 53, PageID.1731-32. That plan has now been fully carried out by professional settlement administrator, Kroll Settlement Administration LLC. Pursuant to the Settlement Agreement, Defendant provided Kroll with a data file, and Kroll then undertook several steps to reconcile the file with information provided from Defendant regarding subscribers during the class period to compile the eventual Class List of 2,160 Settlement Class Members for the dissemination of Notices. Fenwick Decl. ¶ 5. Kroll successfully delivered the Court-Approved notice via postcard or e-mail (for Settlement Class Members with a valid e-mail address whose Postcard Notice was returned to Kroll as undeliverable and for whom Kroll could not locate an alternative mailing address) to a total of 2,077 Settlement Class Members. *Id.* ¶¶ 11-13.

Accordingly, the Court-approved Notice successfully reached 96.16% of the Settlement Class. Agreement ¶ 4.1(b); Fenwick Decl. ¶ 13.[9]

Given the broad reach of the notice, and the comprehensive information provided, the requirements of due process and Rule 23 are met.

## V.  THE SETTLEMENT WARRANTS FINAL APPROVAL

The Federal Rules of Civil Procedure require judicial approval of class action settlements. *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts within the Sixth Circuit recognize a strong "federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632 (citation omitted); *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the

---

[9]     These Notices also directed Settlement Class Members to the Settlement Website where they were able to submit change of address forms, access important court filings including the Fee Petition, and review deadlines and answers to frequently asked questions. Agreement ¶ 4.1(c); Fenwick Decl. at Exs. C-E. Kroll also notified the appropriate state and federal officials as per CAFA. Fenwick Decl. ¶ 4.

proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has overlaid its own factors. *See UAW*, 497 F.3d at 631. They are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.* As described below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

### A.  The Rule 23(e)(2) Factors Weigh in Favor of Final Approval

This Settlement easily satisfies the Rule 23(e)(2) factors.

<u>First</u>, Plaintiffs and Class Counsel have adequately represented the class, securing a per-class member recovery that compares favorably with prior PPPA settlements. *See* Introduction, *supra*.

17

Second, the Settlement was negotiated at arm's-length through mediation after exchanging information sufficient to assess the strengths and weaknesses of the case, and Defendant's financial condition. *See supra.*

Third, the relief is adequate. The Settlement Agreement provides for the receipt of cash payments of roughly $265 for Settlement Class Members without even filing a claim form as well as robust prospective relief. Settlement Agreement ¶¶ 2.1-2.2. Attorneys' fees and costs are consistent with other PPPA settlements. *See* Fee Petition, ECF No. 58, PageID.1803-04.

Fourth, the proposed Settlement treats Settlement Class Members equitably to each other as every Settlement Class Member will receive an identical *pro rata* cash payment under the Settlement. Settlement Agreement ¶ 2.1.

Finally, all terms affecting the Settlement Class are contained within the Settlement Agreement.

**B. The Sixth Circuit's *UAW* Factors Weigh in Favor of Final Approval**

All seven *UAW* factors favor approval or, at least, are neutral.

**1. There Is No Risk of Fraud or Collusion.**

The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at 631. "Courts presume the absence of fraud or collusion in class action settlements." *Leonhardt*, 581 F. Supp. 2d at 838. Here, a non-collusive settlement was reached through arm's-length negotiations via a neutral mediator. *See Sheick v. Auto.*

*Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy.").

### 2. Litigation Through Trial Would Be Complex, Costly, and Long.

The second *UAW* factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW*, 2006 WL 891151, at *17.

Here, Defendant moved to set aside the default entered against it and has opposed Plaintiffs' Motion for Default Judgment. Hedin Decl. ¶ 23; Miller Decl. ¶ 10 (citing ECF Nos. 29, 39). And throughout this litigation, Plaintiffs have engaged in significant discovery through third-party subpoenas. Hedin Decl. ¶ 20; Miller Decl. ¶ 9. Absent a settlement, further discovery, dispositive motions, and depositions would follow. Defendant indicated that it would continue to assert numerous defenses to both class certification and the merits, including that it did not sell *Financial Advisor* "at retail," as is required to be within the purview of the PPPA, and that the case is time-barred. Class Counsel is also aware that Defendant would prepare a competent defense at trial and would appeal any adverse result at trial (and any order certifying a class). Hedin Decl. ¶ 37; Miler Decl. ¶ 32. This would result

in lengthy and expensive litigation.

Rather than pursuing protracted and uncertain litigation, Plaintiffs and Class Counsel negotiated a Settlement Agreement that provides immediate, certain, and meaningful relief to all Settlement Class Members, in a streamlined manner. Accordingly, the second factor weighs in favor of finding the Settlement fair, reasonable, and adequate.

### 3. Discovery Allowed Plaintiffs to Intelligently Negotiate the Settlement.

The third factor is "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631. Prior to filing, Class Counsel conducted a wide-ranging investigation into Defendant's practices, described *supra*, and obtained several key documents evidencing those practices. *See* Hedin Decl. ¶¶ 15-17; Miller Decl. ¶¶ 5-6. Moreover, during formal discovery and in settlement negotiations, Plaintiffs obtained wide-ranging discovery from Defendant and third parties on issues pertaining to class certification, the merits, and Defendant's ability to withstand a classwide judgment. Hedin Decl. ¶¶ 26, 27, 38; Miller Decl. ¶¶ 9, 12, 13, 33, 49.

This information and material enabled Plaintiffs and Class Counsel to properly assess the strengths and weaknesses of the claims and defenses and to negotiate a Settlement that is fair, reasonable, and adequate. Hedin Decl. ¶ 27; Miller Decl. ¶ 13. Class Counsel's experience in similar cases, and the efforts made by counsel on both sides, confirms that they are sufficiently well apprised of the facts

here and the viability of their respective cases to make an intelligent analysis of the proposed settlement. Accordingly, the third factor weighs in favor of finding the Settlement fair, reasonable and adequate.

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded.

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. Although Plaintiffs believe their case is strong, it is not without risk. As detailed *supra*, Plaintiffs moved for default judgment (ECF No. 27), and in turn, Defendant moved to vacate the clerk's entry of default (ECF No. 29) and then opposed Plaintiffs' motion for default judgment. ECF No. 39. If the case were to move forward, lengthy discovery and motion practice would follow.

Defendant has made clear that, absent a settlement, it will defend the case vigorously and move for summary judgment and contest class certification. Hedin Dec. ¶ 37; Miller Decl. ¶ 32. The Court has not yet certified the Settlement Class for litigation purposes and the Parties anticipate that such a determination would only be reached after lengthy briefing. *Id.* Defendant would likely argue that individual questions preclude class certification, that a class action is not a superior method, and that a trial would not be manageable. *Id.* And even if the Court certified a class, Defendant would likely challenge certification through a Rule 23(f) application and then move to decertify. *Id.* Defendant would also continue to assert numerous merit defenses, including that it does not sell *Financial Advisor* "at retail," as required to

21

come into the purview of the PPPA. *Id.*

Moreover, even if Plaintiffs survived all of those obstacles, they faced significant risk in recovering a classwide judgment. Indeed, this case presents a unique risk on statute of limitations questions, because its timeliness depends on the applicability of the Michigan Supreme Court's orders tolling the statute of limitations during the early days of the COVID-19 pandemic. Am. Compl., ¶ 1 n.2; *see also* Hedin Decl. ¶ 40; Miller Decl. ¶ 19. And while this Court has held that the Michigan Supreme Court's COVID tolling orders are applicable to a PPPA case, *see Gottsleben v. Informa Media, Inc.*, 2023 WL 4397226, at *3-4 (W.D. Mich. July 7, 2023), the constitutionality of those orders is currently being addressed by the Michigan Supreme Court. *See Armijo v. Bronson Methodist Hospital*, 991 N.W.2d 593 (Mich. 2023) (setting briefing schedule and directing the scheduling of oral argument). An adverse decision could have deprived the Settlement Class of any recovery whatsoever. And, even if Plaintiffs survived *Armijo*, Plaintiffs would face additional challenges in prevailing because of the fragile nature of Defendant's financial condition; accordingly, Defendant would likely be unable to withstand a classwide judgment. Hedin Decl. ¶¶ 26, 38; Miller Decl. ¶¶ 12, 33.

The risks of losing on the merits, of losing class certification, of maintaining certification through trial, and of collecting on any classwide judgment, were all significant hurdles to obtaining classwide relief in this case. Because the Settlement

eliminates these risks of non-recovery, this factor also favors final approval.

### 5. Proposed Class Counsel and Class Representative Support the Settlement.

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW*, 2008 WL 4104329, at *26. Here, both Class Counsel and the Class Representatives support the Settlement. *See* Hedin Decl. ¶ 42; Miller Decl. ¶ 34. This *UAW* factor, therefore, favors final approval.

### 6. The Reaction of Absent Class Members.

The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. In most class action settlements, a small number of opt-outs and objections "are to be expected" and do not impact the Settlement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (citations omitted); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with settlement where 79 out of 11,000 class members objected). Here, in a class of 2,160 persons, **<u>zero</u>** class members objected and <u>zero</u> class members have opted out. Fenwick Decl. ¶¶ 13, 15. The lack of objections and minimal number of exclusions is even more impressive when considering that 96.16% of the Settlement Class received direct notice of the Settlement. *Id.* ¶ 13. This *UAW* factor therefore plainly weighs in favor of final

approval. *See, e.g.*, *Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.").

### 7. The Settlement Serves the Public Interest.

The seventh and final *UAW* factor is "the public interest." *UAW*, 497 F.3d at 631. Settlements may serve the public interest by advancing a statute's goals or by conserving judicial resources. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 530. The Settlement here accomplishes both.

First, "[t]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Id.* Further, when individual class members seek a relatively small amount of statutory damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen*, 417 U.S. at 161. Here, if the Settlement does not receive the Court's final approval, the Parties anticipate a complex and lengthy litigation that would continue and would require significantly more motion practice and potential appeals. *See Sims v. Pfizer, Inc.*, 2016 WL 772545, at *9 (E.D. Mich. Feb. 24, 2016) (finally approving

settlement and finding that "absent settlement, all class members would be subject to the uncertainties, hardship, and delay attendant to continued litigation"). Thus, by avoiding complex class action litigation that can consume a court's time and resources and would lead to uncertainty and delayed payment for Settlement Class Members, the Settlement furthers the public interest.

Second, the Settlement also serves the public interest by furthering the objectives of the Michigan legislature in enacting the PPPA. The PPPA recognizes that "one's choice in videos, records, and books is nobody's business but one's own." House Legis. Analysis Section, H.B. No. 5331. Class action litigation in this area is a means of safeguarding the privacy of readers under the PPPA, especially because some consumers may be unaware of the data sharing practices alleged here (i.e., that Defendant disclosed its customers' personal reading information without their consent). This factor therefore supports final approval.

Thus, all of the *UAW* factors weigh in favor of approval. Because the settlement on its face is fair, reasonable, and adequate, and not a product of collusion, the Court should grant final approval.

## VI.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

This Court's preliminary approval order conditionally certified a class, for settlement purposes, of: "[a]ll Michigan residents who subscribed to any of Defendant's publications before July 31, 2016, and whose name, together with the

name of the publication(s) to which they subscribed, were disclosed by Defendant (or any employee or agent of Defendant acting on Defendant's behalf) at any time between April 25, 2016 and July 30, 2016, to any third party without the consent of the subscriber." ECF No. 53,  PageID.1730. This Court's preliminary approval order also appointed E. Powell Miller of The Miller Law Firm, P.C., Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., and Frank S. Hedin and Arun G. Ravindran of Hedin LLP as Class Counsel, and Plaintiffs Matthew Kotila and Robert Craun as Class Representatives, both for settlement purposes only. *Id*. at PageID.1729.

In doing the above, this Court set forth an extensive analysis of the propriety of certification under Rule 23(a) and Rule 23(b)(3) (ECF No. 53), following the argument presented in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 46). This Court was correct in conditionally certifying the Class for settlement purposes pursuant to Rules 23(a) and (b)(3), and nothing has changed to alter the propriety of this Court's certification. This Court should now grant final certification of the Settlement Class.

## VII.  CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant the Unopposed Motion for Final Approval of Class Action Settlement and enter Final Judgment in the form submitted herewith (attached as **Exhibit E**).

Dated: May 21, 2024          Respectfully submitted,

By: *_/s/ E. Powell Miller_*
One of Plaintiffs' Attorneys

E. Powell Miller (P39487)
epm@millerlawpc.com
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Philip L. Fraietta (P85228)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150

Frank S. Hedin
fhedin@hedinllp.com
Arun G. Ravindran
aravindran@hedinllp.com
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107

*Class Counsel*

## <u>CERTIFICATE REGARDING WORD COUNT</u>

Plaintiffs Matthew Kotila and Robert Craun, in compliance with W.D. Mich. LCivR 7.2(b)(i)-(ii), used 6,256 words in Plaintiffs' foregoing brief. Microsoft Word for Office 365 Business version 1910 is the word processing software used to generate the word count in the attached brief.

Dated:  May 21, 2024                     Respectfully Submitted,

/s/ *E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248-841-2200
epm@millerlawpc.com

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, E. Powell Miller, an attorney, hereby certify that on May 21, 2024, I served

the above and foregoing ***Plaintiffs' Unopposed Motion for Final Approval of Class***

***Action Settlement*** on all counsel of record by filing it electronically with the Clerk

of the Court using the CM/ECF filing system.

*/s/ E. Powell Miller*
E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste 300
Rochester, MI 48307
Tel: 248.841.2200
