# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MATTHEW KOTILA and ROBERT CRAUN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHARTER FINANCIAL PUBLISHING NETWORK, INC.,<br><br>Defendant. | Case No. 2:22-CV-00704-HYJ-RSK<br><br>Hon. Hala Y. Jarbou<br><br>Mag. Judge Ray S. Kent |

## DECLARATION OF FRANK S. HEDIN IN
## SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
## <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

I, Frank S. Hedin declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and based on my own personal knowledge, that the following statements are true:

1.     I am the founding partner of Hedin LLP and counsel of record for Plaintiffs in this action. I submit this declaration in support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, filed concurrently herewith.

## RELEVANT PPPA LITIGATION EXPERIENCE

2.      My co-counsel and I ("Class Counsel") have been at the forefront of litigation brought under the Michigan PPPA, and thus the results obtained in this case derive from nearly a decade of efforts in this arena.

3.      Beginning in 2015, Class Counsel began investigating and litigating cases against publishers for alleged violations of the Michigan Preservation of Personal Privacy Act (the "PPPA"). *See, e.g.*, *Edwards v. Hearst Commc'ns, Inc.*, No. 15-cv-09279 (S.D.N.Y.). The theory of liability was novel. Although a few other cases had been filed against publishers, none had progressed through class certification or summary judgment.

4.      In 2016, the Michigan legislature amended the PPPA, effective July 31, 2016, to make "actual damages" a prerequisite to stating a claim and remove a prevailing plaintiff's entitlement to statutory damages. Following the effective date of the amendment, and a decision from the Eastern District holding that cases filed on or after July 31, 2016 were subject to the amended version of the statute, the consensus among the plaintiff's bar was that the PPPA was officially dead and, as such, the filing of PPPA cases abruptly came to an end. *See Raden v. Martha Stewart Living OmniMedia, Inc.*, No. 16-12808, 2017 WL 3085371, at *4 (E.D. Mich. July 20, 2017), *reconsideration denied*, No. 16-12808, 2018 WL 460072 (E.D. Mich. Jan. 18, 2018) (case filed July 31, 2016) (last PPPA case filed by any firm other than

Class Counsel, PPPA claim dismissed by court on ground that it was subject to amended version of statute, even though disclosures in question occurred prior to July 31, 2016 effective date of amendment).

5.     Nevertheless, on May 29, 2018, nearly two years after the July 31, 2016 effective date of the Michigan legislature's amendment to the PPPA, my firm initiated *Horton v. GameStop Corp.*, No. 1:18-CV-596 (W.D. Mich.). *Gamestop* was a PPPA class action alleging that the defendant had disclosed the plaintiff's and other Michigan residents' personal reading information between May 29, 2015 and July 31, 2016 (the effective date of an amendment to the PPPA) – in violation of the unamended version of the PPPA that existed up until July 30, 2016. *See Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 681 (W.D. Mich. 2018). The defendant moved to dismiss on the grounds that, *inter alia*, the complaint failed to state a claim for violation of the unamended PPPA because the case had been filed after the amendment's July 31, 2016 effective date. *Gamestop*, 380 F. Supp. 3d at 682. In successfully defeating this motion, my firm obtained the first decision in the country holding that, regardless of the date on which a PPPA action is commenced, "the unamended [PPPA] applies to . . . claims that accrued prior to July 31, 2016, and, consequently, [a] plaintiff [asserting such a claim] [is] not required to plead actual damages." *Gamestop*, 380 F. Supp. 3d at 683. The *Gamestop* decision paved the way for my co-counsel and my successful prosecution of the instant action against

Defendant on behalf of the Settlement Class, because here, as in *Gamestop*, Plaintiffs allege violations of the unamended, pre-July 31, 2016 version of the statute, arising from Defendant's disclosures of personal reading information that pre-dated the statutory amendment's July 31, 2016 effective date. Indeed, invoking the pre-July 31, 2016 version of the statute in this case enabled Plaintiffs to seek statutory damages for the putative class, without showing "actual damages," and thus was instrumental in securing the Settlement presently before the Court.

6.    After obtaining the *Gamestop* decision on September 28, 2018, my firm and co-counsel initiated numerous additional PPPA actions against publishers of written materials through June of 2019 (a "second wave" of PPPA litigation), further refining our skills for prosecuting such claims and, in the process, prevailing on other important legal issues implicated by the statute. *E.g.*, *Kokoszki v. Playboy Enterprises, Inc.*, No. 19-cv-10302-BAF-RSW (E.D. Mich., filed Jan. 30, 2019); *Huguelet, et al. v. Maxim Inc.*, No. 19-cv-4452-ALC (S.D.N.Y., filed May 15, 2019); *Chelone, et al. v. America's Test Kitchen LP*, No. 2:19-cv-11757-TGB-MKM (E.D. Mich., filed June 19, 2019); *Forton v. TEN: Publishing Media, LLC*, No. 1:19-cv-11814-JEL-PTM (E.D. Mich., filed June 19, 2019); *Lin v. Crain Commc'ns Inc.*, No. 19-cv-11889 (E.D. Mich., filed June 25, 2019).

7.    For example, in *Lin*, my firm brought the first ever PPPA class action against a Michigan-based defendant on behalf of a non-Michigan-resident plaintiff

and a proposed nationwide class. *Lin v. Crain Commc'ns Inc.*, No. 19-11889, 2020 WL 248445, at *4 (E.D. Mich. Jan. 16, 2020). Specifically, the complaint alleged that a Michigan-based company had disclosed, from its headquarters in Michigan, the personal reading information of the plaintiff (a resident of Virginia) and all of its other subscribers nationwide to third parties prior to July 31, 2016, in violation of the unamended version of the PPPA. *Lin*, 2020 WL 248445, at *1. The defendant moved to dismiss on the grounds that the PPPA only protects and is only enforceable by Michigan residents, to the exclusion of out-of-state residents – presenting an issue of first impression concerning the territorial reach of the PPPA. *Lin*, 2020 WL 248445, at *3. We defeated defendant's motion, and in so doing obtained the first decision in the country holding that the PPPA "allow[s] non-Michigan residents to pursue claims against Michigan resident-defendants." *Lin*, 2020 WL 248445, at *4. Although the extraterritoriality issue in *Lin* does not directly bear on the claims alleged in this case, my firm's successful prosecution of the *Lin* action (together with our co-counsel) further cemented our ability to prevail on complex and novel issues under the PPPA and strengthened both our knowledge of the statute and our reputation litigating claims under it.

8.    In this "second wave" of PPPA litigation, which spanned from September 2018 (when *Gamestop* was decided) through the end of July 2019, the consensus across the federal judiciary and the plaintiffs and defense bars alike was

that the statute was governed by a three-year limitation period, and it was thus universally understood at that time that claims for violation of the pre-amended version of the statute would no longer be actionable as of July 31, 2019 (three years after the amendment's effective date). *See Edwards v. Hearst Commc'ns, Inc.*, No. 15-CV-9279 (AT)(JLC), 2016 WL 6651563, at *1 (S.D.N.Y. Nov. 9, 2016) (noting that "a three-year statute of limitations admittedly governs [the plaintiff's PPPA] claims").

9.     Nonetheless, after closely reviewing the Sixth Circuit's decision in *Palmer Park Square, LLC v. Scottsdale Insurance Company*, 878 F.3d 530 (6th Cir. 2017), my firm determined that the PPPA is actually subject to the six-year limitation period found in M.C.L. § 5813, rather than the three-year period found in M.C.L. § 5805(2) (which up until that point had been universally applied in every prior PPPA case).

10.     Thus, on June 15, 2021, nearly five years after the effective date of the PPPA's amendment, and after extensive pre-filing investigative work, my firm together with our co-counsel in this case, initiated the action *Pratt v. KSE Sportsman Media, Inc*., No. 21-cv-11404-TLL-PTM (E.D. Mich.), which alleged violations of the pre-amended version of the statute that accrued between June 15, 2015 (*six* years prior to the filing of the action) and July 30, 2016.

11.     After further time-consuming investigative work, the *Pratt* action was

followed by dozens of additional PPPA actions filed by my firm and co-counsel – including the instant matter (discussed further below) – each of which depended on the application of the six-year limitation period. *See, e.g.*, *Owen v. Kalmbach Media Co.*, No. 21-cv-11814-VAR-KGA (E.D. Mich.); *Devroy v. Annie's Publishing, LLC*, No. 21-cv-11815-TGB-EAS (E.D. Mich.); *Krassick v. Archaeological Institute of America*, No. 21-cv-00180-HYJ-RSK (W.D. Mich.).

12.    On November 24, 2021, the defendant in *Pratt* moved to dismiss the complaint on the ground that, *inter alia*, plaintiff's claim was time-barred by section 5805(2)'s three-year limitation period. *See Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 669 (E.D. Mich. 2022). On February 15, 2022, following full briefing on the limitation-period question, the court presiding over *Pratt* issued a published opinion denying defendant's motion to dismiss in full, rejecting defendant's argument that three-three period governs PPPA claims and holding that the six-year period found in section 5813 governs such claims. *Pratt*, 586 F. Supp. 3d at 673 (holding that "[a] six-year statute of limitations applies to PPPA claims").

13.    After the decision in *Pratt*, my firm and our co-counsel briefed and prevailed on the same statute of limitations issue in several of our other PPPA cases filed in this so-called "third wave," in both the Eastern and Western Districts of Michigan. *See, e.g.*, *Krassick v. Archaeological Inst. of Am.*, No. 2:21-CV-180, 2022 WL 2071730, at *5 (W.D. Mich. June 9, 2022); *Hall v. Farm Journal, Inc.*, No. 21-

cv-11811-DML-APP (E.D. Mich.) (April 5, 2022 decision finding the plaintiff's claim to be timely and denying motion to dismiss; June 21, 2022 order denying defendant's motion for reconsideration and reaffirming prior decision on motion to dismiss) (*Hall*, PageID.3669-92).

14.    On the strength of these rulings holding that a six-year limitation period governs PPPA claims, my co-counsel and I successfully settled, were appointed as Class Counsel in, and obtained final approval of settlements in *Pratt* as well as several other "wave three" PPPA class actions. *See, e.g.*, *Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-cv-11404, 2024 WL 113755 (E.D. Mich. Jan. 10, 2024) (approving $9.5 million class settlement for a settlement class that included 14,503 persons and paid each class member approximately $420); *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809 (E.D. Mich. Aug. 9, 2022)[1] (approving PPPA class settlement paying roughly $50 per claimant); *Kain v. The Economist Newspaper NA, Inc.*, No. 4:21-cv-11807 PageID.1369 (approving PPPA class settlement paying roughly $261 per claimant); *Strano v. Kiplinger Washington Editors, Inc.*, No. 1:21-cv-12987 (E.D. Mich. Oct. 11, 2023) (approving class settlement paying roughly $248 per class member); *Moeller v. The Week*

---

[1]    *See* Aug. 9, 2022 Final Fairness Hearing Transcript at 7:9-8:2 (commending work of counsel and noting that "the class has benefited in a concrete way" from the "very effective work" done by the plaintiff's counsel, "where the lawyers did produce significant results for the class") (PageID.1681-82).

*Publications, Inc.*, No. 1:22-cv-10666 (E.D. Mich. Oct. 11, 2023) (approving class settlement paying roughly $248 per class member).

## THE INSTANT LITIGATION

15.    As an initial matter, prior to initiating the instant action (or any of the other "third wave" PPPA cases), my firm and our co-counsel performed a lengthy, several-months-long factual investigation into Defendant's (and other defendants') subscriber list disclosure practices in effect during the relevant pre-July 31, 2016 time period. This investigative work began in December 2020 when my firm reviewed and analyzed relevant legal authorities addressing Michigan's statutory scheme concerning limitation periods. Due to the confidential nature of Defendant's alleged disclosures, our pre-suit investigation into the facts underlying this case (as well as industry-wide list disclosure practices generally) was extensive, and involved in-depth research into a number of publishing industry practices, including data appending and data cooperatives.

16.    Moreover, the success of this case depended on Class Counsel successfully arguing that the amended version of the PPPA does not apply to claims that accrued prior to July 31, 2016 (even if the action asserting the claims is brought after that date), that a six-year limitation period governs such claims, that the applicable six-year limitation period was tolled for 102 days pursuant to the Michigan Supreme Court's orders issued during the COVID-19 pandemic, and that

the presence of Defendant's data card on a data-brokerage warehouse's website today adequately establishes that Defendant was engaged in the same disclosure practices prior to July 31, 2016.

17.    Prior to initiating this action in particular, my firm and I conducted a comprehensive pre-filing investigation concerning the specific factual and legal issues underlying Plaintiffs' claims. These extensive pre-filing efforts included:

- Researching the nature of Defendant's business, its practices of selling newsletters, consumer-privacy policies, and public statements concerning the same;

- Interviewing numerous individuals in Michigan who subscribed to Defendant's publications prior to July 31, 2016, including about their process of purchasing a subscription and any disclosures they received or agreed to during the purchase process;

- Researching and analyzing Defendant's list rental and other disclosure practices, including data cards and other public information available online concerning the practices prior to July 31, 2016;

- Analyzing versions of Defendant's Privacy Policy, Terms of Service, and other public documents on its websites during the relevant time period;

- Researching the relevant law and assessing the merits of a potential PPPA claim against Defendant and defenses that Defendant might assert thereto;

- Reviewing caselaw and statutes concerning the applicable limitation period for a PPPA claim, analyzing the arguments regarding a six-year period; and

- Analyzing the arguments for the applicability of COVID-19

tolling pursuant to Michigan Supreme Court's administrative orders issued during the COVID-19 pandemic (the "COVID Orders"), including consulting with appellate lawyers briefing the matter before the Michigan Supreme Court.

18.    As a result of this thorough pre-filing investigation, Class Counsel was able to develop a viable theory of liability for a PPPA claim against Defendant and prepare a thorough Complaint against Defendant, filed August 3, 2022. ECF No. 1.

19.    On October 19, 2022, the Clerk of the Court entered the Default for Defendant's failure to appear within the time specified by the Federal Rules of Civil Procedure. ECF No. 12.

20.    On June 5, 2023, the Court entered an Order (ECF No. 17) granting class certification and Mr. Kotila's request to conduct discovery to identify the class members for the purpose of calculating damages. Thereafter, Mr. Kotila served numerous subpoenas on third parties seeking customer lists that they had received from Defendant during the relevant time period. *See* ECF No. 28-1, PageID.762.

21.    On August 16, 2023, Plaintiffs filed a Motion for Default Judgement and Approval of Plaintiff's Class Notice Plan. ECF Nos. 27, 28.

22.    On September 19, 2023, Defendant's Counsel entered an appearance in this litigation.

23.    On September 21, 2023, Defendant filed a motion to set aside the default, ECF No. 29, and, on December 4, 2023, filed an opposition to Plaintiffs' Motion for Default Judgment. ECF No. 39.

11

24.   Following Defendant's Counsel's appearance, the Parties engaged in direct communication, and, as part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of resolution.

25.   And while the aforementioned motions were pending, the Parties agreed to participate in a mediation with Tom McNeill, Esq. of Tom McNeill ADR, PLLC.

26.   In advance of the mediation, the Parties continued to meet and confer, and exchanged informal discovery, including on the size and scope of the putative class, which has now been determined to include 2,160 persons, and Defendant's financial condition and ability to fund a settlement. In advance of mediation, Class Counsel expended significant time reviewing the financial materials provided by Defendant. These materials demonstrated the perilous financial state of Defendant, and, thus, the collectability risks posed by continued litigation absent reaching a settlement. The Parties also exchanged lengthy mediation briefing pertaining to the merits of the case, as Class Counsel prepared a mediation statement outlining the strength of Plaintiffs' case and comparing this matter with other, previously settled PPPA cases against publishers, in order to properly evaluate any potential settlement proposals and structures.

27.   In advance of these mediation sessions, my co-counsel and I also thoroughly reviewed the discovery produced by Defendant and various third parties,

and conducted extensive analysis of the size and parameters of the potential class and the strengths and weaknesses of Plaintiffs' case (including, most notably, the applicability of COVID-19 tolling and the pending appeal before the Michigan Supreme Court concerning the same).

28.    On December 4, 2023, the Parties participated in a mediation with Mr. McNeill. The mediation lasted the entire day. While the Parties negotiated in good faith, they were unable to reach an agreement that day. However, because significant progress was made, Mr. McNeill made a mediator's proposal at the end of the mediation.

29.    On December 6, 2023, the Parties accepted Mr. McNeill's mediator's proposal, reached an agreement on all material terms of a class action settlement, and executed a term sheet.

30.    In the weeks following the mediation, the Parties negotiated and finalized the full-form Settlement Agreement, selected the Settlement Administrator, Kroll, and worked together to finalize the Settlement Class List.

31.    On February 14, 2024, Plaintiff Kotila filed the operative First Amended Complaint, which added Plaintiff Craun as a plaintiff and putative class representative. ECF No. 45.

32.    On February 16, 2024, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement. ECF No. 46.

33.     Following supplemental briefing related to the requested Service Awards (ECF No. 51), on February 21, 2024, the Court entered an Order granting Plaintiffs' Unopposed Motion for Preliminary Approval. ECF No. 53.

34.     The $1,000,000 non-reversionary preliminarily-approved Settlement represents an excellent per-class member recovery in a PPPA settlement. Based on the class list provided by Defendant, each member of 2,160 person Settlement Class who does not exclude himself or herself from the Settlement will automatically receive a pro rata cash payment of approximately $265.

35.     As previously explained, the $1 million Settlement before the Court for final approval compares favorably with prior PPPA class action settlements on a per-class member basis. *See* Plaintiffs' Unopposed Motion for Service Awards and Fee Award, ECF No. 58, PageID.1762-63 (chart listing other PPPA settlements).

36.     Plaintiffs and Class Counsel recognize that, despite our belief in the strength of Plaintiffs' claims and Plaintiffs' and the Class's ability to ultimately each secure a $5,000 statutory award under the PPPA, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain in light of the significant risks of non-recovery posed by continued litigation.

37.     Plaintiffs and Class Counsel are also mindful that absent a settlement, the success of Defendant's various defenses in this case could deprive the Plaintiffs and the Settlement Class Members of any potential relief whatsoever. At the time of

settlement, Plaintiffs had moved for default judgment, and in turn, Defendant moved to vacate the clerk's entry of default. ECF Nos. 27, 29. If the Court vacated the default, lengthy discovery and motion practice would follow. Defendant is represented by highly experienced attorneys who have made clear that absent a settlement, they were prepared to continue their vigorous defense of this case. Plaintiffs and Class Counsel are also aware that Defendant would continue to challenge liability, as well as assert a number of defenses. Defendant indicated that it would continue to assert numerous defenses to both class certification and the merits, including that it did not sell its *Financial Advisor* magazine "at retail," as is required to be within the purview of the PPPA, and that the case is time-barred. Plaintiffs are aware that Defendant would likely oppose class certification vigorously, as it would likely argue that individual questions preclude class certification, that a class action is not a superior method, and that a trial would not be manageable, and even if the Court certified a class, Defendant would likely challenge certification through a Rule 23(f) application and then move to decertify. Defendant would also prepare a competent defense at trial. Looking beyond trial, Plaintiffs are also aware that Defendant could appeal the merits of any adverse decision, and that in light of the statutory damages in play, it would argue—in both the trial and appellate courts—that the award of any statutory damages is not warranted or for a reduction of damages based on due process concerns. *See, e.g.*,

*Rogers v. BNSF Railway Co.*, 2023 WL 4297654, at \*13 (N.D. Ill. June 30, 2023) (vacating jury's statutory damages award in statutory privacy class action and ordering a new trial on damages); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating and remanding district court's denial of post-trial motion challenging the constitutionality of statutory damages award in statutory privacy class action and ordering the district court to reassess the question with new appellate guidance).

38.    Moreover, informal discovery exchanged as part of the mediation process showed that Defendant's financial condition is perilous and Defendant likely would not be able to withstand a classwide judgment accordingly.

39.    Indeed, had this litigation continued, Plaintiffs and Settlement Class members would have faced several significant risks of total non-recovery, both on questions concerning the merits of the claims and the ability of Plaintiffs to certify a class.

40.    From the outset of the case, as noted above, Plaintiffs and Class Counsel recognized that the case presented a substantial and novel litigation risk pertaining to the applicability of COVID tolling to the statute of limitations. Specifically, at the time of filing, no court had ever considered whether the Michigan Supreme Court's orders tolling the statute of limitations during the early days of the COVID-19 pandemic were applicable to a PPPA case. The constitutionality of those

orders has been challenged and is currently being addressed by the Michigan Supreme Court. *See Armijo v. Bronson Methodist Hosp.*, 991 N.W.2d 593 (Mich. 2023) (setting briefing schedule and directing the scheduling of oral argument). Because the case was filed more than six years after the alleged unlawful disclosures, if this Court or the Michigan Supreme Court ultimately held that the COVID-19 tolling orders either do not apply to this case or are unconstitutional, the case would have been time-barred and the Settlement Class would have recovered nothing at all. Relying on this six-year period, Class Counsel initially believed that the latest that a suit could reasonably be filed was by July 31, 2022. But, through extensive research and legal analysis, Class Counsel determined that the 102 days of tolling provided by the COVID Orders would allow a suit to be brought through October 2022. My co-counsel and I have actively consulted with other Michigan litigants who were pursuing this theory, including the appellate counsel in the COVID Orders cases which have now been taken up by the Michigan Supreme Court.

41.    Additionally, absent the Settlement, Defendant (through its highly experienced and skilled attorneys) indicated that it would have mounted a vigorous defense at trial and beyond, including in any appeal from an adverse judgment or an order certifying a class, and that in light of the statutory damages at stake, Defendant would argue – in both the trial and appellate courts – for a reduction of any class-wide damages award on substantive due process grounds.

## FAIRNESS & ADEQUACY OF THE SETTLEMENT

42.     Plaintiffs and Class Counsel believe that the relief provided by the Settlement weighs heavily in favor of a finding that the Settlement is fair, reasonable, and adequate, and well within the range of approval.

43.     In this litigation, each of the Plaintiffs contributed substantial effort to advance the interests of the Settlement Class. Specifically, each of the Plaintiffs worked with Class Counsel to detail their subscription purchase history, including how they subscribed to the publications at issue; to inform Class Counsel that they did not agree in writing or otherwise to allow Defendant to sell or disclose their Personal Reading Information; that they did not receive notice of such disclosures, nor were they aware of them at all. Moreover, each of the Plaintiffs worked with Class Counsel to prepare the Complaints and carefully reviewed the Complaints for accuracy and approved each before filing.

44.     Plaintiffs filed and pursued this case knowing it would invariably reveal their statutorily-protected status as subscribers to Defendant's publication, and kept in regular contact with Class Counsel, including on matters of strategy, discovery, mediation, and the prospects of settlement.

45.     Plaintiffs also coordinated with Class Counsel to respond to informal discovery, including searching for documents such as records pertaining to their magazine subscriptions, and were prepared to testify at deposition and trial, if

necessary.

46.    Plaintiff Kotila's involvement was particularly extensive. In addition to providing the assistance detailed above, he initiated the case by filing the initial Complaint, and assisted my firm and my co-counsel in our pre-filing investigation. Plaintiff Kotila also actively conferred with Class Counsel prior to and during the mediation that ultimately led to the Settlement.

47.    Plaintiff Craun's involvement began shortly after Class Counsel received and analyzed discovery, including lists of Michigan subscribers. Plaintiff Craun also provided extensive assistance in advance of the mediation. Plaintiff Craun was in regular contact with Class Counsel prior to the mediation, and provided vital informal discovery to help prepare Class Counsel for the mediation and was instrumental in Class Counsel negotiating the Settlement. Plaintiff Craun was also identified on a list provided by a third party in discovery that had purportedly been transmitted to it by Defendant during the relevant time period, and, thus, Plaintiff Craun's inclusion in the case gave Plaintiffs and Class Counsel additional needed leverage to negotiate such a favorable result for the Settlement Class.

48.    Following this Court's Order requiring supplemental briefing, ECF No. 50, my co-counsel and I consulted with Plaintiffs Kotila and Craun, and, as reflected in the Response to the Court's Order, ECF No. 51, PageID.1722, Plaintiffs Kotila and Craun communicated that if the Court found the original Service Awards request

of $5,000 each to be excessive, then Mr. Kotila would voluntarily agree to reduce his requested service award to $1,000, and Mr. Craun would voluntarily agree to reduce his requested service award to $500.

49.    I am of the opinion that Plaintiffs' active involvement in this case was critical to its ultimate resolution. They took their role as class representatives seriously, devoting time and effort to protecting the interests of the Class. Without their willingness to assume the risks and responsibilities of serving as a class representative, I do not believe such a strong result could have been achieved.

50.    Along with the assistance of Plaintiffs, the non-reversionary $1 million common-fund Settlement achieved here is a direct result of Class Counsel's multi-year investigation into certain disclosure practices in effect in segments of the publishing industry in 2015-16, Class Counsel's extensive analysis of the applicable statute of limitations (and other threshold issues), and the significant time (thousands of hours) and other resources Class Counsel expended developing favorable bodies of PPPA jurisprudence on issues of critical importance to the claims alleged in this case.

51.    Again, Plaintiffs and Class Counsel believe that the relief provided by the settlement weighs heavily in favor of a finding that the settlement is fair, reasonable, and adequate, and well within the range of approval, as supported by the fact that since dissemination of the class notice, not one Settlement Class Member

has submitted an objection to the Settlement or the requested Fee Award, and zero class members have opted out.

## HEDIN LLP'S EXPERIENCE

52.    With offices in Miami, Florida and San Francisco, California, Hedin LLP focuses on consumer and data privacy class actions and has successfully prosecuted dozens of such matters in state and federal courts as court-appointed class counsel, including in matters alleging claims for violation of Michigan's Preservation of Personal Privacy Act ("PPPA"). *E.g.*, *Kokoszki v. Playboy Enterprises, Inc.*, No. 19-cv-10302-BAF (E.D. Mich.) (class counsel in action alleging sale of *Playboy* subscribers' personal information in violation of the Michigan PPPA, obtained $3.8 million non-reversionary class settlement); *Rivera et al. v. Google, LLC*, No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Ill., Apr. 5, 2022) (class counsel in action alleging violations of Illinois's Biometric Information Privacy Act ("BIPA"), obtained $100 million non-reversionary class settlement); *Olsen, et al. v. ContextLogic Inc.*, No. 19CH06737 (Cir. Ct. Cook Cnty. Ill., Jan 7, 2020) (class counsel in action alleging violations of the of the federal Telephone Consumer Protection Act ("TCPA"), successfully defeated defendant's motion to compel arbitration and obtained $16 million non-reversionary class settlement); *Donahue v. Everi Payments, Inc., et al.*, No. 2018-CH-15419 (Cook Cnty., Ill. Cir. Ct.) (class counsel in action alleging disclosure of consumers' credit and debit card

information on printed transaction receipts in violation of the federal Fair and Accurate Credit Transactions Act, obtained $14 million non-reversionary class settlement); *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-cv-20614-MGC (S.D. Fla.) (class counsel in action alleging the improper assessment of overdraft fees when accounts were not actually overdrawn, obtained $4.95 million class settlement); *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059-LO (E.D. Va.) (class counsel in action alleging the improper assessment of overdraft fees for "non-recurring" debit card transactions misclassified as "recurring" debit card transactions, obtained $2.7 million class settlement). Over the past five years alone, my firm has recovered over $400 million in all-cash relief for the classes we have represented. *See* Firm Resume of Hedin LLP, a true and accurate copy of which is attached hereto as **Exhibit 1**.

53.     Overall, my firm has significant experience litigating class actions of similar size, scope, and complexity as here, regularly engaging in complex litigation involving consumer privacy, including PPPA cases.

I declare under penalty of perjury that the above and foregoing is true and accurate. Executed this 21st day of May 2024 at Miami, Florida.

*/s Frank S. Hedin*
Frank S. Hedin

# Exhibit 1



### FIRM RÉSUMÉ

Based in Miami, Florida, Hedin LLP represents consumers in class actions in state and federal courts nationwide. Our firm prosecutes difficult cases aimed at redressing injuries suffered by large, diverse groups of people.  Over the past five alone, we have recovered hundreds of millions of dollars in relief for consumers and investors and facilitated important changes in business practices across a wide range of industries.

### Representative Matters

Notable examples of our work include:

- *Rivera, et al. v. Google LLC*, Case No. 2019-CH-00990 (Cir. Ct. Cook Cnty.) (class counsel in action alleging defendant's collection of "scans of face geometry" in violation of Illinois's Biometric Information Privacy Act, $100 million settlement)

- *Olsen, et al. v. ContextLogic Inc.,* No. 2019CH06737 (Ill. Cir. Ct. Jan. 7, 2020) (class counsel in action alleging violation of Telephone Consumer Protection Act ("TCPA"), $16 million settlement)

- *In re Maxar Technologies Inc. Shareholder Litigation*, Case No. No. 19CV357070 (Cal. Sup. Ct., Santa Clara Cnty.) (class counsel in class action on behalf of investors, $36.5 million settlement)

- *In re Everi Holdings, Inc. FACTA Litigation*, No. 18CH15419 (Ill. Cir. Ct. Jan. 7, 2020) (class counsel in 14 related actions alleging violations of Fair and Accurate Credit Transactions Act against various casino entities and common payment processor, $14 million global settlement)

- *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-CV-20614-MGC (S.D. Fla.) (class counsel in overdraft fee class action, $4.95 million settlement)

- *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059-LO (E.D. Va.) (class counsel in overdraft fee class action, $2.7 million settlement)

- *Kokoszki v. Playboy Enterpises, Inc.*, No. 19-cv-10302-BAF (E.D. Mich.) (class counsel in action alleging violation of Michigan's Personal Privacy Preservation Act ("PPPA"), $3.8 million settlement)

- *Pratt et al. v. KSE Sportsman Media, Inc.*, No. 21-cv-11404- TLL-PTM (E.D. Mich.) (class counsel in action alleging violation of Michigan's PPPA, $9.5 million settlement)

# HEDIN L.L.P.

- *Chimeno-Buzzi v. Hollister Co.* (S.D. Fla.) (class counsel in action alleging violation of TCPA, $10 million settlement)

- *Farnham v. Caribou Coffee Co., Inc.* (W.D. Wisc.) (class counsel in action alleging violation of TCPA, $8.5 million settlement)